**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>COMMONWEALTH OF VIRGINIA,<br><br>*Defendant*. | Case No. 3:25-cv-1067 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS**

Proposed Student Intervenors Alex Doe and Belinda Doe are individual students that directly benefit from the Virginia Dream Act ("Dream Act"), Va. Code § 23.1-505.1, which allows certain persons with strong connections to the Commonwealth of Virginia to obtain in-state tuition at public institutions of higher education regardless of their nationality or citizenship status. Because the Commonwealth of Virginia is not defending the constitutionality of the Dream Act and, indeed, has agreed to a consent order prohibiting its enforcement, Proposed Student Intervenors seek to intervene to ensure that the constitutionality of the challenged Virginia law is defended and fully adjudicated in a true adversarial proceeding.

Proposed Student Intervenors all attend Virginia public institutions of higher education and are eligible for in-state tuition rates because of the Dream Act. As explained in their declarations attached to the motion to intervene, they seek to intervene in this case to defend a

statute that is critical to their educational and professional goals. Declaration of Alex Doe ("Doe A Decl.") ¶¶ 6-9; Declaration of Belinda Doe ("Doe B Decl.") ¶¶ 6-9. In doing so, Proposed Student Intervenors are aware that the public nature of their advocacy, particularly at a time of extremely high levels of federal immigration enforcement, places them and their families at risk of retaliation. Doe A Decl. ¶¶ 2, 4; Doe B Decl. ¶¶ 2, 4.

In particular, Proposed Student Intervenors do not currently have lawful status or documentation allowing them to remain permanently in the United States, Doe A Decl. ¶ 3, Doe B Decl. ¶ 3, and they are concerned that, at a time of greatly heightened immigration enforcement as a result of the Trump Administration's policy of mass deportations,[1] any public disclosure of their immigration status may bring them to the attention of the immigration authorities and may subject them to retaliation, including immigration enforcement. Proposed Student Intervenors thus reasonably fear that their participation in this litigation under their given names could adversely affect their lives, their educations, and the lives of their families and loved ones. They therefore respectfully request that the Court grant them permission to proceed in this action under the pseudonyms "Alex Doe" and "Belinda Doe."

## LEGAL STANDARD

A motion to proceed under pseudonyms is granted when "[t]here is very little risk of prejudice to [other parties] in allowing [individuals] to proceed under pseudonym." *A.D. v. Wyndham Hotels & Resorts*, No. 19-cv-120, 2020 WL 5269758, at *2 (E.D. Va. Mar. 20, 2020).

[1] Muzaffar Chishti et al., *Unleashing Power in New Ways: Immigration in the First Year of Trump 2.0*, Migration Policy Institute (Jan. 13, 2026), https://www.migrationpolicy.org/article/trump-2-immigration-1st-year (the administration has deployed an immigration strategy focused on deportations above all else, with a goal of 1 million deportations per year).

In determining whether to permit a party to proceed anonymously, courts consider the following, non-exhaustive set of factors:

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;
> (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;
> (3) the ages of the persons whose privacy interests are sought to be protected;
> (4) whether the action is against a governmental or private party; and
> (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James v. Jacobsen*, 6 F.3d 233, 238 (4th Cir. 1993).

## ARGUMENT

As explained in the motion to intervene, Proposed Student Intervenors directly benefit from the Virginia Dream Act and therefore have a direct interest in this case. This lawsuit and the proposed consent judgment threaten their education, careers, and future. Proposed Student Intervenors will suffer direct injury if the Virginia Dream Act is held to be preempted by federal law. If they were to lose the benefits of the Dream Act for which they currently qualify, they would be forced to pay out-of-state tuition to continue their educations, doubling or tripling the cost of attendance. Doe A Decl. ¶¶ 7-9; Doe B Decl. ¶¶ 6-9. They have dedicated thousands of hours and dollars to pursuing secondary degrees to improve their opportunities in life—time and money that would be wasted if they were prevented from continuing by skyrocketing costs.

Simultaneously, they face significant risk by coming forward at a time when federal immigration enforcement is reaching new peaks.[2] The administration has promised to "carry out

[2] Jiachuan Wu et al., *U.S. deportation tracker: Counting arrests, deportations*, NBC News (Updated Jan. 12, 2026), https://www.nbcnews.com/data-graphics/us-immigration-tracker-follow-arrests-detentions-border-crossings-rcna189148.

the largest domestic deportation operation in American history,"[3] and the number of people in immigration detention is currently at an all-time high.[4] Proposed Student Intervenors reasonably fear that, if their identities are disclosed in this case, they will be brought to the attention of immigration authorities and be subjected to immigration enforcement action, including detention and removal, and that the government may retaliate against them for their participation in this suit. Proceeding under pseudonyms would not prejudice the parties here because the Student Intervenor's identities are not material to the matters before the Court in this case and "the government is viewed as having a less significant interest in protecting its reputation from damaging allegations than the ordinary individual defendant." *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003).

