IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-01067 |
| | ) | |
| COMMONWEALTH OF VIRGINIA, | ) | |
| | ) | |
| Defendant. | ) | |

**COMMONWEALTH OF VIRGINIA'S**
**BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................... ii

INTRODUCTION ..............................................................................................................1

STATEMENT OF UNDISPUTED FACTS AND ADDITIONAL BACKGROUND...................2

LEGAL STANDARD ........................................................................................................4

ARGUMENT ....................................................................................................................4

I.   NEITHER VA. CODE §§ 23.1-502 NOR -505.1 ARE PREEMPTED BY § 1623(a). ...........................5

   A.  Because it is unavailable to undocumented students, the Domicile Pathway is not preempted.....................................................................................................7

   B.  Because it is not based on Virginia residency, the Tuition Equity Pathway is not preempted....................................................................................................11

     1.  The Tuition Equity Pathway is based on high-school attendance, graduation or equivalency, and tax payments rather than residence.............................................11

     2.  Courts have upheld similar statutes. ......................................................................15

     3.  The cases relied on by the United States are inapposite. .......................................16

   C.  Section § 1623(a)'s exception applies...................................................................20

     1.  Section 1623(a)'s exception applies if any citizen or national of the United States is eligible for in-state tuition....................................................................................20

     2.  The exception applies here because there are numerous pathways for a citizen or national of the United States to be eligible for in-state tuition, including the sole pathway available to undocumented students.........................................................21

      a. Nonresidents are eligible for in-state tuition through the Tuition Equity Pathway.21

      b. Nonresidents are eligible for in-state tuition through numerous other pathways. ..22

II.  INTERPRETING § 1623(a) TO PREEMPT VA. CODE §§ 23.1-502 OR -505.1 WOULD VIOLATE THE TENTH AMENDMENT AND PRINCIPLES OF FEDERALISM.........................................................26

CONCLUSION...............................................................................................................28

# **TABLE OF AUTHORITIES**

**Cases**                                                **Page(s)**

*Air Evac EMS, Inc. v. Cheatham*,
910 F.3d 751 (4th Cir. 2018)................................................................5, 6

*Altria Grp., Inc. v. Good*,
555 U.S. 70 (2008) ...................................................................................5

*In re Am. W. Airlines, Inc.*,
217 F.3d 1161 (9th Cir. 2000)................................................................20

*Ark. Game & Fish Comm'n v. United States*,
568 U.S. 23 (2012) .................................................................................17

*Bartenwerfer v. Buckley*,
598 U.S. 69 (2023) .................................................................................27

*Cohens v. Virginia*,
19 U.S. 264 (1821) .................................................................................17

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) .................................................................................5

*Davis v. Mich. Dept. of Treasury*,
489 U.S. 803 (1989) ...............................................................................23

*De Canas v. Bica*,
424 U.S. 351 (1976) .................................................................................6

*Equal Access Educ. v. Merten*,
305 F. Supp. 2d 585 (E.D. Va. 2004) ...............................................16, 17

*Gaines Motor Lines, Inc. v. Klaussner Furniture Indus.*,
734 F.3d 296 (4th Cir. 2013)....................................................................6

*Gentry v. E. W. P'ners Club Mgmt. Co.*,
816 F.3d 228 (4th Cir. 2016)..................................................................11

*George Mason Univ. v. Veng*,
No. 111776, 2012 Va. LEXIS 232 (Va. Sept. 14, 2012)...........................8

*Gregory v. Ashcroft*,
501 U.S. 452 (1991) .................................................................................5

*Hagan v. Va. Commonwealth Univ.*,
41 Va. Cir. 269 (City of Richmond Cir. Ct. 1997) ..................................8

*Harbison v. George Mason Univ.*,
102 Va. Cir. 344 (Fairfax Cnty. Cir. Ct. 2019)..................................................................8

*Just Puppies, Inc. v. Brown*,
123 F.4th 652 (4th Cir. 2024)..........................................................................................6

*Kinuani v. George Mason Univ.*,
No. 0042-22-4, 2023 Va. App. LEXIS 9 (Va. Ct. App. Jan. 10, 2023)..................................8

*Knight v. Boehringer Ingelheim Pharm., Inc.*,
984 F.3d 329 (4th Cir. 2021).............................................................................................4

*Lewis v. Zatecky*,
993 F.3d 994 (7th Cir. 2021).............................................................................................17

*Lite-Netics, LLC v. Nu Tsai Cap. LLC*,
60 F.4th 1335 (Fed. Cir. 2023)..........................................................................................20

*Martin v. United States*,
605 U.S. 395 (2025) ...........................................................................................................5

*Martinez v. Regents of Univ. of Cal.*,
241 P.3d 855 (Cal. 2010)............................................................. 11, 12, 16, 18, 21

*Medtronic, Inc. v. Lohr*,
518 U. S. 470 (1996) .........................................................................................................5

*Milla v. Brown*,
109 F.4th 222 (4th Cir. 2024)...........................................................................................4

*Murphy v. NCAA*,
584 U.S. 453 (2018) ........................................................................... 26, 27, 28

*N. Va. Hemp & Agric., LLC v. Commonwealth*,
125 F.4th 472 (4th Cir. 2025)........................................................... 6, 10, 26

*Nat'l Ass'n of Regulatory Util. Comm'rs v. FERC*,
475 F.3d 1277 (D.C. Cir. 2007) ........................................................................................4

*New York v. United States*,
505 U.S. 144 (1992) ....................................................................................................26, 27

*Nw. Austin Mun. Util. Dist. No. One v. Holder*,
557 U.S. 193 (2009) ..........................................................................................................6

*Oklahoma v. Castro-Huerta*,
597 U.S. 629 (2022) ..........................................................................................................6

*Printz v. United States*,
521 U.S. 898 (1997) ......................................................................................27

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
579 U.S. 115 (2016) ......................................................................................5

*Ruiz v. Robinson*,
892 F. Supp. 2d 1321 (S.D. Fla. 2012) ......................................................10

*Tafflin v. Levitt*,
493 U.S. 455 (1990) ......................................................................................5

*Toll v. Moreno*,
458 U.S. 1 (1982) .......................................................................................5, 6

*United States v. E. I. du Pont de Nemours & Co.*,
366 U.S. 316 (1961) ....................................................................................18

*United States v. Fontaine*,
697 F.3d 221 (3d Cir. 2012)........................................................................20

*United States v. Kentucky Council on Postsecondary Educ.*,
No. 3:25-cv-00028, 2026 WL 880597 (E.D. Ky. Mar. 31, 2026)...........18, 19

*United States v. Oklahoma*,
No. 6:25-cv-00265, 2025 WL 2815662 (E.D. Okla. Aug. 7, 2025)............18

*United States v. Oklahoma*,
No. 6:25-cv-00265, 2025 WL 2815660 (E.D. Okla. Aug. 29, 2025)..........18

*United States v. Smith*,
No. 3:24-cr-00065-1, 2025 WL 422602 (E.D. Va. Feb. 6, 2025)...............20

*United States v. Smith*,
No. 25-4065 (4th Cir.) .................................................................................20

*United States v. Texas*,
No. 7:25-cv-00055, 2025 WL 1583869 (N.D. Tex. June 4, 2025) .............18

*United States v. Walz*,
No. 0:25-cv-02668, 2026 WL 851231 (D. Minn. Mar. 27, 2026) ..7, 11, 12, 15, 16, 18, 20, 21

*Va. Uranium, Inc. v. McAuliffe*,
147 F. Supp. 3d 462 (W.D. Va. 2015)........................................................19

*Va. Uranium, Inc. v. Warren*,
848 F.3d 590 (4th Cir. 2017).......................................................................19

*Va. Uranium, Inc., v. Warren*,
    587 U.S. 761 (2019) ................................................................. 5, 6, 19

*Walters v. Weiss*,
    392 F.3d 306 (8th Cir. 2004)...................................................................4

*Wash. Gas Light Co. v. Prince George's Cnty. Council*,
    711 F.3d 412 (4th Cir. 2012).................................................................6

