# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 3:25-cv-01067-REP |
| COMMONWEALTH OF VIRGINIA, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 2

STANDARD OF REVIEW ................................................................................... 3

ARGUMENT ........................................................................................................ 4

      I.     The United States is Entitled to Summary Judgment Because the Challenged Virginia Laws are Preempted by Section 1623 as a Matter of Law ................. 4

           A.  Section 1623(a) Expressly Preempts the Challenged Virginia Provisions ...................................................................................................6

           B.  Virginia's Statutory Scheme and Structure Further Establish that the Challenged Provisions are Expressly Preempted by Section 1623(a) .......10

           C.  Federal Courts Have Found State Laws Similar to Virgina's Preempted Under Section 1623(a) ...............................................................................16

      II.    The United States is Entitled to An Injunction ............................................. 25

           A.  The United States Meets All Four Injunction Factors ..............................25

           B.  The Scope of the Injunction Requested is Narrow and Does not Disturb Virginia's In-State Tuition Laws as to United States Citizens ...................29

CONCLUSION ..................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) ........................................................................................ 28

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................................ 4

*Anderson v. Sara Lee Corp.*,
508 F.3d 181 (4th Cir. 2007) ......................................................................................... 5

*Arizona v. United States*,
567 U.S. 387 (2012) ..................................................................................... 1, 4, 26, 27

*Baird v. Bonta*,
81 F.4th 1036 (9th Cir. 2023) ...................................................................................... 26

*Blackie's House of Beef, Inc. v. Castillo*,
659 F.2d. 1211 (D.C. Cir. 1981) ............................................................................ 27, 28

*Bostock v. Clayton Cnty., Georgia*,
590 U.S. 644 (2020) ...................................................................................................... 15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................................ 3

*Chase Bank USA, N.A. v. City of Cleveland*,
695 F.3d 548 (6th Cir. 2012) ....................................................................................... 28

*City of New York v. United States*,
179 F.3d 29 (2d Cir. 1999) .......................................................................................... 27

*Cox v. Duke Energy Inc.*,
876 F.3d 625 (4th Cir. 2017) ....................................................................................... 23

*CSX Transp., Inc. v. Easterwood*,
507 U.S. 658 (1993) ........................................................................................................ 5

*Dean v. United States*,
556 U.S. 568 (2009) ...................................................................................................... 12

*Dupree v. Younger*,
598 U.S. 729 (2023) ........................................................................................................ 4

*English v. Gen. Elec. Co.*,
496 U.S. 72 (1990) .......................................................................................................... 5

*EPA v. Calumet Shreveport Refin., L.L.C.*,
  145 S. Ct. 1735 (2025) ................................................................................................. 10

*Equal Access Educ. v. Merten*,
  305 F. Supp. 2d 585 (E.D. Va. 2004) ....................................................................... 8, 22

*Grier v. Kennan*,
  64 F.2d 605 (8th Cir. 1933) ............................................................................................ 19

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*,
  17 F.3d 691 (4th Cir. 1994) ............................................................................................ 27

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ........................................................................................................ 25

*In re Cell Tower Recs. Under 18 U.S.C. 2703(D),*
  90 F. Supp. 3d 673 (S.D Tex. 2015) .............................................................................. 20

*King v. Burwell*,
  576 U.S. 473 (2015) ........................................................................................................ 22

*Local Union 598 v. J.A. Jones Construction Co.*,
  846 F.2d 1213 (9th Cir. 1988) ....................................................................................... 23

*Martin v. Am. Bancorporation Ret. Plan*,
  407 F.3d 643 (4th Cir. 2005) ......................................................................................... 29

*Martinez v. Regents of the University of California*,
  241 P.3d 855 (Cal. 2010) ................................................................................... 18, 23, 24

*Martinez v. Regents of University of California*,
  83 Cal. Rptr. 3d 518 (2008) ........................................................................................... 24

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .......................................................................................................... 3

*Mayor of Baltimore v. Azar*,
  973 F.3d 258 (4th Cir. 2020) ......................................................................................... 25

*Murphy v. NCAA*,
  584 U.S. 453 (2018) ........................................................................................................ 26

*N. Va. Hemp & Agric., LLC v. Virginia*,
  125 F.4th 472 (4th Cir. 2025) ....................................................................................... 4, 5

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
  491 U.S. 350 (1989) ........................................................................................................ 26

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................................................ 25

*Pacific Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n,*
    461 U.S. 190 (1983) ................................................................................................ 4

*Pharm. Rsch. & Manufacturers of Am. v. Morrisey,*
    760 F. Supp. 3d 439 (S.D.W. Va. 2024) ................................................................ 28

*Pinney v. Nokia, Inc.,*
    402 F.3d 430 (4th Cir. 2005) .................................................................................. 23

*Plyler v. Doe,*
    457 U.S. 202 (1982) ................................................................................................ 15

*Puerto Rico v. Sanchez Valle,*
    579 U.S. 59 (2016) .................................................................................................... 5

*Retail Clerks v. Schermerhorn,*
    375 U.S. 96 (1963) .................................................................................................... 5

*Riley v. Bondi,*
    606 U.S. 259 (2025) ................................................................................................ 21

*Schwegmann Bros. v. Calvert Distillers Corp.,*
    341 U.S. 384 (1951) ................................................................................................ 21

*Sierra Club v. U.S. Army Corps of Eng'rs,*
    909 F.3d 635 (4th Cir. 2018) .................................................................................. 21

*Valle del Sol Inc. v. Whiting,*
    732 F.3d 1006 (9th Cir. 2013) ................................................................................ 25

*St. Francis Hosp., Inc. v. Becerra,*
    28 F.4th 119 (10th Cir. 2022) ................................................................................. 20

*Stone v. INS,*
    514 U.S. 386 (1995) ................................................................................................ 21

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,*
    600 U.S. 181 (2023) ................................................................................................ 16

*Toll v. Moreno,*
    458 U.S. 1 (1982) ...................................................................................................... 1

*United States v. Alabama,*
    691 F.3d 1269 (11th Cir. 2012) .............................................................................. 28

*United States v. Am. Trucking Ass'ns,*
    310 U.S. 534 (1940) ................................................................................................ 21

*United States v. Hayes,*
    555 U.S. 415 (2009) ................................................................................................ 20

*United States v. Menasche*,
348 U.S. 528 (1955) ................................................................................................... 21

*United States v. Miami*,
664 F.2d 435 (5th Cir.1981).......................................................................................... 17

*United States v. Myers*,
No. 23-1034, 2026 WL 859248 (9th Cir. Mar. 27, 2026)........................................... 20

*United States v. North Carolina*,
180 F.3d 574 (4th Cir. 1999)........................................................................................ 17

*United States v. Oklahoma,*
No. 25-256, U.S. Dist. LEXIS 169743 (E.D. Ok. Aug 7, 2025)................................. 16

*United States v. Segari*,
No. 25-456, 2026 WL 653757 (M.D. Fla. Mar. 9, 2026)............................................. 20

*United States v. South Carolina*,
720 F.3d 518 (4th Cir. 2013)........................................................................................ 26

*United States v. State of Colo.*,
937 F.2d 505 (10th Cir. 1991)...................................................................................... 17

*United States v. Texas*,
350 F.R.D. 74 (N.D. Tex. 2025) ................................................................................... 16

*United States v. Texas*,
No. 25-10898 (5th Cir. Oct. 16, 2025) ........................................................................ 16

*United States v. Walz*,
No. 25-cv-2668, 2026 WL 851231 (D. Minn. Mar. 27, 2026) .............................. 17, 18, 19, 23

*Walters v. Metro. Educ. Enters., Inc.*,
519 U.S. 202 (1997) ..................................................................................................... 20