## I. Revealing the Proposed Student Intervenors' Identities Risks Targeting and Retaliation

Revealing the identity of Proposed Student Intervenors would make them vulnerable to retaliation and targeting by the Plaintiff. Immigration and Customs Enforcement agents made 4,264 arrests in Virginia alone in the first seven months of 2025, almost three times the number of total arrests in all of 2024.[5] Virginia ranks among the top ten states for immigration arrests per capita, seeing approximately 490 arrests for every 100,000 immigrants (regardless of documentation status) in the first seven months of 2025.[6]

Proposed Student Intervenors fear, with good reason, that if they are personally identified as opposing the administration's attempt to challenge the Virginia Dream Act, they and their

---

[3] Charlie Savage, Maggie Haberman, & Jonathan Swan, *Sweeping Raids, Giant Camps and Mass Deportations: Inside Trump's 2025 Immigration Plans*, N.Y. Times (Nov. 11, 2023), https://www.nytimes.com/2023/11/11/us/politics/trump-2025-immigration-agenda.html.

[6] *Id.*

families will face a much higher likelihood of being detained and or deportation by ICE. Doe A Decl. ¶¶ 2, 4; Doe B Decl. ¶¶ 2, 4. Proposed Student Intervenors do not have lawful immigration status that permits them to remain permanently in the United States. Doe A Decl. ¶ 3; Doe B Decl. ¶ 3. If their identities and immigration status are publicly disclosed, they may well become subject to targeting and enforcement action. Moreover, they, and their families, would face risks to their safety, freedom, and education as a result of the current administration's aggressive efforts to subject noncitizens to detention and removal. Doe A Decl. ¶¶ 2, 4; Doe B Decl. ¶¶ 2, 4. Alex Doe and her mother have both developed issues sleeping and eating as a result of their anxiety over the threat of immigration enforcement. Doe A Decl. ¶ 4. And Belinda Doe fears the whole life she has built might be stripped away. Doe B Decl. ¶ 4. Maintaining their privacy and the confidentiality of their identities is critical to preserving the safety of them and their families.

## II. Allowing Proposed Student Intervenors to Proceed Under Pseudonyms Does Not Prejudice the Parties

The identities of Proposed Student Intervenors are not necessary to the resolution of this litigation, particularly because they seek to oppose the government in this case. First, the identities of Proposed Student Intervenors have no bearing on the ability of the parties to address the legal issues presented in this case. *See Doe v. Barrow Cnty*., 219 F.R.D. 189, 194 (N.D. Ga. 2003) (granting a motion to proceed pseudonymously where movant "plays a relatively minor role"). The government does not need to investigate the identities of Proposed Student Intervenors to challenge the Dream Act, because the merits of this case turn on a question of law, not factual circumstances: Plaintiff's challenge turns on whether the operation of a state law conflicts with a federal law. *See* ¶¶ 38, 41, 45 Dkt. No. 1. The specific names and identities of the individuals affected by this challenge or the proposed consent judgment in no way bear on this legal question. In their attached declarations, Proposed Student Intervenors have provided

relevant information about their experiences, including their educational background, future plans, and concerns about the harms they will face if the challenge and proposed consent judgment are successful, but in a manner that does not disclose their specific identities.

Moreover, Proposed Student Intervenors' identities are even less important where the government is involved as a party. When a party "challenges the government or government activity, courts are more likel[y] to permit [them] to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing." *Nat'l Ass'n of Waterfront Emps. v. Chao*, 587 F. Supp. 2d 90, 99 n.9 (D.D.C. 2008) (alteration in original) (quoting *Yacovelli v. Moeser*, No. 02-cv-596, 2004 WL 1144183, at *8 (M.D.N.C. May 20, 2004)). That is because "the government is viewed as having a less significant interest in protecting its reputation from damaging allegations" than an ordinary individual. *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). Here, the government has minimal interest in verifying the identities of Proposed Student Intervenors to contest their arguments on the basis of damage to the government's reputation. Since their identities are not material to the government's challenge and no other interest has been identified in the revelation of their identities, this motion should be granted.

**CONCLUSION**

Revealing the identities of Proposed Student Intervenors will add nothing to the arguments being advanced in this case, while exposing them to a significant, non-speculative risk of immigration enforcement and retaliation, including detention and removal. Accordingly, the Court should grant leave to proceed under pseudonyms.

Dated: January 14, 2026

Respectfully submitted,

*s/ Joel McElvain*
Joel McElvain (VA State Bar No. 95215)

Paul R.Q. Wolfson*
Christine L. Coogle*
Orlando Economos*
Andrew L. Bookbinder*
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
tel: (202) 448-9090
fax: (202) 796-4426
pwolfson@democracyforward.org

*Counsel for Proposed Student Intervenors*

* Motion for admission *pro hac vice* pending