*West Virginia v. EPA*,
    597 U.S. 697 (2022)...............................................................................23

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ........................................................................26, 27

*Young Conservatives of Tex. Found'n v. Univ. of N. Tex.*,
    597 F. Supp. 3d 1062 (E.D. Tex. 2022)...............................................17

*Young Conservatives of Tex. Found'n v. Smatresk*,
    73 F.4th 304 (5th Cir. 2023).........................................................17, 18

**Constitutional Provisions**                                                **Page(s)**

U.S. Const. art. I, § 1.............................................................................26

U.S. Const. art. VI, cl. 2 ...................................................................26, 27

U.S. Const. amend. X.............................................................................26

U.S. Const. amend. XIV, § 1 ................................................................10

**Statutes**                                                                 **Page(s)**

Illegal Immigration Reform and Immigrant Responsibility Act,
    Pub. L. No. 104-208, 110 Stat. 3009-546 (1996) ..................... 1, 2, 16, 17, 19, 27

Personal Responsibility and Work Opportunity Reconciliation Act of 1996
    Pub. L. No. 104-193, 110 Stat. 2105 ...............................................9, 19

Veterans Access, Choice, and Accountability Act of 2014,
    Pub. L. No. 113-146, 128 Stat. 1754 ....................................................24

8 U.S.C. § 1101(a)(33) ...........................................................................11

8 U.S.C. § 1601(2), (3), (4), (6), (7)......................................................28

8 U.S.C. § 1621(d) ...............................................................................9, 19

8 U.S.C. § 1623(a) ..........................................................................*passim*

38 U.S.C. § 3679(c) ...........................................................................................24

Cal. Stats. 2001, ch. 814, pp. 6652-54...........................................................1, 16

Cal. Educ. Code § 68130.5 .................................................................................16

Minn. Stat. § 135A.043 ......................................................................................15

Okla. Stat. tit. 70, § 3242(A)(2) .........................................................................19

Act of June 16, 2001, 77th Leg., R.S., ch. 1392, 2001 Tex. Gen. Laws 3582.............................1

Tex. Educ. Code § 54.051(d) ..............................................................................17

Tex. Educ. Code § 54.052(a)(3) ..........................................................................19

2020 Va. Acts, ch. 766 ..........................................................................................3

2020 Va. Acts, ch. 767 ..........................................................................................3

2022 Va. Acts, ch. 1, § 4-2.01(b)(6) (spec. sess. I) ...........................................24

2026 Va. Acts, ch. 7, § 4-2.01(b)(6).....................................................................24

Va. Code § 22.1-5(A)(4) ......................................................................................14

Va. Code § 23.1-200(A) .....................................................................................3, 8

Va. Code § 23.1-203(15) ....................................................................................3, 8

Va. Code § 23.1-500, et seq.................................................................................2

Va. Code § 23.1-502 .....................................................................................*passim*

Va. Code § 23.1-502(A) ........................................................................................7

Va. Code § 23.1-503(J) .......................................................................................10

Va. Code § 23.1-505(B), (C) ...............................................................................24

Va. Code § 23.1-505.1 ..................................................................................*passim*

Va. Code § 23.1-506(A)(2).................................................................................24

Va. Code § 23.1-506(A)(8).................................................................................24

Va. Code § 23.1-506(B)(1)..................................................................................23

Va. Code § 23.1-506(C).......................................................................................23

Va. Code § 23.1-507 ..................................................................................24

Va. Code § 23.1-510(D) ................................................................................8

**Regulation**                                               **Page(s)**

13 Ky. Admin. Regs. 2:045(8)(4) ................................................................19

**Rules**                                                **Page(s)**

Local Civil Rule 56(B) ..................................................................................2

Fed. R. Civ. P. 56(a) ......................................................................................4

**Other Sources**                                        **Page(s)**

BLACK'S LAW DICTIONARY (12th ed. 2024) ..............................................28

SCHEV, DOMICILE GUIDELINES (Jan. 11, 2021),
*available at* https://tinyurl.com/ycxvspds ..........................................7, 9

SCHEV, DOMICILE GUIDELINES add. A (Jan. 7, 2020),
*available at* https://tinyurl.com/y67rsey9 ..........................................7, 9

*E24: Fall Headcount by Tuition Status and Level*, RESEARCH.SCHEV.EDU
(2025-26), *available at* https://tinyurl.com/5zz78eay ...........................3

*Eligibility for In-State Tuition*, SCHEV.EDU (last accessed April 17, 2026),
*available at* https://tinyurl.com/yxpf6t6z ...........................................7, 9

Att'y Gen. of Va., Mem., IMMIGRATION LAW COMPLIANCE UPDATE (Sept. 5,
2002) ..................................................................................................16

NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) .................................11

Stephen L. Nelson et al., *Reduced Tuition Benefits for Undocumented Immigrant
Students: The Implications of a Piecemeal Approach to Policymaking*,
53 SANTA CLARA L. REV. 897 (2013) .....................................................18

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabr. 2002) ..........11

Defendant Commonwealth of Virginia respectfully submits this brief in support of its motion for summary judgment in its favor and against Plaintiff United States of America.

## INTRODUCTION

The case presents the question of whether undocumented students may be allowed in-state tuition rates at Virginia's postsecondary educational institutions under a 1996 federal law. Such allowances have been made by State statutes since 2001, with Texas and California taking the lead in designing compliant statutes. Act of June 16, 2001, 77th Leg., R.S., ch. 1392, 2001 Tex. Gen. Laws 3582; Cal. Stats. 2001, ch. 814, pp. 6652-54. They have proliferated into other States, including Virginia in 2020. But it was not until 2025 that the federal government began suing States, contending that 8 U.S.C. § 1623(a) ("§ 1623(a)")—a provision of the 1996 Illegal Immigration Reform and Immigrant Responsibility Act (the "Act"), Pub. L. No. 104-208, div. C, tit. V(A), sec. 505, 110 Stat. 3009-546, 3009-672—expressly preempted those State statutes. But it does not apply here according to section 1623(a)'s plain language.

The federal government contends that § 1623(a) expressly preempts the provision for domicile-based in-state tuition under Va. Code § 23.1-502 ("Domicile Pathway") and the provision for equity-based in-state tuition under Va. Code § 23.1-505.1 ("Tuition Equity Pathway") insofar as they may extend eligibility to undocumented students. But the Domicile Pathway is not available to undocumented students at all, so it plainly is not preempted by § 1623(a)'s provision that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State." And the Tuition Equity Pathway's availability "regardless of citizenship or immigration status," Va. Code § 23.1-505.1, is based on factors of high-school attendance and tax payments—rather than "on the basis of residence within" Virginia—and, therefore, not preempted by § 1623(a). Indeed, *nonresidents are eligible for in-state tuition through the Tuition*

*Equity Pathway*. And third, the failure to preempt is also apparent from a nonresident student's eligibility for in-state tuition "in no less an amount, duration, and scope" than an eligible "alien who is not lawfully present." 8 U.S.C. § 1623(a). In fact, some of the pathways for in-state tuition are *only* available to nonresidents. Moreover, construing § 1623(a) to preempt Va. Code §§ 23.1-502 and -505.1 would amount to an impermissible federal commandeering of the Commonwealth in violation of the Tenth Amendment and principles of federalism.

The Court should, accordingly, award summary judgment to the Commonwealth and against the United States.

## STATEMENT OF UNDISPUTED FACTS AND ADDITIONAL BACKGROUND

For its statement of undisputed facts pursuant to Local Civil Rule 56(B), the Commonwealth incorporates by reference the parties' Stipulation of Facts Not in Dispute ("SFNID"), ECF No. 83. For additional background, the Commonwealth states the following:

1.      In 1996, Congress passed the Act. The Act included what was codified at § 1623(a).

2.      Section 1623(a) states: "Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident."

3.      The Commonwealth of Virginia has a statutory scheme that dictates how public universities and colleges are to determine tuition rates for particular students. *See generally* Va. Code § 23.1-500, et seq.; SFNID ¶¶ 1-67. Certain students are eligible for in-state tuition, which is generally lower than out-of-state tuition. SFNID ¶¶ 6, 9-11. This statutory scheme was first enacted in 1984 and has been amended several times since. SFNID ¶ 2.