*Warner-Lambert Co. v. Apotex Corp.*,
316 F.3d 1348 (Fed. Cir. 2003)..................................................................................... 20

*Windmill Health Prods., LLC v. Sensa Prods.*,
No. C-15-0574 MMC, 2015 WL 6471180 (N.D. Cal., Oct. 27, 2015)........................ 23

*Young Conservatives of Tex. Found. v. Smatresk*,
73 F.4th 304 (5th Cir. 2023)........................................................................................... 8

**Constitutions**

Va. Const. art. VIII, §1 ................................................................................................... 15

**Statutes**

1 U.S.C. § 1 .................................................................................................................. 20

8 U.S.C. § 1101(a)(33) ....................................................................................... 11, 12, 18

8 U.S.C. § 1601 .................................................................................................. 22, 23, 27

8 U.S.C. § 1601(1) ........................................................................................................... 9

8 U.S.C. § 1601(2) ........................................................................................................... 9

8 U.S.C. § 1601(2)(A) ............................................................................................. 3, 9, 25

8 U.S.C. § 1601(2)(B) .................................................................................................. 3, 9

8 U.S.C. § 1601(4)-(6) ................................................................................................... 22

8 U.S.C. § 1601(6) ....................................................................................................... 3, 9

8 U.S.C. §§ 1611-1612 .................................................................................................. 18

8 U.S.C. § 1621 .............................................................................................................. 18

8 U.S.C. § 1623 ......................................................................................................... 13, 14

8 U.S.C. § 1623(a) ................................................................................................. *passim*

8 U.S.C. § 1641(a) ......................................................................................................... 18

Cal. Educ. Code § 68130.5 ........................................................................................... 24

Minn. Stat. Ann. §§ 120A.20 ........................................................................................ 18

Minn. Stat. Ann. §§ 120A.22 ........................................................................................ 18

Pub. L. No. 99–603 ....................................................................................................... 27

Pub. L. No. 104-193 ........................................................................................................ 2

Pub. L. No. 104-208 ........................................................................................................ 3

Va. Code Ann. § 22.1-3(A)(1)-(3) ........................................................................ 14, 15, 19

Va. Code Ann. § 22.1-5(A) ................................................................................... 14, 15, 19

Va. Code Ann. § 23.1-500 ............................................................................... 10, 11, 12, 13

Va. Code Ann. § 23.1-502 ..................................................................................... *passim*

Va. Code Ann. § 23.1-502(A) ................................................................................ *passim*

Va. Code Ann. § 23.1-502(B) ........................................................................... 6, 7, 10, 11

Va. Code Ann. § 23.1-503(D) ................................................................................. 12

Va. Code Ann. § 23.1-503(J) .................................................................................. 12

Va. Code Ann. § 23.1-504 ..................................................................................... 14

Va. Code Ann. § 23.1-505.1 ............................................................................. *passim*

Va. Code Ann. § 23.1-510 ....................................................................................... 6

Va. Code Ann. § 58.1-303 ..................................................................................... 14

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................... 3

Fed. R. Civ. P. 65(d)(2) ......................................................................................... 29

**Regulations**

23 Va. Admin. Code 10-110-30 ......................................................................... 10, 11

**Legislative Materials**

H.R. Rep. No. 104–828, 2d Sess. (1996) ............................................................. 7, 19

**Letters**

Letter from George Washington to Joshua Holmes (Dec. 2, 1783) .............................. 9

**INTRODUCTION**

Congress's command is clear: States cannot give preferential treatment to illegal aliens over American citizens. Specifically, when Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRAIRA") in 1996, it decided illegal aliens are not eligible for post-secondary education tuition benefits based on residency within a state if U.S. citizens are denied eligibility for those same benefits just because they do not live within that state. Despite Congress's clear prohibition, the Commonwealth of Virginia passed legislation that discriminates against U.S. citizens in favor of illegal aliens by making such aliens eligible for reduced in-state tuition and state financial assistance based on residence that is not available to U.S. citizens simply because they live in another state. That legislation is plainly preempted by federal law.

The Federal Government of the United States has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012) (citing *Toll* v. *Moreno*, 458 U.S. 1 (1982)). Such authority derives from the Constitution and the United States' "inherent power as sovereign to control and conduct relations with foreign nations[.]" *Id.* at 394-95. The Commonwealth of Virginia, however, decided through legislation to provide access to postsecondary education benefits on terms contrary to federal law.

There is no doubt that the challenged Virginia laws—Virginia Code §§ 23.1-502 and 23.1-505.1—are directly contrary to federal law. Section 505(a) of IIRAIRA (codified at 8 U.S.C. § 1623(a) in the Immigration and Nationality Act ("INA")) (hereinafter "Section 1623(a)") is clear that an alien not lawfully present in the United States "shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

1

That plain language makes clear that if a State's tuition structure distinguishes between residents and nonresidents for U.S. citizens, aliens who are not lawfully present are ineligible for the resident rate. Virginia's laws unmistakably violate this provision. Virginia law relies on residence in the Commonwealth to create eligibility for postsecondary education benefits. The challenged laws make illegal aliens eligible for postsecondary education benefits based on residence, but they do not make U.S. citizens or nationals of other states eligible for the same benefits without regard to their residence.

Virginia's challenged laws base eligibility on residence. Section 23.1-502 conditions eligibility for in-state tuition on the establishment of domicile in the Commonwealth, defined by presence coupled with intent to remain indefinitely. Section 23.1-505.1 likewise depends on a nearly perfect proxy for residency: in-state high school attendance and graduation, coupled with the filing of Virginia income tax returns. These provisions allow unlawfully present aliens to receive in-state tuition while denying that same benefit to U.S. citizens on the basis of residence.

By violating Section 1623(a), Virginia's laws run afoul of the Constitution, which has established federal law as the supreme law of the Nation. The United States and its citizens are harmed by Virginia's constitutional violations, and it should be enjoined from continuing to prioritize benefits to illegal aliens over U.S. citizens.

## BACKGROUND

In August of 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"), Pub. L. No. 104-193, 110 Stat. 2268 (1996). In passing PRWORA, Congress declared that "[s]elf-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes," and that "aliens within the Nation's borders [should] not depend on public resources to meet their needs but rather rely on

2

their own capabilities and the resources of their families, their sponsors, and private organizations." 8 U.S.C. § 1601(2)(A). Congress further expressed that "the availability of public benefits [should] not constitute an incentive for immigration to the United States" and that "[i]t is a compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(2)(B), (6).

In September 1996, Congress passed IIRAIRA. *See* Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996). 6. IIRAIRA included what was codified at Section 1623. Section 1623(a) states: "Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is a resident." 8 U.S.C. § 1623(a).

Pursuant to this Court's Order, ECF No. 81, the parties jointly filed a Stipulation of Facts Not in Dispute. ECF No. 83 ("SFND"). In addition to the facts this Court ordered the parties to stipulate to regarding "the amount, duration and scope of postsecondary education benefits available to 'aliens who are not lawfully present in the United States' and to citizens or nationals of the United States[,]" ECF No. 81, additional factual stipulations material to this motion can be found therein. *See generally* SFND.

### STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a motion for summary judgment is made, the opposing party has the burden of showing that there is either a genuine factual dispute or the moving party

is not entitled to judgement as a matter of law. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). "[T]he mere existence of *some* alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Only disputes over facts that might affect the outcome of the [litigation] . . . will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Where, as here, the parties agree that no genuine issues of material facts exists and the dispute raises a purely legal issue—whether a federal immigration law preempts two state laws— a motion for summary judgment under Rule 56 is an appropriate mechanism for resolving the action. *See id*; *see also Dupree v. Younger*, 598 U.S. 729, 735 (2023) (defining "purely legal issues" as issues "that can be resolved without reference to any disputed facts").