4. The most common pathway for obtaining in-state tuition is through the Domicile Pathway under Va. Code § 23.1-502. SCHEV, *E24: Fall Headcount by Tuition Status and Level*, RESEARCH.SCHEV.EDU (2025-26), *available at* https://tinyurl.com/5zz78eay; SFNID ¶¶ 16-25. To be eligible under that pathway, one must have a Virginia domicile for at least one year before the date of the alleged entitlement. SFNID ¶ 20.

5. In 2020, Virginia established the Tuition Equity Pathway to in-state tuition. 2020 Va. Acts, chs. 766 & 767. This pathway established in-state tuition eligibility for any student who attended high school for at least two years in the Commonwealth, who graduated from a public or private high school or program of home instruction in the Commonwealth or passed a qualifying equivalency exam, and who can show that he himself or, in the case of a dependent, and who can show that he himself or, in the case of a dependent, at least one parent, guardian, or person in loco parentis filed Virginia income tax returns for at least two years prior to the date of registration or enrollment. *See generally* SFNID ¶¶ 26-37. It is available to students "regardless of citizenship or immigration status." Va. Code § 23.1-505.1.

6. The State Council of Higher Education for Virginia ("SCHEV") is a state entity created by law to "lead state-level strategic planning and policy development and implementation" for institutions of higher education in Virginia, among other things. *Id.* § 23.1-200(A). SCHEV is empowered to "[a]dopt such policies and regulations as the Council deems necessary to implement its duties established by state law" and "[e]ach public institution of higher education shall comply with such policies and regulations." *Id.* § 23.1-203(15). SCHEV has issued guidelines related to establishing domicile in Virginia as well as explaining the various pathways to become eligible for in-state tuition. SFNID ¶ 24. It also keeps track of data showing how many students utilize the various pathways for each school year. *E.g.*, *id.* ¶¶ 37, 46, 48, 52, 54, 56, 57, 59, 61, 62, 66.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable [factfinder] could return a verdict for the nonmoving party, and a fact is material if it might affect the outcome of the suit under the governing law." *Milla v. Brown*, 109 F.4th 222, 228 (4th Cir. 2024) (quoting *Haze v. Harrison*, 961 F.3d 654, 658 (4th Cir. 2020)). "Where, as in the present case, the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Walters v. Weiss*, 392 F.3d 306, 310 (8th Cir. 2004). Questions of preemption and of commandeering present questions of law. *Knight v. Boehringer Ingelheim Pharm., Inc.*, 984 F.3d 329, 337 (4th Cir. 2021) ("Preemption is a question of law[.]"); *Nat'l Ass'n of Regulatory Util. Comm'rs v. FERC*, 475 F.3d 1277, 1283 (D.C. Cir. 2007) ("Whether [the federal government] has commandeered states is a question of law[.]").

## ARGUMENT

Summary judgment should be awarded to the Commonwealth and against the United States because neither of the challenged Virginia statutes come within § 1623(a)'s preemptive scope, and even if they did, this would amount to an unconstitutional commandeering.

Determining whether the challenged Virginia laws are preempted by § 1623(a) is a two-step process. First, this Court determines if undocumented students receive benefits "on the basis of residence." If not, there is no conflict between § 1623(a) and the Virginia statutes at issue, and thus, there can be no preemption. Second, the Court determines whether the exception in § 1623(a) applies—whether a U.S. citizen or national is eligible for the same benefits without regard to whether he or she is such a resident. To succeed on its preemption claim, the United States must prevail at both steps of the analysis.

**I.** <u>**NEITHER VA. CODE §§ 23.1-502 NOR -505.1 ARE PREEMPTED BY § 1623(a).**</u>

The federal government's claim fails because neither the Domicile Pathway under Va. Code § 23.1-502 nor the Tuition Equity Pathway under Va. Code § 23.1-505.1 are within the coverage of § 1623(a)'s express preemption clause.

"[U]nder our federal system, the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause." *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991) (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)). "The Supremacy Clause supplies a rule of decision when federal and state laws conflict[,]" *Martin v. United States*, 605 U.S. 395, 409 (2025), such that "Congress has the power to preempt state law," *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

But courts are to tread carefully when asked to nullify state law based on federal preemption. "The preemption of state laws represents 'a serious intrusion into state sovereignty.'" *Va. Uranium, Inc., v. Warren*, 587 U.S. 761, 763 (2019) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 488 (1996)). The Supreme Court, in some cases, has applied a presumption against preemption "when the text of a pre-emption clause is susceptible of more than one plausible reading," *Altria Group, Inc. v. Good*, 555 U.S. 70, 77 (2008), but has declined to do so in others, *see Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016). This Court "need not enter the great preemption presumption wars here" because the plain language of the preemption clause at issue, and the challenged state laws, shows that there is no conflict and, thus, no preemption. *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 762 n.1 (4th Cir. 2018).

Indeed, the United States has brought a single express preemption claim based on § 1623(a), Compl. ¶¶ 44-45, ECF No. 1, without claiming that the challenged Virginia statutes intrude upon the "plenary and exclusive" "federal power over immigration," *Toll v. Moreno*,

458 U.S. 1, 26 (1982). Nor could they persuasively claim that. The Supreme Court "has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus *per se* pre-empted" as such. *Toll*, 458 U.S. at 26 (quoting *De Canas v. Bica*, 424 U.S. 351, 355 (1976)). "[T]he fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." *Id.* at 27 (emphasis omitted) (quoting *De Canas*, 424 U.S. at 355).

When Congress enacts a statute with an "express preemption clause," it "speaks directly to preemption in the words of the statute." *Air Evac EMS*, 910 F.3d at 761. The scope of "Congress' preemptive intent" is determined from "the plain wording of the clause." *N. Va. Hemp & Agric., LLC v. Commonwealth*, 125 F.4th 472, 493 (4th Cir. 2025). And because "silence cannot constitute express preemption," *id.* at 494, "matters beyond" the clause's plain textual "reach are not pre-empted," *Gaines Motor Lines, Inc. v. Klaussner Furniture Indus.*, 734 F.3d 296, 306 (4th Cir. 2013) (quoting *Wash. Gas Light Co. v. Prince George's Cnty. Council*, 711 F.3d 412, 420 (4th Cir. 2012)). Preemption is not accomplished by "[i]nvoking some brooding federal interest[,]" *Va. Uranium*, 587 U.S. at 767, "legislative intentions unmoored from any statutory text," or "speculation as to Congress' intent," *Just Puppies, Inc. v. Brown*, 123 F.4th 652, 661 (4th Cir. 2024) (quoting *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022)). In a case where express preemption is asserted, the Court's "task is simply to interpret the [clause's] words as they are written." *Air Evac EMS*, 910 F.3d at 762.

Moreover, the federal courts' "usual practice is to avoid the unnecessary resolution of constitutional questions." *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 197 (2009). If "§ 1623 does not preempt the [challenged] statutes," then the Court may "decline[] to consider

[the] Tenth Amendment commandeering argument because it [would] not [be] necessary to the resolution of the case." *United States v. Walz*, No. 0:25-cv-02668, 2026 WL 851231, at *11 n.13 (D. Minn. Mar. 27, 2026).

Examination of the challenged Virginia statutes against the text of § 1623(a) reveals that the latter does not preempt the former.

### A. <u>Because it is unavailable to undocumented students, the Domicile Pathway is not preempted.</u>

Section § 1623(a) does not preempt Va. Code § 23.1-502's Domicile Pathway for at least three reasons.