## ARGUMENT

### I.    The United States is Entitled to Summary Judgment Because the Challenged Virginia Laws are Preempted by Section 1623 as a Matter of Law

The United States is entitled to summary judgment because the challenged Virginia laws— Va. Code Ann. §§ 23.1-502 and 23.1-505.1—are expressly preempted by Section 1623(a). Here, preemption is a pure question of law, so there is no genuine dispute of fact material to the legal outcome in this case. On their face, both Virginia statutes are residency-based and make illegal aliens eligible for postsecondary education benefits while excluding U.S. citizens who have not resided in Virginia in violation of Section 1623(a).

Express preemption occurs when Congress, by statute, explicitly supersedes all state enactments in a particular area. *Pacific Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983). Federal statutes may expressly preempt state laws by

4

declaring that intent on the face of the statute. *Arizona*, 567 U.S. at 399; *see N. Va. Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 493 (4th Cir. 2025) ("If the statute contains an express preemption clause, we focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)) (citing *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993))). Because "[p]reemption fundamentally is a question of congressional intent," "when Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990) (citations omitted); *see also Anderson v. Sara Lee Corp.*, 508 F.3d 181, 192 (4th Cir. 2007) (noting that congressional purpose is the "ultimate touchstone" of preemption analysis (citation omitted)). As a result, when the statute contains an express preemption clause, the court does not indulge "any presumption against preemption but instead focus[es] on the plain wording of the clause[.]" *Puerto Rico v. Sanchez Valle*, 579 U.S. 59, 125 (2016); *N. Va. Hemp & Agric., LLC*, 125 F.4th at 493.

The Federal statute at issue here contains such an express preemption clause. Section 1623(a) directs that "[n]otwithstanding any other provision of law," an alien not lawfully present in the U.S. "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). Virginia does not appear to dispute—and could not seriously dispute—that substantially reduced in-state college tuition qualifies as a postsecondary education benefit. And Virginia does not dispute that it provides those benefits to illegal aliens while denying them to United States citizens and nationals who are not state residents.

5

Virginia Code Sections 23.1-502 and 23.1-505.1 also unquestionably conflict with Section 1623(a) because they permit illegal aliens to qualify for in-state tuition and state financial assistance "on the basis of residence" in the Commonwealth of Virginia while at the same time denying those postsecondary education benefits to U.S. citizens who do not meet the residency-based requirements of those statutes. 8 U.S.C. § 1623(a). Section 23.1-502 makes illegal aliens eligible for resident-tuition benefits based on their residence by relying on its definition of domicile. 23.1-505.1 accomplishes the same result relying on two proxies for residence: Virginia high school graduation and Virginia income tax returns for at least two years. While public institutions of higher education in Virginia make the determination as to each student's eligibility for in-state tuition, they do so by applying the challenged Virginia laws. SFND ¶ 3; *see also* Va. Code Ann. §§ 23.1-502(B), 23.1-510. And regardless of the specific determinations the public institutions of higher education might make as to individual students, all students are categorized as either eligible for in-state tuition or not eligible in accordance with, *inter alia*, the challenged Virginia laws. SFND ¶ 4.

### A.  *Section 1623(a) Expressly Preempts the Challenged Virginia Provisions*

The plain language of Section 1623(a) makes clear that if a State's tuition structure distinguishes between residents and nonresidents for U.S. citizens, aliens who are not lawfully present are ineligible for the resident rate. The challenged provisions of Virginia do just that and are, therefore, preempted.

Section 23.1-502 allows a student to pay the lower in-state tuition rate if that student establishes domicile in Virginia and abandons any prior domicile outside of Virginia one year before receiving the benefit. Va. Code Ann. § 23.1-502(A). Similarly, Section 23-505.1 makes students eligible for the lower in-state tuition rate if the student attended and graduated high school in the Commonwealth, filed Virginia income tax returns for at least two years preceding the date

of registration or enrollment, and registered or enrolled in a college in the Commonwealth. *Id.* § 23.1-505.1. Both Virginia laws thus make aliens who are not lawfully present in the United States eligible for the lower in-state rate of tuition.

The clear purpose of Section 1623(a), evident from its text itself, is to prevent states from providing in-state tuition to illegal aliens, regardless of the precise basis on which states assess in-state status, and ensure that U.S. citizens who are not residents of the relevant state are not treated worse than people who live in the state but are not lawfully present in our Nation. These fundamental purposes cannot be evaded by imposing some additional requirements—like domiciliary intent or high school graduation. Moreover, Congress's aim of imposing a categorical bar is clear: "This section provides that illegal aliens are not eligible for in-state tuition rates at public institutions of higher education." H.R. Rep. No. 104–828, 2d Sess. p. 240 (1996). In-state tuition is of course almost always provided to residents of a state and not to residents of other states—that is what *in-state tuition is*. The only plausible reading of Section 1623(a) is that, when a state establishes a scheme under which state residents who are U.S. citizens are charged one price and those who live elsewhere are charged more, aliens who are not lawfully present in the United States are not eligible for the lower rate, regardless of the particulars of the state scheme.

And in any event, Virginia's scheme qualifies as residence-based under any plausible standard. Domicile is obviously a residence-based classification. *See* Va. Code Ann. § 23.1-502(B). High school attendance and graduation within the Commonwealth is a near-perfect proxy for residence and, even without any additional requirements, would qualify as residence-based for purposes of the federal statute. *Id.* § 23.1-505.1. That's even more so the case when paired with the requirement of filing taxes in Virginia. *Id.* Indeed, it is hard to imagine that the Congress that enacted Section 1623(a), would have wanted to allow it to be evaded by the adoption of a

7

classification that is almost perfectly correlated with residence and is intended by the Commonwealth to serve the exact same purposes as an express residence classification.

When U.S. citizens who reside outside of Virginia are unable to meet Virginia's resident-tuition eligibility requirements as laid out in Sections 23.1-502 and 23.1-505.1, those citizens are not eligible *at all* for the in-state tuition benefits afforded under those sections. Va. Code Ann. §§ 23.1-502, 23.1-505.1; *see also*, SFND ¶ 15 ("During the 2025-26 academic year, approximately one-third of the students enrolled at the University of Virginia are 'out-of-state' students and pay higher 'out-of-state' tuition rates."). Therefore, *a fortiori*, those citizens are not eligible for resident-tuition benefits "in no less an amount, duration, and scope" as an illegal alien would be—and all because of the residence of the U.S. citizen outside the Commonwealth. 8 U.S.C. § 1623(a). Resident tuition benefits are doled out in a binary manner: students are either eligible for the lower tuition rate, or they are not. *See* SFND ¶¶ 4. U.S. citizens residing outside the Commonwealth are ineligible for resident tuition, and, therefore, do not receive the same *amount* of resident-tuition benefits as illegal aliens since those U.S. citizens don't receive *any* resident-tuition benefits under Sections 23.1-502 and 23.1-505.1. SFND ¶¶ 4, 11. The same is true with respect to the duration and scope of such benefits. *See* SFND ¶ 12. United States citizens who are ineligible for Virginia's resident tuition benefits on the basis of residence do not receive those benefits for *any* duration or scope under Sections 23.1-502 and 23.1-505.1. *Id.*

As the Fifth Circuit explained, Section 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 312-13 (5th Cir. 2023). Put differently by a court in this district, "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens

8

cannot receive in-state tuition unless out-of-state United States citizens receive this benefit." *Equal Access Educ. v. Merten,* 305 F. Supp. 2d 585, 606 (E.D. Va. 2004). No other reading is plausible.