First, undocumented students are categorically ineligible for in-state tuition through the Domicile Pathway. The first portion of § 1623(a) provides the following prohibition: "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit." Under Va. Code § 23.1-502(A), a student is eligible for in-state tuition if he (i) has a Virginia domicile "for a period of at least one year immediately succeeding the establishment of domiciliary intent . . . and immediately prior to the date of the alleged entitlement" and (ii) has abandoned any previous domicile. But SCHEV has stated that undocumented students categorically cannot have a Virginia domicile under Va. Code § 23.1-502(A). SCHEV, DOMICILE GUIDELINES add. A, at 5 (Jan. 7, 2020) ("[Undocumented aliens] are not eligible to be reviewed for domicile."), *available at* https://tinyurl.com/y67rsey9; *see also* SCHEV, DOMICILE GUIDELINES pt. II. A, art. 1, § 03.A.2, at 5 (Jan. 11, 2021) ("If the student is neither a national nor an eligible alien, the student is not eligible for further domicile analysis."), *available at* https://tinyurl.com/ycxvspds; *Eligibility for In-State Tuition*, SCHEV.EDU, *available at* https://tinyurl.com/yxpf6t6z (last accessed April 17, 2026)

("Students unable to present valid, current INS documentation of their legal status cannot demonstrate domicile."); SFNID ¶ 25.

This statement in SCHEV's Guidelines is authoritative in the interpretation and application of Va. Code § 23.1-502. SCHEV was created by statute to "lead state-level strategic planning and policy development and implementation" for institutions of higher education in Virginia. Va. Code § 23.1-200(A); SFNID ¶ 23. It is expressly empowered by the General Assembly to "[a]dopt such policies and regulations as the Council deems necessary to implement its duties established by state law." Va. Code § 23.1-203(15); SFNID ¶ 23. And "[e]ach public institution of higher education" in Virginia is required to "comply with such policies and regulations." Va. Code § 23.1-203(15); SFNID ¶ 23. Moreover, the General Assembly specifically commanded SCHEV "[t]o ensure the application of uniform criteria in . . . determining eligibility for in-state tuition charges" by "issu[ing] and revis[ing] domicile guidelines to be incorporated by all public institutions of higher education in their admissions applications." Va. Code § 23.1-510(D); SFNID ¶ 24.

Both the Supreme Court of Virginia and the Court of Appeals of Virginia have recognized that the Guidelines are authoritative in the interpretation and application of Va. Code § 23.1-502's Domicile Pathway. *See, e.g., George Mason Univ. v. Veng,* No. 111776, 2012 Va. LEXIS 232, at *4-7 (Va. Sept. 14, 2012) (reversing trial court decision and upholding university decision on domicile relying in part on the Guidelines); *Kinuani v. George Mason Univ.*, No. 0042-22-4, 2023 Va. App. LEXIS 9, at *7-10 (Va. Ct. App. Jan. 10, 2023) (relying on Guidelines to affirm denial of in-state tuition based on domicile, recognizing that "GMU had no discretion to disregard the SCHEV guidelines when making its decision"); *Harbison v. George Mason Univ.*, 102 Va. Cir. 344, 346 (Fairfax Cnty. Cir. Ct. 2019) (relying on Guidelines); *Hagan v. Va. Commonwealth Univ.*, 41 Va. Cir. 269, 270 (City of Richmond Cir. Ct. 1997) (noting that VCU relied on Guidelines in

making domicile decision). Accordingly, they unequivocally affirm that undocumented students are never considered to be domiciled in Virginia under Va. Code § 23.1-502.

Second, the United States points to no evidence that an undocumented student in Virginia has *ever* been given in-state tuition through the Domicile Pathway or that undocumented students are even eligible to do so. There is nothing in Va. Code § 23.1-502 itself that so much as suggests that an undocumented student could establish domicile under it, and it has been authoritatively interpreted and applied so as not to allow an undocumented student to establish domicile. SCHEV, DOMICILE GUIDELINES, *supra*, add. A, at 5; *id.* pt. II. A, art. 1, § 03.A.2, at 5; *Eligibility for In-State Tuition*, SCHEV.EDU, *supra*; SFNID ¶ 25. Simply put, without any evidence from the United States on this point, there is no legal or factual predicate to challenge the constitutionality of Va. Code § 23.1-502, and granting summary judgment to the Commonwealth is appropriate.

Third, the United States' interpretation of Va. Code § 23.1-502 is at odds with the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"), Pub. L. No. 104-193, 110 Stat. 2105. Under PRWORA, a State can provide postsecondary educational benefits to an undocumented student, but it must do so "through the enactment of a State law . . . which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d). Thus, because Va. Code § 23.1-502 plainly does not "affirmatively provide[] for" undocumented students' "eligibility" for in-state tuition, *id.*, the Commonwealth could not provide such eligibility through the Domicile Pathway under PRWORA. The United States cannot have it both ways. It cannot ask this Court to misconstrue Va. Code § 23.1-502—to provide in-state tuition for undocumented students when it clearly could not do so under PRWORA—just so that it may be considered preempted under § 1621. That is not how preemption works.

Perhaps recognizing that there is no basis for doing so, the United States does not attack Va. Code § 23.1-502 head-on. Instead, it attempts a convoluted, sideways feint that rests entirely on conflating a student with his or her parent—against all logic. The United States points to Va. Code § 23.1-503(J), Compl. ¶ 23, which states that a student may not "be deemed ineligible to establish domicile and receive in-state tuition charges solely on the basis of the immigration status of his parent," Va. Code § 23.1-503(J). Based on this provision, the United States makes a speculative and unsupported leap, arguing that "[a]s a result, Virginia law affirmatively removes immigration status as a barrier to establishing domicile and obtaining in-state tuition benefits." Compl. ¶ 23. But Va. Code § 23.1-503(J) is completely silent as to the immigration status of the student seeking in-state tuition.[1] And as Va. Code § 23.1-505.1 demonstrates, *see infra* Argument pt. I.B.1, if the General Assembly had wanted to remove immigration status of the student as a barrier to in-state tuition, it knows how to do so. And as explained above, the Guidelines confirm that undocumented students are ineligible to establish domicile in Virginia for the purposes of obtaining in-state tuition. Accordingly, Va. Code § 23.1-503(J) has no bearing on whether Va. Code § 23.1-502 conflicts with § 1623(a).

The unavailability of the Domicile Pathway to undocumented students plainly indicates that Va. Code § 23.1-502 is outside of § 1623(a)'s preemptive scope. Because a student eligible for Va. Code § 23.1-502's Domicile Pathway to in-state tuition categorically cannot be "an alien who is not lawfully present in the United States," 8 U.S.C. § 1623(a), it is outside of "the plain wording of the clause," *N. Va. Hemp & Agric.*, 125 F.4th at 493, and not preempted.

---

[1] Statutes conditioning in-state tuition on the parents' immigration status disqualify even students who are U.S. citizens who reside in-state—when their parents' immigration status is undocumented. *E.g.*, *Ruiz v. Robinson*, 892 F. Supp. 2d 1321 (S.D. Fla. 2012) (holding that such an arrangement violated the Fourteenth Amendment's Equal Protection Clause).

**B.** **Because it is not based on Virginia residency, the Tuition Equity Pathway is not preempted.**

    **1.** **The Tuition Equity Pathway is based on high-school attendance, graduation or equivalency, and tax payments rather than residence.**

Because eligibility for in-state tuition through Va. Code § 23.1-505.1's Tuition Equity Pathway is based on high-school attendance, graduation or equivalency, and tax payments, rather than residence, § 1623(a) does not preempt it.

Again, the first portion of § 1623(a) provides that an undocumented student "shall not be eligible on the basis of residence within a State" for in-state tuition. "The reference to the benefit being *on the basis of residence* must have some meaning. It can only qualify, and thus limit, the prohibition's reach." *Martinez v. Regents of Univ. of Cal.*, 241 P.3d 855, 864 (2010) (emphasis added). The words "'on the basis of' . . . connote 'but-for' causation." *Gentry v. E. W. P'ners Club Mgmt. Co.*, 816 F.3d 228, 235-36 (4th Cir. 2016). "A 'basis' is '[t]he justification for or reasoning behind something.'" *Id.* at 236 (alteration in original) (quoting NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010)); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 182 (unabr. 2002) (defining "basis" as "the basic principle"). And "[t]he term 'residence[,]'" here, "means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33). "Read all together, a state statute would be preempted by the first portion of § 1623 if it provides postsecondary education benefits to unlawful noncitizens because their principal, actual dwelling place is within the State." *Walz*, 2026 WL 851231, at *8.