While the court need not rely on the purposes of the statute to resolve this case, Congressional purposes only further solidify that Section 1623(a) preempts the challenged Virginia laws. Section 1623(a) accomplishes Congressional purposes to encourage self-sufficiency among immigrants in the United States, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for unlawful immigration, as expressed in its enactment of PRWORA. 8 U.S.C. § 1601(2), (6). Recognizing that "[s]elf-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes[,]" 8 U.S.C. § 1601(1), Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations[.]" *Id.* § 1601(2)(A). Congress further expressed that "the availability of public benefits [should] not constitute an incentive for immigration to the United States[,]" particularly illegal immigration. 8 U.S.C. §§ 1601(2)(B), (6). That Congressional judgment only makes sense given that since the early days of the Republic, "[t]he bosom of America [has been] open to receive not only the opulent & respectable Stranger, but the oppressed & persecuted of all Nations" so long as "by decency & propriety of conduct they appear to merit the enjoyment." Letter from George Washington to Joshua Holmes (Dec. 2, 1783). Thus, understood in its rational and legislative context, Section 1623(a) preempts precisely the sort of eligibility criteria based on residence that Virginia relies on to prioritize illegal aliens over U.S. citizens that reside in other states.

### B. *Virginia's Statutory Scheme and Structure Further Establish that the Challenged Provisions are Expressly Preempted by Section 1623(a)*

The details of the Virginia statutory scheme for in-state tuition only further confirm that the challenged provisions violate Section 1623(a) by providing in-state tuition to illegal aliens while denying it to U.S. citizens when Congress has prohibited exactly that result. Section 23.1-502 on its face enables a person to be eligible for in-state tuition based on residence within the Commonwealth of Virginia and predicates that eligibility on where a person is domiciled. Va. Code Ann. § 23.1-502(A). Section 23.1-502(A) states in relevant part

> To be eligible for in-state tuition at public institutions of higher education, an independent student or, in the case of a dependent student, the individual through whom he claims eligibility, shall establish by clear and convincing evidence (i) domicile in the Commonwealth for a period of at least one year immediately succeeding the establishment of domiciliary intent pursuant to subsection B and immediately prior to the date of the alleged entitlement and (ii) the abandonment of any previous domicile, if such existed.

*Id*. Nothing in Section 23.1-502 prohibits aliens illegally in the United States from establishing domicile in the Commonwealth under state law. *Id.* Virginia law defines "domicile" as "the present, fixed home of an individual to which he returns following temporary absences and at which he intends to stay indefinitely." *Id.* § 23.1-500. Virginia law defines "domiciliary intent" as "present intent to remain indefinitely." *Id.* Virginia law requires consideration of various factors to establish "domiciliary intent," including "continuous *residence* for at least one year prior to the date of the alleged entitlement[.]" *Id.* § 23.1-502(B) (emphasis added).

Although the term "residence" is not defined in Virginia's postsecondary education in-state tuition laws, that in no way saves Section 23.1-502 from preemption as courts "presumptively give . . . terms their ordinary meaning." *EPA v. Calumet Shreveport Refin., L.L.C.*, 145 S. Ct. 1735, 1747 (2025). "Residence" is generally defined as "the act or fact of dwelling in a place for some time" and "the place where one actually lives." Merriam–Webster Dictionary,

10

https://perma.cc/4EJH-XJL5 (last visited Apr. 14, 2026); *see also* 23 Va. Admin. Code 10-110-30 (defining "resident" for the purposes of determining income tax liability, as "any individual domiciled in this Commonwealth" and "any individual who is not domiciled in this Commonwealth but who maintains a place of abode (actual resident) in Virginia for more than 183 days (in the aggregate) during the taxable year").

Virginia's definition of "domicile" depends, in part, on "domiciliary intent," Va. Code Ann. § 23.1-500, which in turn is decided by, among other factors, "residence." *Id.* § 23.1-502(B). Therefore, determining "domicile" under Virginia law depends, in part, on determining residence. As such, when federal law refers to "residence within a State," 8 U.S.C. § 1623(a), it encompasses Virginia's use of "domicile" in Section 23.1-502(A). And while the number of Virginia residents who are domiciliaries in Virginia is not necessary for the legal analysis here, at the practical level, the categories largely overlap as "[i]ndividuals whose state of legal residence in the technical sense is Virginia are domiciliary residents. Most domiciliary residents actually live in Virginia." Virginia Department of Taxation, Residency Status, https://perma.cc/8TYQ-FP9T (last visited Apr. 14, 2026); *see also* SFND ¶ 19.

But Virginia's definition of "domicile" is centered on residence in yet another way that provides an independent basis for holding that Virginia does indeed provide eligibility for in-state tuition "on the basis of residence within a State." 8 U.S.C. § 1623(a). Leaving aside the intent prong of the definition, Virginia's definition of "domicile" as the "present, fixed home of an individual to which he returns following temporary absences" is nearly indistinguishable from other statutory definitions of "residence," that all describe a stable and enduring place at which a person dwells. *Compare* Va. Code Ann. § 23.1-500 (defining "domicile" as "present, fixed home") *with* 8 U.S.C. § 1101(a)(33) (defining "residence" as "place of general abode"), *with* 23 Va.

11

Admin. Code 10-110-30 (defining "residence" as both "domicile" and individuals who "maintain[] a place of abode … in Virginia"). These terms also exclude short-term absences and secondary homes. *Compare* Va. Code Ann. § 23.1-500 (defining domicile as the place to which the domiciliary returns after "temporary absences") *with* 8 U.S.C. § 1101(a)(33) (defining residence as the "principal [as opposed to secondary], dwelling place").

Through Section 23.1-502(A), Virginia law makes individuals eligible for resident tuition benefits on the basis of residence, but its laws fail to restrict aliens not lawfully present in the United States from eligibility for those benefits. While Virginia law allows some lawfully present aliens to establish domicile and prohibits other lawfully present aliens with only temporary visas from establishing domicile and receiving in-state tuition, *see* Va. Code Ann. § 23.1-503(D), it does not foreclose those aliens that are not lawfully present from establishing domicile in Virginia. *See Dean v. United States*, 556 U.S. 568, 572 (2009) (relying on canon of statutory interpretation and stating "we ordinarily resist reading words or elements into a statute that do not appear on its face." (citation omitted)). In fact, the only statement in Chapter 5 on "In-State Tuition and Reduced Rate Tuition Eligibility" (Va. Code §§ 23.1-500–23.1-510) of Subtitle II of Title 23.1 of the Virginia Code, that addresses unlawful immigration status, other than Section 23.1-505.1, *see infra* Argument § I.B., goes as far as to explicitly state that "no student" will be deemed ineligible to establish domicile and receive in-state tuition solely because of the student's parent's immigration status, Va. Code Ann. § 23.1-503(J). There is no mention whatsoever in Chapter 5 of making aliens not lawfully present in the United States ineligible on the basis of the *student's* immigration status. In the absence of any statutory prohibition, "independent student[s]" who are aliens not lawfully present in the United States are eligible by Virginia law for resident tuition benefits by establishing exclusive domicile in Virginia. Va. Code Ann. § 23.1-502. Additionally, given that Virginia law

12

enables any "dependent student" to claim eligibility for in-state tuition by establishing the domicile of a parent in the Commonwealth irrespective of that parent's immigration status, the reach of the term "domicile" in Section 23.1-502 also encompasses dependent student aliens not lawfully present in the United States. *See id.*; *see also* Va. Code Ann. §§ 23.1-500, 23.1-502.