Va. Code § 23.1-505.1 is not preempted by § 1623(a) for the reason that it does not provide in-state tuition to undocumented students "*because* their principal, actual dwelling place is within the State." *Id.* at *8 (emphasis added). In fact, there is no residence or domicile requirement in Va. Code § 23.1-505.1 at all. The statute, instead, provides in-state tuition to the student:

(1) because he "attended high school for at least two years in the Commonwealth;"

(2) because he graduated "from a public or private high school or program of home instruction in the Commonwealth" or passed "a high school equivalency examination approved by the Secretary of Education;" and

(3) because he, a parent, a guardian, or a person in loco parentis "filed, unless exempted by state law, Virginia income tax returns for at least two years prior to the date of registration or enrollment."

Va. Code § 23.1-505.1. Meeting these requirements for in-state tuition "certainly require[s] some connection to" Virginia, but it "do[es] not require [Virginia] residency." *Walz*, 2026 WL 851231, at *8. And "for the simple reason that many *nonresidents* may qualify for it," the Tuition Equity Pathway's requirements "are not the functional equivalent of residing in" Virginia. *Id.* at *9 (quoting *Martinez*, 241 P.3d at 864).

A nonresident would qualify under the first and second conditions related to high school, for example:

- if he attended and graduated from a Virginia public high school while living in a neighboring State, SFNID ¶ 33.

- if he attended and graduated from a Virginia private boarding school while living in *any* other state, *id.* ¶ 34;

- if he attended and graduated from a Virginia high school but then moved to another State; or

- if he attended a Virginia high school for two years and moved before passing a high-school equivalency test.

*See also Walz*, 2026 WL 851231, at *8; *Martinez*, 241 P.3d at 864.

And a nonresident would qualify under the third condition related to filing Virginia incomes tax returns if he or his parent or guardian received taxable income from Virginia sources because doing so would require filing a Virginia income tax return. SFNID ¶¶ 35-36, 44. Taxable income can come from a number of sources including income from working a job in Virginia;

income received from the rental or sale of Virginia real estate; income, including interest, received from a partnership that operates in Virginia; and prizes paid by the Virginia lottery and gambling winnings from wagers placed or paid at a Virginia location. *Id.* ¶ 35. Indeed, there is even a separate form for nonresidents to submit when filing a Virginia income tax return. *Id.*

Though the United States concedes that "Virginia Code § 23.1-505.1 appears to create a pathway to in-state tuition eligibility separate from traditional domicile requirements," it argues that "Virginia law makes clear that eligibility based on high school attendance necessarily reflects a prior determination of residency under the Commonwealth's education statutes." Compl. ¶ 25. This is wrong for four reasons.

First, it is simply not true that high school attendance necessarily reflects a prior determination of residency under the Commonwealth's education statutes. The United States ignores an important word in Va. Code § 23.1-505.1. That word is "private." Eligibility for in-state tuition under Va. Code § 23.1-505.1 does not require that a student attend or graduate from a public high school in Virginia; it applies with equal force to attendance at or graduation from a *private* high school. This matters because anyone (whether domiciled or not in Virginia) can attend private schools. In fact, there are numerous boarding schools in Virginia that represent that their students are from States other than Virginia. SFNID ¶ 34. For instance, the Madeira high school in McLean states that it has students from twenty States. *Id.* The Woodberry Forest School claims that it has students from twenty-seven States. *Id.* Students who attend private high schools in Virginia may not be domiciled or even be residents in Virginia and instead may be domiciled or maintain residences in other States. This alone establishes that Va. Code § 23.1-505.1 is not based on residence.

Second, the United States also forgets that non-residents are specifically authorized to attend public high schools in Virginia by state law. Va. Code § 22.1-5(A)(4) states that students "who reside beyond the boundaries of the Commonwealth" can be admitted into public schools in Virginia. SFNID ¶ 33. And certain Virginia school districts have programs that allow non-resident to attend public schools in their district. *Id*. The United States attempts to navigate around this fact by focusing on "tuition-free attendance" at Virginia public high schools. Compl. ¶ 27. But Va. Code § 23.1-505.1 does not limit the Tuition Eqity Pathway to only those who attended high school in Virginia and did not pay tuition. Those students that resided in other States, but paid tuition to attend high school in Virginia, are just as eligible for in-state tuition as those that attended high school in Virginia for free.

Third, the United States ignores the fact that Va. Code § 23.1-505.1 does not require that students be attending high school in Virginia when they apply to college. It merely requires that students have finished two years of high school in Virginia at some point. Thus, if a student attended high school in Lexington, Virginia, for their freshman and sophomore years of high school, but then moved to Kentucky thereafter, he or she would still be eligible for in-state tuition in Virginia if he passed a high-school equivalency exam and his or her parents paid taxes in Virginia for the last two years.

Fourth, the United States attempts to change the standard when it focuses on a "prior determination of residency." Compl. ¶ 25. A nonresident student receiving in-state tuition through the Tuition Equity Pathway does not, within the meaning of § 1623(a)'s prohibition, receive in-state tuition "on the basis of residence within a State" if he formerly resided in Virginia. Context frames the "residence within a State" limitation as whether one "*is* such a resident." 8 U.S.C. § 1623(a) (emphasis added). This is present tense, not past tense. In § 1623(a), Congress certainly

could have said "was" or "has been" rather than "is" but did not do so. Thus, the United States fails in its attempted broadening of § 1623(a)'s prohibition.

Moreover, nonresidents receiving in-state tuition through the Tuition Equity Pathway are not necessarily former Virginia residents. Any number of nonresidents are eligible for the Tuition Equity Pathway. A student who has lived his entire life in the District of Columbia or Maryland, and who pays tuition to attend public high school in Falls Church, and whose parent commutes to work in Virginia and thus pays taxes to Virginia, would be eligible. *See* SFNID ¶¶ 33, 35-36. A student whose family has always lived in South Carolina, but who attends high school at The Madeira School, and whose parent has rental property or is with a partnership that operates in Virginia, would be eligible. *See id.* ¶¶ 34-36. They are eligible just as much as a student who lived in and graduated public high school in Richmond but who then moved to Tennessee for a gap year (or two) before college with her mother while her father continued to reside and pay taxes in Virginia.

In-state tuition through the Tuition Equity Pathway does not depend on residency, so there is no but-for causation, and there is no preemption.

### 2. Courts have upheld similar statutes.

Decisions involving Minnesota's and California's similar statutes are in accord.

In *Walz*, the U.S. District Court for the District of Minnesota held that the first portion of § 1623(a) did not preempt a Minnesota statute that extended in-state tuition to students who attended a Minnesota high school for three or more years, graduated from a Minnesota high school or attained an equivalent in Minnesota, and—if an undocumented student—complied with selective service registration requirements and applied for lawful immigration status. 2026 WL 851231, at *1, *7-10; Minn. Stat. § 135A.043. Because the Minnesota statute "does not determine

eligibility for [in-state tuition] on the basis of residence[,]" it was not preempted. *Walz*, 2026 WL 851231, at *10.

And in *Martinez*, the Supreme Court of California held that the first portion of § 1623(a) did not cover California's statute that extended in-state tuition to students who attended a California high school for three or more years, graduated from a California high school or attained an equivalent, and—if an undocumented student—filed an affidavit to the effect that he had applied, or would apply, for lawful immigration status as soon as eligible. 241 P.3d at 861, 862-66; Cal. Stats. 2001, ch. 814, pp. 6652-54 (codified at Cal. Educ. Code § 68130.5). There was no preemption because eligibility for in-state tuition the California statute was "based on *other* criteria" than residence within the State. *Martinez*, 241 P.3d at 863.

The reasoning of these decisions supports § 1623(a)'s non-preemption of Va. Code § 23.1-505.1.

### 3. The cases relied on by the United States are inapposite.

Cases cited by the United States do not dictate the outcome here.