Section 23.1-502 thus allows illegal aliens to obtain in-state tuition based on residence. However, under Section 23.1-502, U.S. citizens will not be eligible to obtain in-state tuition if they cannot demonstrate by clear and convincing evidence that (1) they (or one of their parents) have been domiciled in the Commonwealth for one year prior to the date of admission or acceptance into the educational institution (and after having established domiciliary intent) and (2) they have abandoned any previous domicile (if applicable). Therefore, "an alien who is not lawfully present in the United States" *is* "eligible on the basis of residence within a State . . . for a[] postsecondary education benefit," while "a citizen" *is not* "eligible for such a benefit (in no less amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623. These are residency-based restrictions on U.S. citizens in contravention of Section 1623(a).

While Virginia law provides certain exceptions to the domiciliary eligibility requirements (e.g., military and/or veteran-related exceptions under Sections 23.1-504-505, 23.1-506, 23.1-508-508.1 and other limited exceptions under Sections 23.1-506-508), the existence of these exceptions does not change the preemption analysis. U.S. citizens or nationals have been denied classification as in-state-tuition students in Virginia on the basis of their residence, *see* SFND ¶ 40, which is exactly what Section 1623(a) prohibits. There is no way under Section 23.1-502 that "*a* citizen or national of the United States" would be eligible for in-state tuition "*without regard* to whether the citizen . . . is . . . a resident" if that person does not meet its requirements or its exceptions. 8 U.S.C. § 1623(a) (emphasis added). Furthermore, the exceptions to the challenged Virginia provisions

13

only confirm the fact that U.S. citizens are not eligible for postsecondary education benefits "in no less an amount, duration, and scope[.]" *Id.* Instead, a small number may be eligible but only within a different scope (for example, U.S. citizens in the military but not those not in the military). Va. Code Ann. § 23.1-504. In other words, the fact remains that some U.S. citizens are denied eligibility for in-state tuition *with regard to their residence* under Section 23.1-502 in direct conflict with Section 1623(a).

Illegal aliens are also made eligible for in-state tuition on the basis of residence under Section 23-505.1. Section 23.1-505.1 provides that a student qualifies for in-state tuition if the student satisfies three criteria, notwithstanding the domicile requirements of Section 23.1-502. First, the student must have attended high school in the Commonwealth for at least two years and either graduated, on or after July 1, 2008, from a public or private high school or home-instruction program in Virginia, or passed, on or after that date, a graduation examination approved by the Secretary of Education. Va. Code Ann. § 23.1-505.1. Second, the student must submit evidence that the student—or if the student is a dependent, at least one parent, guardian, or person standing *in loco parentis*—filed Virginia income tax returns for at least two years preceding the date of registration or enrollment, unless exempted from filing under Virginia law. *Id.* And third, the student must register as an entering student or be currently enrolled in a public or private institution of higher education in the Commonwealth. *Id.* Aliens who are not lawfully present in the United States are able, under Virginia law, to meet all three requirements. Va. Code Ann. §§ 22.1-5(A), 22.1-3(A)(1)-(3) (illegal aliens are eligible for free public elementary and secondary education); Va. Code Ann. § 58.1-303 (resident illegal aliens are required to pay Virginia income tax); University of Virginia, Multicultural Student Services, Frequently Asked Questions,

14

https://perma.cc/NHE6-2RZA (last visited Apr. 10, 2026) (noting illegal aliens may register or enroll as an entering student at institutions of higher education); *see also* SFND ¶ 32.

Eligibility for in-state tuition based on high school attendance and graduation *in the Commonwealth* is, on its face, based on residence. Va. Code Ann. § 23.1-505.1. But Virginia's K-12 education statutes prove the point in an additional way since eligibility for in-state tuition based on high school attendance necessarily reflects a prior determination of residency at the K-12 level. The Virginia Code provides that no person may be charged tuition for admission to Virginia public schools if the person meets the residency criteria set forth in Section 22.1-3. Va. Code Ann. § 22.1-5(A); *see also* Va. Const. art. VIII, § 1. Section 22.1-3, in turn, requires public schools to provide free public education to children who reside within their respective local school divisions. *See also Plyler v. Doe*, 457 U.S. 202 (1982). For the purposes of identifying which school division a student resides in, Virginia law defines the student's residence by reference to the residence of a parent, guardian, or person standing *in loco parentis*, provided that the arrangement is not solely for school purposes. Va. Code Ann. § 22.1-3(A)(1)-(3). As a result, tuition-free attendance at a Virginia public high school is conditioned on meeting Virginia's statutory residency criteria, and public high-school attendance therefore reflects compliance with those residency requirements.

Accordingly, to the extent Virginia law ties in-state tuition and state financial assistance eligibility to attendance at Virginia public high schools, the Virginia legislature relied on an existing residency determination embedded in its K-12 education law. It follows then that Section 23.1-505.1 confers such eligibility "on the basis of residence" under Section 1623(a). *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020) (indicating that the statutory language *on the basis of* incorporates a "but-for causation" test and that it "can be a sweeping standard"). Consequently, U.S. citizens who do not meet the requirements under Section 23.1-505.1 are thus

15

excluded from in-state tuition on the basis of residence. "[W]hat cannot be done directly cannot be done indirectly. The Constitution deals with substance, not shadows, and the prohibition . . . is levelled at the thing, not the name." *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023). Because Section 23.1-505.1 falls within the sweep of Section 1623's unambiguous prohibition, it is undeniably preempted.

### C. Federal Courts Have Found State Laws Similar to Virgina's Preempted Under Section 1623(a)

Notably, other federal courts have found similar state laws expressly preempted by Section 1623(a). A Texas federal court recently held that Texas laws that allowed a student to establish residency for in-state tuition purposes by establishing domicile or residency in the state were expressly preempted by Section 1623(a) because such laws applied to aliens not lawfully admitted but did not provide the same eligibility to U.S. citizens and nationals of other states. *United States v. Texas*, 350 F.R.D. 74, 80-81 (N.D. Tex. 2025). Critically, the court found it irrelevant that the challenged Texas law also "evaluates different factors to determine residency" such as high school attendance. *Id.* Texas did what Virginia tries to do, and the challenged Virginia laws should similarly be declared preempted and enjoined. On October 16, 2025, the U.S. Court of Appeals for the Fifth Circuit denied intervenor's request for a stay of the district court's injunction. *United States v. Texas*, No. 25-10898, ECF No. 114-1 (5th Cir. Oct. 16, 2025).[1]

Similarly, in *United States v. Oklahoma*, the United States challenged Oklahoma laws under which "individuals who are not lawfully present in the United States may qualify for in-state tuition or nonresident tuition waivers if they meet certain residency and high school graduation criteria." 2025 U.S. Dist. LEXIS 169743, at *2 (E.D. Ok. Aug 7, 2025). The magistrate's report

---

[1] Currently, a full appeal is pending before the Fifth Circuit with oral argument tentatively scheduled for the week of June 1, 2026. Id. ECF No. 176.

16

and recommendation, which was adopted by the District Court, explained that Section 1623(a) contains an express preemption clause and that the challenged laws were preempted. *Id.* at \*4.

These cases are not rendered meaningless merely because the parties moved for consent judgment. Rather, federal courts—including those in Texas and Oklahoma—scrutinize such agreements to first determine whether they are "fair, adequate, and reasonable" and also to ensure that in approving and issuing a consent judgment, a court does not stamp its imprimatur upon an agreement that is "illegal, a product of collusion, or against the public interest." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999); *see also United States v. Miami*, 664 F.2d 435, 439–40 (5th Cir.1981) (en banc) ("Because the consent decree does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, its terms require more careful scrutiny."); *United States v. State of Colo.*, 937 F.2d 505, 509 (10th Cir. 1991) ("Because the issuance of a consent decree places the power of the court behind the compromise struck by the parties, the district court must ensure that the agreement is not illegal, a product of collusion, or against the public interest.").