First, *Equal Access Education v. Merten*, 305 F. Supp. 2d 585 (E.D. Va. 2004), is inapposite, *cf.* H'rg Tr. 44-45 (United States' reference to *Equal Access*), ECF No. 80. It did not involve a preemption challenge under the Act. There, the plaintiffs brought preemption, Commerce Clause, and Due Process Clause challenges against the Virginia Attorney General's position, at the time, that "undocumented aliens should not be admitted into our public colleges and universities at all." 305 F. Supp. 2d at 591 (quoting Att'y Gen. of Va., Mem., IMMIGRATION LAW COMPLIANCE UPDATE 5 (Sept. 5, 2002)). In arguing preemption, the plaintiffs referenced § 1623(a) to "argue that because it is only possible to discuss in-state tuition if a student has already been admitted to a public

college or university, Congress has implicitly recognized that illegal aliens might be attending public post-secondary institutions and has not acted to prohibit them from doing so." *Id.* at 606.

The Court rejected this argument, stating that "[t]he more persuasive inference to draw from § 1623 is that public post-secondary institutions need not admit illegal aliens at all." *Id.* at 606. Going further, the Court added that, if the institutions do admit them, then "these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit." *Id.* at 606. But this added paraphrase was a "general expression[ ]," made in passing, that went "beyond the case." *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 35 (2012) (quoting *Cohens v. Virginia*, 19 U.S. 264, 399 (1821) (Marshall, C.J.)); *Lewis v. Zatecky*, 993 F.3d 994, 1005 (7th Cir. 2021) ("[J]udicial opinions are not statutes and should not be treated in such a rigid way."). Its "possible bearing on all other cases"—including this one—was not "completely investigated." *Cohens*, 19 U.S. at 400. *Equal Access*'s obiter dictum does not furnish the rule for decision here.

Second, *Young Conservatives of Texas Foundation v. Smatresk*, 73 F.4th 304 (5th Cir. 2023), is also inapposite, *cf.* H'rg Tr. 43-44 (United States' reference to *Young Conservatives*), ECF No. 80. It involved a challenge under the Act to Texas's provision for a higher out-of-state tuition rate, and the Fifth Circuit reversed the district court's decision finding preemption. 73 F.4th at 307, 311-13, *rev'g* 597 F. Supp. 3d 1062, 1080-83 (E.D. Tex. 2022); Tex. Educ. Code § 54.051(d). That was because § 1623(a)'s "sole focus is on improper benefits for" undocumented students on the basis of residence, while the "one and only [statutory] section challenged" in the case simply "set the tuition price for nonresident students, citizens or not." 73 F.4th at 313. There was no occasion for the Fifth Circuit to rule on whether "other, unchallenged provisions in Texas' scheme may be" preempted. *Id.* at 311. Although the Fifth Circuit said, in passing, that "a different, *unchallenged* portion of Texas' scheme seems to conflict with" § 1623(a), *id.* at 314, that speculative dictum

does not supplant a careful statutory analysis. The lack of preemption in *Young Conservatives* does not compel a conclusion of preemption here.

Third, insofar as the United States references recent consent decrees from Texas, Oklahoma, and Kentucky,[2] they should not be followed here, either. *Cf.* H'rg Tr. 34 (United States' reference to Texas and Oklahoma consent decrees), ECF No. 80; Notice (United States' reference to Kentucky consent decree), ECF Nos. 82 & 82-1. To begin with, the "circumstances surrounding such negotiated agreements," as are found in consent decrees, "are so different that they cannot be persuasively cited in a litigation context." *United States v. E. I. du Pont de Nemours & Co.*, 366 U.S. 316, 330 n.12 (1961); *Walz*, 2026 WL 851231, at *9 (considering neither the Texas nor the Oklahoma consent decree to be persuasive). In any event, none of those consent decrees showed any sign of the adversarial process playing out in any way before the parties settled. Each involved an untested complaint simply being agreed to, by the party that is supposed to protect state law against federal incursion, without a "meaningful" "contest[]" or "analysis," *Walz*, 2026 WL 851231, at *9—as *almost* happened here.

Further, Va. Code § 23.1-505.1 (and, for that matter, the Minnesota and California statutes challenged in *Walz* and *Martinez*, respectively) differs from the challenged Texas and Oklahoma statutes, which "explicitly tie[] eligibility to residency." *Walz*, 2026 WL 851231, at *9; Stephen L. Nelson et al., *Reduced Tuition Benefits for Undocumented Immigrant Students: The Implications of a Piecemeal Approach to Policymaking*, 53 SANTA CLARA L. REV. 897, 913-14 (2013) (distinguishing the "Texas Model" and the "California Model" as the "two [primary] categories"

---

[2] For the consent decrees, see *United States v. Texas*, No. 7:25-cv-00055, 2025 WL 1583869, at *1 (N.D. Tex. June 4, 2025), *United States v. Oklahoma*, No. 6:25-cv-00265, 2025 WL 2815660 (E.D. Okla. Aug. 29, 2025), *adopting r. & r.*, 2025 WL 2815662 (E.D. Okla. Aug. 7, 2025), and *United States v. Kentucky Council on Postsecondary Education*, No. 3:25-cv-00028, 2026 WL 880597 (E.D. Ky. Mar. 31, 2026).

of laws authorizing in-state tuition for undocumented students). Texas's statute expressly included a condition of having "maintained a *residence* continuously *in this state* for" three years before high-school graduation or receipt of the equivalent and one year before the census date of the academic term when enrolled in a Texas college or university. Tex. Educ. Code § 54.052(a)(3) (emphasis added). And Oklahoma's included a condition of having "*[r]esided in this state*" while attending an Oklahoma high school for at least two years before graduation. Okla. Stat. tit. 70, § 3242(A)(2) (emphasis added). Va. Code § 23.1-505.1 has no comparable residency condition.

And the Kentucky consent decree was based on PRWORA—not the Act. *Ky. Council on Postsecondary Educ.*, 2026 WL 880597, at *8-10. A Kentucky regulation allowed undocumented students to receive in-state tuition, 13 Ky. Admin. Regs. 2:045(8)(4), but PRWORA allows such a benefit be extended to an alien "only through the enactment of a State law," 8 U.S.C. § 1621(d). Kentucky's regulation was "not a State law," so it was "invalid as conflicting with" PRWORA. 2026 WL 880597, at *10. The Court "refrain[ed] from wading into the ultimate § 1623(a) preemption issue." *Id.*

None of the consent decrees should be considered as persuasive authority here. Ultimately, "scrutinizing the statutes uniquely before" this Court "and addressing their interaction under intelligible and longstanding principles of preemption" leads to the conclusion that § 1623(a) does not preempt the Tuition Equity Pathway of Va. Code § 23.1-505.1. *Va. Uranium, Inc. v. McAuliffe*, 147 F. Supp. 3d 462, 476 (W.D. Va. 2015), *aff'd sub nom. Va. Uranium, Inc. v. Warren*, 848 F.3d 590 (4th Cir. 2017), *aff'd*, 587 U.S. 761.

**C.      Section § 1623(a)'s exception applies.**

**1.      Section 1623(a)'s exception applies if any citizen or national of the United States is eligible for in-state tuition.**

After § 1623(a) states its general prohibition in its first portion, it states an exception in its second portion: "unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). "The word 'unless' denotes an exception to the subject contemplated . . . ." *United States v. Fontaine*, 697 F.3d 221, 234 (3d Cir. 2012); *see also In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1166 (9th Cir. 2000) ("The use of the word 'unless' indicates that the phrase is . . . an exception to the general rule . . . .").