Recently, the district court of Minnesota held that two Minnesota postsecondary education benefit statutes were not expressly preempted by 8 U.S.C. § 1623(a). *United States v. Walz,* No. 25-cv-2668, 2026 WL 851231 (D. Minn. Mar. 27, 2026). Nothing in that decision is analogous to Virginia's Section 23.1-502, which makes illegal aliens eligible based on their domicile. But the challenged Minnesota statutes are similar in one relevant way to Section 23.1-505.1 in that they base eligibility for reduced and free tuition on high school attendance and graduation. *Walz* should not influence the decision here because the court there erred in its interpretation of Section 1623(a) and the challenged Minnesota laws. Additionally, the Virginia laws are even more squarely based on residency than those at issue in *Walz* (because in addition to high school graduation and

17

attendance, the Minnesota scheme also requires filing of state income tax returns for multiple years), so the case is distinguishable. Plus, the court there relied heavily on an inapposite and wrongly decided state court decision that is in no way authoritative on Virginia law. *See* 2026 WL 851231 *8 (citing *Martinez v. Regents of the University of California*, 241 P.3d 855 (Cal. 2010)).

Citing to the INA's definition of "residence" under 8 U.S.C. § 1101(a)(33),[2] the Minnesota district court concluded that the challenged statutes do not contravene federal law because the Minnesota laws do not require students to establish that their principal actual dwelling place is in Minnesota to qualify for postsecondary education benefits. *Id.* at *8. The Minnesota district court erred, however, in artificially interpreting Section 1623(a)'s "on the basis of residence" language as requiring mirror language in the challenged Minnesota laws. *Id.* It is implausible that a state law would be preempted only if it applied the precise definition of residence used in federal law. Plus, the INA's definition serves a very different purpose—defining who qualifies as a permanent resident and is otherwise qualified for public benefits. *See, e.g.*, 8 U.S.C. §§ 1611-12, 1621. Graduation from high school within a state for purposes of in-state college tuition is plainly a proxy for residence. By conferring eligibility for benefits based on high school attendance and graduation (or its equivalent) *in* Minnesota, Minnesota confers such eligibility "based on residence" for the straightforward reason that high school students reside near where they attend high school. Additionally, like the law in Virginia, Minnesota secondary education law requires a student to be a resident in the school district to attend a public secondary education institution for free. Minn. Stat. Ann. §§ 120A.20, 120A.22. The court failed to even address this argument in its opinion. *See generally Walz,* 2026 WL 851231. Both common sense and state law make plain that high school

---

[2] Section 1641 of the INA defines certain terms contained in Title 8, Chapter 14 of the U.S. Code and states, "[e]xcept as otherwise provided in this chapter, the terms used in this chapter have the same meaning given such terms in section 101(a) of the [INA]." 8 U.S.C. § 1641(a). Section 1623(a) is also in Title 8, Chapter 14 of the U.S. Code.

attendance and graduation are a proxy for residence. Va. Code Ann. §§ 22.1-5(A), 22.1-3(A)(1)-(3). That case is even stronger in Virginia which adds to its high school attendance and graduation requirement a requirement that the student or parent filed taxes in the Commonwealth for the two preceding years. *Id.* § 23.1-505.1.

The Minnesota district court also wrongly concluded that even if the challenged provisions contained a de-facto residency requirement, at least one U.S. citizen could qualify for reduced and free tuition without regard to that individual's residence under the challenged provisions, and as such, the Minnesota statutes did not run afoul of Section 1623(a). *Walz,* 2026 WL 851231 at *10-11. This holding fails for at least three independent reasons. First, Section 1623(a) says that "*an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.*" 8 U.S.C. § 1623(a) (emphases added). The meaning of that parallel structure is straightforward. Congress meant to prevent aliens who are not lawfully present from receiving better treatment than non-resident U.S. citizens or nationals who are similarly situated. H.R. Rep. No. 104–828, 2d Sess. p. 240 (1996) ("This section provides that illegal aliens are not eligible for in-state tuition rates at public institutions of higher education."). It does not mean that Section 1623(a) is entirely defeated by the presence of any nonresident U.S. citizen who receives the relevant benefit, regardless of the circumstances. It would be absurd to suggest that the existence of *one* non-resident U.S. citizen or national student who receives in-state tuition makes every illegal alien in the state eligible for in-state tuition on the basis of residence.

Second and independently, the court in *Walz* erred because it is a "well-settled rule of construction that the singular may often import the plural as well." *Grier v. Kennan*, 64 F.2d 605,

19

607 (8th Cir. 1933) (internal quotation marks and citation omitted); *see also Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1356 (Fed. Cir. 2003) (stating that it is an established rule of law that the use of the word "a" is an "indefinite or generalizing force."); *United States v. Myers*, No. 23-1034, 2026 WL 859248, at *4 (9th Cir. Mar. 27, 2026) ("This long-standing rule of interpretation—the singular includes the plural—"is simply a matter of common sense and everyday linguistic experience.") (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 130 (2012)); *United States v. Segari*, No. 25-456, 2026 WL 653757, at *6 (M.D. Fla. Mar. 9, 2026) (same). This rule of construction was adopted by Congress in the Dictionary Act: "unless the context indicates otherwise … words importing the singular include and apply to several persons, parties, or things[.]" 1 U.S.C. § 1; *see also St. Francis Hosp., Inc. v. Becerra*, 28 F.4th 119, 123 (10th Cir. 2022) (observing that courts should construe singular items as plural when doing so is vital to carry out the evident intent of the statute in question and citing *United States v. Hayes*, 555 U.S. 415, 422, n.5 (2009)); *In re Cell Tower Recs. Under 18 U.S.C. 2703(D)*, 90 F. Supp. 3d 673, 677 (S.D. Tex. 2015) ("Thus the default rule of interpretation is to include both singular and plural, absent a contrary indication in the statute."). The Dictionary Act eliminated the discretionary aspect of the rule of construction and made it a default rule. *In re Cell Tower Recs. Under 18 U.S.C. 2703(D)*, 90 F. Supp. 3d at 677, n.6. Thus, when state statutes, like those in Minnesota and Virginia, deny at least one U.S. citizen or national eligibility for a postsecondary education benefit *with regard to his or her residence*, they are in direct conflict with Section 1623(a) if illegal aliens are eligible for that same benefit *on the basis of residence*.

Third, to read Section 1623(a) otherwise would conflict with Congressional intent and render the statute without effect. *Walters v. Metro. Educ. Enters.*, Inc., 519 U.S. 202, 209 (1997) ("Statutes must be interpreted, if possible, to give each word some operative effect.") (citing

20

*United States v. Menasche*, 348 U.S. 528, 538–39 (1955)); *Menasche*, 348 U.S. at 538-39 ("It is our duty to give effect, if possible, to every clause and word of a statute . . . rather than to emasculate an entire section[.]" (internal quotation marks and citation omitted)); *see also Stone v. INS*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute [IIRAIRA amends title 8], we presume it intends its amendment to have real and substantial effect."), *abrogation on other grounds recognized in Riley v. Bondi*, 606 U.S. 259, 276-77 (2025); *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 389 (1951) (rejecting interpretation under which "the exception swallows the proviso and destroys its practical effectiveness"). Forcing any U.S. citizen to meet Virginia's definition of "resident student" in order to be eligible for in-state tuition, so long as Virginia makes illegal aliens eligible for the same, is exactly what Section 1623 prohibits.

The absurdity of the *Walz* court's interpretation of Section 1623(a) comes into even starker relief by considering the history of the federal legislation and the circumstances surrounding it. When interpreting statutes, courts start with the plain language of the statute, but they can also consider the statute's "structure, purpose, and legislative history as additional evidence of congressional intent." *Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 645 (4th Cir. 2018); *see also United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543-44 (1940) ("When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no rule of law which forbids its use, however clear the words may appear on superficial examination." (quotation marks and citations omitted)). Prior to 1996, Virginia had already been making a distinction between in-state and out-of-state students, conferring significant postsecondary education benefits to students who qualified as "in-state." SFND ¶ 1. Under these circumstances, at least one U.S. citizen (but certainly not all U.S. citizens) was eligible for in-state tuition at that time on the basis of residence.