As for the number of nonresident citizens or nationals who must be eligible for in-state tuition for this exception to apply, the statute's framing of "a" and "the" citizen or national indicate that it requires "'one or more'" but not "all non-residents." *Walz*, 2026 WL 851231, at *10-11 (quoting *Lite-Netics, LLC v. Nu Tsai Cap. LLC*, 60 F.4th 1335, 1345 (Fed. Cir. 2023)). "Based on the text and precedent, the use of 'a' in § 1623 means 'one' or 'any.'" *Id.* at *10. "[T]he caselaw is nearly unanimous on this point." *Id.* (collecting cases); *e.g.*, *United States v. Smith*, No. 3:24-cr-00065-1, 2025 WL 422602, at *4 (E.D. Va. Feb. 6, 2025) ("It strains the plain meaning of the text . . . to somehow read 'a' as 'all' or 'every' under these circumstances."), *on appeal*, No. 25-4065 (4th Cir.). And the later reference to "'*the* citizen or national,' rather than 'these citizens or nationals,'" confirms this reading. *Walz*, 2026 WL 851231, at *10.

The United States asks this Court to read this provision backwards. Under its interpretation, this exception would only apply if *all* citizens or nationals of the United States are eligible for in-state tuition. Not only would this interpretation fly in the face of the plain language of "a" in the statute itself, but it would effectively eliminate the ability of undocumented students to ever obtain

in-state tuition. But if Congress had sought to do that in § 1623(a), it could have said so directly. It did not. Section 1623(a) does not categorically prohibit postsecondary education benefits for undocumented students. *See, e.g.*, *Martinez*, 241 P.3d at 864 ("[S]ection 1623 does not impose an absolute ban.").

The parties agree that, in all relevant respects, Virginia's in-state tuition benefits are of the same amount, duration, and scope within a given institution, in a given program, at a given seniority level. SFNID ¶¶ 7, 12-14. Thus, if the Commonwealth can establish that some (not all) nonresident citizens or nationals of the United States are eligible for in-state tuition rates in Virginia, then § 1623(a)'s exception applies.

**2.      The exception applies here because there are numerous pathways for a citizen or national of the United States to be eligible for in-state tuition, including the sole pathway available to undocumented students.**

The exception in § 1623(a) applies here. The undisputed material facts show that "a citizen or national of the United States is eligible" for in-state tuition in Virginia "in no less an amount, duration, and scope" and "without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

**a.      Nonresidents are eligible for in-state tuition through the Tuition Equity Pathway.**

It is plain on the face of Va. Code § 23.1-505.1 that it satisfies § 1623(a)'s exception. Even if Virginia's challenged statutes "contained a de facto residency requirement" authorizing in-state tuition for undocumented students (which they does not), and were covered by the first portion of § 1623(a), the second portion's exception would apply if one or more nonresident U.S. citizens or nationals—not necessarily all of them—can qualify for in-state tuition in Virginia. *Walz*, 2026 WL 851231, at *11. Eligibility would be "without regard to that individual's residence." *Id.*

Here, the exception would remove the challenged Virginia statutes from any preemptive effect of § 1623(a). As outlined above, nonresidents can qualify for in-state tuition, under the Tuition Equity Pathway, satisfying the educational conditions by attending and graduating from a Virginia private boarding school, by attending and graduating from a Virginia public high school while living in a neighboring State, by attending and graduating from a Virginia high school but then moving to another State, or by attending a Virginia high school for two years and moving before passing an equivalency test. *See supra* Argument pt. I.B.1; SFNID, ¶¶ 33-34. And the tax payment condition does not require residence in Virginia; it merely requires that the taxpayer receive taxable income from Virginia sources. This can occur not only through employment in Virginia, but also income received from the rental or sale of Virginia real estate, income received from a partnership that operates in Virginia, or even lottery or gambling winnings in Virginia. *See supra* Argument pt. I.B.1; SFNID ¶ 35. And there is evidence that a significant number of nonresidents file Virginia income tax returns every year. SFNID ¶ 36.

It is, thus, beyond dispute that nonresidents of Virginia are eligible to obtain in-state tuition "in no less an amount, duration and scope" and "without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). This means the exception to § 1623(a) definitively applies here and that summary judgment defeating the United States' claim of express preemption should be granted.

> **b.    Nonresidents are eligible for in-state tuition through numerous other pathways.**

While the United States' Complaint focuses on only two provisions of the statutory scheme for in-state tuition, there are numerous other pathways for students to qualify for in-state tuition in Virginia. While one pathway—through Va. Code § 23.1-502—requires a student to establish a domicile in Virginia, none of the others do. And while several other pathways require students to

be residents of Virginia, there are at least ten others that do not. In fact, some of the pathways to in-state tuition in Virginia *require* that the student live out-of-state. And there is irrebuttable evidence that such out-of-state students take advantage of these pathways every year.

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022) (quoting *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989)). Thus, this Court must consider these other pathways. If one of these other pathways provides in-state tuition to "a citizen or national of the United States" "without regard to whether the citizen or national is . . . a resident," 8 U.S.C. § 1623(a), then the exception in § 1623(a) applies, preventing any preemption. And undisputed facts show that nonresidents are eligible for each of these pathways for in-state tuition.

First, there are several pathways to in-state tuition that are *only* available to nonresidents. One is the Academic Common Market Pathway under Va. Code § 23.1-506(B)(1). It gives in-state tuition to any nonresident student, from one of the States that is party to the Southern Regional Education Compact ("SREC"), who seeks to obtain a degree from a program that is not available in the student's home State. SFNID ¶¶ 49-52. There are fourteen participating SREC states in addition to Virginia. *Id*. ¶ 50 Six public institutions in Virginia participate in this program. *Id*. According to SCHEV data, dozens of nonresident students used this pathway in the 2025-26 school year. *Id*. ¶ 52.

Other pathways available only to nonresidents are based on regional ties to Virginia postsecondary institutions. One such pathway is the Thirty-Mile Radius pathway under Va. Code § 23.1-506(C), which allows any nonresident student who is enrolled at a Virginia community college, and resides in another State within a thirty-mile radius, to obtain in-state tuition. *Id.* ¶ 55-

56. SCHEV data shows that 233 nonresident students used this pathway to obtain in-state tuition in 2025-26. *Id*. ¶ 56. Another pathway exists that allows certain nonresident students from Kentucky, Tennessee, or the Appalachian region to obtain in-state tuition at certain programs at the University of Virginia-Wise under Va. Code § 23.1-507. *Id*. ¶¶ 58-59. Up to 260 nonresident students used this pathway to obtain in-state tuition in 2025-26. *Id.* ¶ 59.

These pathways alone are dispositive. Only U.S. citizens or nationals from States other than Virginia are eligible. By the very nature of these pathways, there is no Virginia residency requirement for them. And nonresident students use these pathways to obtain in-state tuition every year. Accordingly, these pathways establish that § 1623(a)'s exception applies here.

Second, there are other pathways to in-state tuition that do not require *any* connection by the student to Virginia at all, let alone residence. These include the Non-Resident Employee Dependent Pathway under Va. Code § 23.1-506(A)(2), the Child of Ten-Year Active Duty Military Pathway under Va. Code § 23.1-506(A)(8), the Teaching Assistant Pathway under 2026 Va. Acts, ch. 7, § 4-2.01(b)(6) and 2022 Va. Acts, ch. 1, § 4-2.01(b)(6) (spec. sess. I), the Veterans Choice Act Pathway under the Veterans Access, Choice, and Accountability Act of 2014, Pub. L. No. 113-146, § 702, 128 Stat. 1754, 1796 (codified at 38 U.S.C. § 3679(c)), and the Military Dependent Pathway under Va. Code § 23.1-505(B) and (C). SFNID ¶¶ 45-48, 53-54, 57, 60-62. According to SCHEV data, students not domiciled in Virginia used all of these pathways to obtain in-state tuition in Virginia in 2025-26. *Id.* ¶¶ 54, 46, 48, 57, 61-62, 66.

Several of these pathways are of particular note. The Veterans Choice Act Pathway, for instance, allows veterans and their dependents from any State to receive in-state tuition rates at a Virginia public college or university even if they have not lived in Virginia previously. *Id*. ¶ 57. This is the broadest pathway of all in that it does not require any prior connection with Virginia.