21

In 1996, Congress passed PRWORA and IIRAIRA's Section 1623(a), in order to disincentivize illegal immigration by restricting an illegal alien's ability to receive public state benefits, including postsecondary education benefits. 8 U.S.C. §§ 1601, 1623(a). In so doing, Congress specifically mandated that if an illegal alien is eligible for a postsecondary education benefit on the basis of residence, "a citizen or national of the United States" must be eligible for the same benefit without regard to residence. 8 U.S.C. § 1623(a). If the "a" that precedes "U.S. citizen or national" were singular, this would render the limiting provision in Section 1623(a) a nullity; at least one U.S. citizen *was already eligible* for in-state tuition in the existing state statutory schemes at that time.

The Minnesota court failed to read "the words 'in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 576 U.S. 473, 486 (2015). Specifically, the Minnesota district court erred because its interpretation of Section 1623(a) did not give full effect to Congress's intent, explicitly expressed in Section 1601 enacted through PRWORA: to encourage an alien's self-reliance rather than "burden the public benefits system" and "remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(4)-(6). This Court should give full effect to Congress's intent and conclude that the best reading of Section 1623(a) is that it mandates that if illegal aliens are eligible for in-state tuition based on residency, then *all* (not just some) U.S. citizens and nationals must be eligible for the same without regard to residence. "The more persuasive inference to draw from § 1623 is that public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States *citizens* receive this benefit." *Merten*, 305 F. Supp. 2d at 606 (emphasis added); *see also id.* at 607 ("Indeed, in enacting PRWORA and IIRAIRA, Congress made clear statements of national policy concerning welfare

22

and immigration, affirmatively stating that there is a 'compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits.'" (citing 8 U.S.C. § 1601)). Congress clearly expressed its intent to dissuade illegal immigration and an illegal alien's reliance on the public benefits system in 1996, not to encourage reliance on such a system or maintain the status quo. 8 U.S.C. §§ 1601, 1623(a).

In coming to the conclusion that the Minnesota statutes were not preempted, the Minnesota district court relied on *Martinez*, 241 P.3d 855 (Cal. 2010), which analyzed a California statute similar to Section 23.1-505.1 of the Virginia Code in that that it allows illegal aliens to qualify for in-state tuition based on high school attendance and graduation in California. *Walz,* 2026 WL 851231 at *8-9. But the Minnesota district court's reliance on *Martinez*, which is neither binding nor persuasive, is misplaced for three reasons.

First, while the California Supreme Court has ruled on the question of whether California's higher-education statute was preempted by the federal law, Plaintiff submits that federal courts—not state courts—are more adept at weighing in on the issue of federal constitutional law. Whether state law is preempted by a federal law is a question of federal law because preemption turns on congressional intent under the Supremacy clause. *See, e.g., Pinney v. Nokia, Inc.*, 402 F.3d 430, 453 (4th Cir. 2005); *Cox v. Duke Energy Inc.*, 876 F.3d 625, 635 (4th Cir. 2017); *see also Windmill Health Prods., LLC v. Sensa Prods.*, No. C-15-0574 MMC, 2015 WL 6471180, at *3 (N.D. Cal., Oct. 27, 2015) (stating "preemption is a question of federal law [.]") (citing *Local Union 598 v. J.A. Jones Construction Co.*, 846 F.2d 1213, 1218 (9th Cir. 1988)).

Second, the court in *Martinez* erred in its interpretation of the California Education Code, which does ultimately exempt illegal aliens "from paying out-of-state tuition" on the basis of residence but exempts illegal aliens from non-resident tuition—exactly what Section 1623(a)

23

prohibits, only put negatively (as an exemption from non-resident tuition) rather than positively (as granting in-state tuition). The semantics here in analyzing *Martinez* have no legal impact: either way, illegal aliens in California are eligible for in-state tuition while non-resident U.S. citizens are not on the basis of residence. As the California Court of Appeal, Third Appellate District cogently put it, when ruling on behalf of the plaintiff in that case and finding that the California Education Code was preempted, "[a] reasonable person would assume that a person attending a California high school for three years also lives in California. Such an assumption would be reasonable, given that a school district is generally linked to residence." *Martinez v. Regents of University of California*, 83 Cal. Rptr. 3d 518, 535 (2008), *rev'd*, 50 Cal. 4th 1277 (2010), *cert. denied*, 563 U.S. 1032 (2011).[3]

Third, the *Martinez* court considered the California Legislative Counsel's opinion and legislative finding for their persuasive value regarding the challenged California Education Code but in the same stroke discounted the legislative history of Title 8 of the U.S. Code Section 1623. *Martinez*, 50 Cal.4th at 1289-90. This uneven treatment of extrinsic materials is judicially unsound and, in any event, not binding or relevant here.

The discrepancy in cost created by the Commonwealth's discrimination against U.S. citizens is substantial.[4] In Virginia, the cost of in-state tuition is significantly lower than out-of-state tuition. SFND ¶¶ 9-11. The challenged Virginia laws thus grant preferential treatment to unlawfully present individuals in violation of federal law. This violation goes directly against

---

[3] The United States has sued California seeking declaratory and injunctive relief related to Cal. Educ. Code § 68130.5, the same statute at issue in *Martinez*. *United States v. Newsom*, No. 25- cv-03375 (E.D. Cal. filed Nov. 20, 2025).

[4] The governing boards of each public institution of higher education in the Commonwealth of Virginia sets the tuition for the fiscal year, SFND ¶ 5, but by law these tuition rates must reflect the two categories of in-state and out-of-state tuition. Va. Code Ann. §§ 23.1-502, 23.1-505.1.

Congressional intent to prohibit illegal aliens from being eligible for postsecondary education benefits—such as in-state tuition and state financial assistance programs—based on residence within a state unless United States citizens are eligible for the same, regardless of residence. In recognition of the United States' immigration policy that "aliens within the Nation's borders not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations," 8 U.S.C. § 1601(2)(A), Congress enacted Section 1623(a) to remove the incentive for illegal immigration provided by access to reduced tuition rates. The challenged Virginia laws impermissibly undermine federal law and for the foregoing reasons, this Court should declare Sections 23.1-502 and 23.1-505.1 preempted and enjoin them.

## II.    The United States is Entitled to An Injunction

### A.  *The United States Meets All Four Injunction Factors*

To establish entitlement to an injunction a plaintiff is required to show the traditional injunction factors that (1) it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Mayor of Baltimore v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020). The balance of harms and public interest factors "merge when the Government is the opposing party." *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Here the injunction factors are easily met.

First, the United States has suffered irreparable injury. Irreparable harm necessarily results from the enforcement of a preempted state law. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029

(9th Cir. 2013) (irreparable harm based on Supremacy Clause violation); *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) ("[T]he first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation."). Control over immigration is both a sovereign prerogative and an enumerated power of Congress. *Arizona*, 567 U.S. at 394-95. Federalism as embodied in the Constitution requires that certain powers belong to the national sovereign, while others are reserved to the states. *Murphy v. NCAA*, 584 U.S. 453, 470 (2018). Immigration belongs to the "national sovereign, not the 50 separate States." *Arizona*, 567 U.S. at 395. Yet, Virginia seeks to upset this constitutional order by establishing its own immigration policy via state laws, in direct conflict with federal immigration law. Virginia's violation of the Constitution and the bedrock principles of Federalism that undergird our rule of law as a nation causes irreparable harm to the United States. *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 366-67 (1989). This alone establishes irreparable harm to the United States.