SCHEV data shows that 1,143 students not domiciled in Virginia used this pathway in 2025-26. *Id*. Another is the Military Dependent Pathway. While this pathway requires the member of the military to reside in Virginia, it does not require their dependent to do so. *Id*. ¶ 60. This pathway also contains a broad definition of dependent that includes unmarried children up to the age of 23 years old. *Id*. Thus, if a member of the military recently moved to a base in Virginia, his or her twenty-one-year-old son who lives with another parent in another State can obtain in-state tuition in Virginia. *See id*. According to SCHEV data, 2,618 students not domiciled in Virginia used this pathway in 2025-26. *Id*. ¶ 61.

Collectively, thousands of students not domiciled in Virginia use these pathways available to non-residents every year to obtain in-state tuition. SFNID ¶ 66. Indeed, at least 28% of all non-domiciled undergraduate students who are attending public two-year institutions in Virginia in 2025-26 qualified for in-state tuition through one of the aforementioned pathways. *Id*. Similarly, at least 22% of all non-domiciled graduated students who are attending public four-year institutions in Virginia in 2025-26 qualified for in-state tuition through one of the aforementioned pathways. *Id*. There is even a pathway for nonresidents to obtain *better* tuition rates than domiciled Virginia residents obtain with in-state tuition. Some public universities in Virginia offer tuition rates for active-duty military without regard to whether they reside or are domiciled in Virginia that are lower than both out-of-state and in-state tuition rates for other students. *Id.* ¶ 8.

All of these additional pathways demonstrate beyond any doubt that, in Virginia, "a citizen or national of the United States is eligible for" in-state tuition "(in no less an amount, duration, and scope) without regard to whether the citizen or national is . . . a resident" of Virginia. 8 U.S.C. § 1623(a). Thus, § 1623(a) lacks preemptive effect under the second portion of its preemption clause as well as the first portion.

**II.** **INTERPRETING § 1623(a) TO PREEMPT VA. CODE §§ 23.1-502 OR -505.1 WOULD VIOLATE THE TENTH AMENDMENT AND PRINCIPLES OF FEDERALISM.**

Finally, if the Court were to conclude that Va. Code §§ 23.1-502 and -505.1 were within "the plain wording of" § 1623(a)'s express preemption clause, *N. Va. Hemp & Agric.*, 125 F.4th at 493, it should still uphold the validity of the challenged Virginia statutes. That is because § 1623(a)'s purported preemptive effect would amount to an unconstitutional commandeering of the Commonwealth.

"With respect to federal laws, . . . the Supremacy Clause gives 'supreme' status only to those that are 'made in Pursuance' of '[t]his Constitution.'" *Wyeth v. Levine*, 555 U.S. 555, 585 (2009) (alteration in original) (quoting U.S. Const. art. VI, cl. 2). Article I of the Constitution enumerates the limited "legislative Powers [t]herein granted" to Congress, U.S. Const. art. I, § 1, while the Tenth Amendment "reserve[s] to the States respectively, or to the people[,]" "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States," *id.* amend. X. Under the Tenth Amendment and principles of federalism, Congress may not "issue direct orders to the governments of the States" or "dictate[] what a state legislature may and may not do." *Murphy v. NCAA*, 584 U.S. 453, 471, 474 (2018). That anticommandeering principle reflects the dual sovereignty of our federalist system of government, where Congress and the States have respective powers to act upon the people, but neither Congress nor the States have the power to act upon each other. *See id.* at 470, 472. "States are not mere political subdivisions of the United States[,]" and "State governments are neither regional offices nor administrative agencies of the Federal Government." *New York v. United States*, 505 U.S. 144, 188 (1992).

While Congress may "impose[] restrictions or confer[] rights on private actors" or "evenhandedly regulate an[] activity in which both States and private actors engage," it cannot make "private conduct violate[] federal law only if it is permitted by state law." *Murphy*, 584 U.S.

at 475-76, 477, 484. In other words, Congress may not "order a state legislature to refrain from enacting a law." *Id.* at 481. The anticommandeering principle applies "even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts." *Id.* at 472 (quoting *New York*, 505 U.S. at 166); *Printz v. United States*, 521 U.S. 898, 923-25 (1997); *New York*, 505 U.S. at 156 ("[I]f a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress.").

Construing § 1623(a) to preempt Va. Code §§ 23.1-502 and -505.1 would violate the anticommandeering principle, rendering it unconstitutional and lacking "'supreme' status." *Wyeth*, 555 U.S. at 585 (quoting U.S. Const. art. VI, cl. 2). Such a construction would amount to Congress's "direct order" "dictat[ing] what [the General Assembly] may and may not do" in how it structures eligibility for in-state tuition at Virginia's postsecondary educational institutions. *Murphy*, 584 U.S. at 474, 481. It would treat the Commonwealth as a "mere political subdivision[ ] of the United States," and the General Assembly and Virginia's postsecondary educational institutions as mere "regional offices" or "administrative agencies of the Federal Government," beholden to carry out the legislative will of Congress. *New York*, 505 U.S. at 188. That is not how our constitutional order is structured and not how § 1623(a) should be read.

This is not a case where Congress has avoided anticommandeering by "evenhandedly regulat[ing] an activity in which both States and private actors engage." *Murphy*, 584 U.S. at 476. The Act's express preemption clause purports to act upon the States and their postsecondary educational institutions, not any private actors. While § 1623(a) says that "an alien who is not lawfully present in the United States shall not be eligible . . . for any postsecondary education benefit," context makes clear that this passive-voice sentence is directed at the States and their postsecondary educational institutions, *Bartenwerfer v. Buckley*, 598 U.S. 69, 70 (2023)

("[C]ontext can confine a passive-voice sentence to a likely set of actors."). Section 1623(a) appears within U.S. Code Title 8's Chapter 14, titled, "*Restricting* Welfare and *Public Benefits* for Aliens." (Emphasis added.) Chapter 14 is meant to restrict the availability of "*public* resources," "*public* benefits," and "*public* assistance" to aliens "*from* Federal, *State*, and local *governments*." 8 U.S.C. § 1601(2), (3), (4), (6), (7) (emphasis added). And the matter of an undocumented student's "eligib[ility]" for in-state tuition, 8 U.S.C. § 1623(a), concerns his "[f]it[ness] and [ap]prop[rietness] . . . to receive [that] benefit" from the State and its postsecondary educational institutions, BLACK'S LAW DICTIONARY (12th ed. 2024). Thus, under § 1623(a), any "private conduct" of the undocumented student "violates federal law only" because "it is permitted by state law" authorizing his eligibility for in-state tuition. *Murphy*, 584 U.S. at 484. The anticommandeering principle applies.

Accordingly, even if the challenged Virginia laws were within § 1623(a)'s preemptive scope, such preemption would be unconstitutional, and the United States' challenge would still fail.

**CONCLUSION**

Consistent with the reasons stated above, the Commonwealth respectfully requests that the Court enter summary judgment in its favor and against the United States.

Jay Jones
  *Attorney General*

Travis G. Hill
  *Chief Deputy Attorney General*

Tillman J. Breckenridge
  *Solicitor General*

R. Trent Taylor (VSB No. 47468)*
  *Deputy Solicitor General*

Mikaela A. Phillips (VSB No. 97164)*
  *Assistant Solicitor General*

Respectfully submitted,

COMMONWEALTH OF VIRGINIA

By:  /s/ Robert S. Claiborne, Jr.    
Robert S. Claiborne, Jr. (VSB No. 86332)*
  *Assistant Attorney General*
OFFICE OF THE ATTORNEY GENERAL
202 North Ninth Street
Richmond, Virginia 23219
Telephone: (804) 482-2275
Facsimile: (804) 371-2087
rclaibornejr@oag.state.va.us

* *Counsel of Record for Defendant*

## CERTIFICATE

I hereby certify the following:

1. On this 17th day of April, 2026, I filed the foregoing using the Court's CM/ECF filing system, which sends an electronic notification of the same to counsel of record.

2. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg.

3. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

By:  /s/ Robert S. Claiborne, Jr.    
Robert S. Claiborne, Jr. (VSB No. 86332)*
  *Assistant Attorney General*

* *Counsel of Record for Defendant*