Furthermore, the practical effects of the Virginia laws on the United States are clear. The United States is irreparably harmed because Virginia's challenged laws frustrate its immigration laws and policies. *United States v. South Carolina*, 720 F.3d 518, 533 (4th Cir. 2013) (finding, in the context of assessing a motion for preliminary injunction, irreparable injury where state laws at issue were found to frustrate the "accomplishment and execution of the full purposes and objectives of Congress" and cause "irreparable injury to the nation's foreign policy if the relevant sections" took effect) (citation omitted). Congress chose to limit eligibility for postsecondary education benefits for aliens not lawfully present unless U.S. citizens and nationals of other states were equally eligible without regard to residence. 8 U.S.C. § 1623(a). That was in keeping with

26

Congress's express statements of national immigration policy found in PRWORA, emphasizing self-sufficiency and the removal of public benefits as an incentive to illegal immigration. 8 U.S.C. § 1601. Congress also instructed that "the immigration laws of the United States should be enforced vigorously and uniformly," *see* Immigration Reform and Control Act of 1986, Pub. L. No. 99–603, § 115(1), 100 Stat. 3359, 338. But individual states "may not pursue policies that undermine federal law." *Arizona*, 567 U.S. at 416. Without this Court's intervention, the challenged Virginia laws will impede the federal government's law and policy expressed in Section 1623(a), allowing the Commonwealth to supplant the will of the Federal Sovereign in an area of law expressly assigned to the Federal Sovereign's political branches.

Failure to enjoin these laws will invite other states to enact or retain their own laws, resulting in a patchwork system of laws severely undermining the "integrated scheme of regulation created by Congress." *Arizona*, 567 U.S. at 402 (internal quotations and citation omitted). Defendant cannot be rewarded for unconstitutionally second-guessing the Federal Sovereign, resisting Congress's will, and frustrating federal programs. *Cf. City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999) (rejecting City's sovereignty argument as seeking to allow "states and localities to engage in passive resistance that frustrates federal programs."). That is particularly true here because "the public interest in enforcement of the immigration laws is significant." *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d. 1211, 1221 (D.C. Cir. 1981) (collecting cases).

Second, the only effective remedy for the harm caused by the continued enforcement of the challenged Virginia statutes is injunctive relief barring their enforcement. Because the statutes conflict with federal law, allowing them to remain in effect would perpetuate ongoing legal and practical harm. There is no adequate remedy at law in these circumstances, as monetary damages are unavailable. *Cf. Hughes Network Sys., Inc. v. InterDigital Comms. Corp.*, 17 F.3d 691, 694

27

(4th Cir. 1994) (observing that injunction is generally not favored where the moving party may be compensated by an award of money damages). Accordingly, an injunction is necessary to prevent irreparable harm and to ensure compliance with federal law.

Third, the balance of hardships and public interest tip decidedly in favor of the United States. Because the challenged laws are invalid under the Supremacy Clause, they are not in the public interest. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1060 (9th Cir. 2009) (public interest represented by "the Constitution's declaration that federal law is to be supreme"). The public has a strong interest in maintaining our system of federalism and the Constitutional lines drawn between Federal and State power, as that is the very bedrock of our system of law and our Nation. Virginia's challenged laws undermine the constitutional framework of our Nation. For that reason, the public has no interest in enforcing Virginia's unconstitutional laws. *See Pharm. Rsch. & Manufacturers of Am. v. Morrisey*, 760 F. Supp. 3d 439, 464 (S.D.W. Va. 2024) ("Further, no matter how the state pursues even laudable policy goals, it still must not violate the Supremacy Clause. If the chosen scheme runs afoul of the Constitution, it is invalid."); *see also Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 554 (6th Cir. 2012) (implying that it is in the public interest to preserve the Supremacy Clause when observing that although it did not create a private right of action, plaintiffs could nevertheless seek equitable relief against state or local governments acting under preempted laws); *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) ("Frustration of federal statutes and prerogatives are not in the public interest, and we discern no harm from the state's nonenforcement of invalid legislation.").

The public does, however, have a strong interest in enforcing its own political choices represented through the immigration laws enacted by Congress. *Blackie's House of Beef, Inc.*, 659 F.2d. at 1221. To the extent members of the public in Virginia disagree with federal immigration

28

policy, they can address those concerns to their elected representatives in the U.S. Congress. Moreover, there is little hardship to the Defendant because the challenged laws need only be enjoined to the extent the laws confer postsecondary education benefits on illegal aliens, not to U.S. citizens or nationals in the Commonwealth. The rest of Virginia's in-state tuition scheme can remain in place. Thus, the United States has shown that it is entitled to injunctive relief.

### B. The Scope of the Injunction Requested is Narrow and Does not Disturb Virginia's In-State Tuition Laws as to United States Citizens

The United States respectfully requests that the injunction bind all defendants and the persons and entities indicated in section Fed. R. Civ. P. 65(d)(2), including the parties' successors and assigns. *See Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005) (describing when nonparties will be considered in privity with a party to the prior action and bound by a prior adjudication, including successors-in-interest).

The United States also requests that the scope of the injunction cover the challenged laws and any laws, regulations, and policies that are substantially similar in scope, to avoid a situation in which new laws are promulgated with minor changes that fail to remedy the conflicts with and preemption by Section 1623(a).

Finally, the United States requests that the challenged laws, and their implementation, are enjoined only with respect to "aliens not lawfully present" in the United States. Virginia can retain its in-state tuition laws on the basis of residency so long as it otherwise complies with Section 1623(a). This Court can afford complete relief to Plaintiff without disturbing the Commonwealth's statutory scheme so long as it does not favor illegal aliens over United States citizens with respect to eligibility for postsecondary benefits on the basis of residence.

29

## **CONCLUSION**

For the foregoing reasons, the United States of America asks that this court (1) find that Sections 23.1-502 and 23.1-505.1 of the Virginia Code are preempted by Section 1623(a) and thus cannot stand; (2) enter summary judgment for the United States; (3) find that the United States has met its burden for injunctive and declaratory relief; (4) enter a judgment declaring that the challenged Virginia laws violate the supremacy clause and are therefore unconstitutional and invalid with respect to illegal aliens; (5) enter an injunction enjoining the challenged Virginia laws and their implementation, and any substantially similar laws, regulations, and/or policies, with respect to illegal aliens, and (5) deny Defendants' cross-motion for summary judgment.

DATED: April 17, 2026

TODD W. BLANCHE
Acting Attorney General

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ABHISHEK S. KAMBLI
Deputy Associate Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

MATTHEW SEAMON
Acting Assistant Director
Office of Immigration Litigation

Respectfully Submitted,

/s/ *Robert O. Lindefjeld*
ROBERT O. LINDEFJELD
DC Bar No. 44423
Assistant Director
United States Department of Justice
Enforcement & Affirmative Litigation Branch
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Fax: (202) 305-7000
Telephone: (202) 451-7488
Email: robert.o.lindefjeld@usdoj.gov

/s/ *Jonathan H. Hambrick*
JONATHAN H. HAMBRICK
Assistant United States Attorney
VSB No. 37590
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-5400
Fax: (804) 771-2316
Email: jay.h.hambrick@usdoj.gov

*Attorneys for Plaintiff United States*

30

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of April, 2026, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system, which will send a notification of such filing

(NEF) to all counsel of record.

/s/ *Robert O. Lindefjeld*
ROBERT O. LINDEFJELD
DC Bar No. 44423
Assistant Director
United States Department of Justice
Enforcement & Affirmative Litigation Branch
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Fax: (202) 305-7000
Telephone: (202) 451-7488
Email: robert.o.lindefjeld@usdoj.gov

31