**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br><br> v. <br><br> COMMONWEALTH OF VIRGINIA, <br><br> *Defendant.* | Case No.: 3:25-cv-01067-REP |

**BRIEF OF FEDERATION FOR AMERICAN IMMIGRATION REFORM
AS *AMICUS CURIAE* IN SUPPORT OF
<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

Earl N. "Trey" Mayfield, III, VSB# 41691
tmayfield@chalmersadams.com
Dan Backer
dbacker@chalmersadams.com
Chalmers, Adams, Backer & Wallen, LLC
1032 15th St., NW #374
Washington, D.C. 20005
(o) 678-582-8900
*Local Counsel*

Leslie C. Corbly
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
leslie.corbly@gmail.com
(o) 202-328-7004

Counsel for *Amicus Curiae*
Federation for American Immigration Reform

TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...............................................................................1

INTEREST OF *AMICUS CURIAE*...........................................................................................1

INTRODUCTION ........................................................................................................................1

ARGUMENT ................................................................................................................................2

    I.      Congress has prohibited providing in-state tuition benefits to illegal aliens when those benefits are not also offered to out-of-state U.S. citizens...............................................2

    II.    Virginia's laws preferring illegal aliens over lawful U.S. residents for tuition are preempted by federal law.................................................................................................5

CONCLUSION..............................................................................................................................9

## CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* the Federation for American Immigration Reform ("FAIR") is a 501(c)(3) not-for-profit charitable organization incorporated in the District of Columbia. FAIR has no parent corporation. It does not issue stock.

## INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* Federation for American Immigration Reform ("FAIR") is a nonprofit corporation and membership organization founded in 1979 with its principal place of business in Washington, D.C. FAIR's mission is to advocate for immigration policy that is in America's best interests. FAIR has been involved in more than 100 legal cases since 1980, either as a party or *amicus curiae*, with the aim of advancing this mission.

The decision in this case, which concerns Congress's statutory scheme to discourage illegal immigration by means of limiting public benefits exclusively to U.S. citizens and qualified aliens, will determine whether Virginia's in-state tuition benefit remains an incentive for illegal immigration. *Amicus* FAIR thus has a direct and vital interest in the outcome of this case.

## INTRODUCTION

A principal aim of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") was to remove state-level incentives that encourage unlawful immigration, by denying public benefits to aliens not lawfully present in the United States. To that end, Congress enacted 8 U.S.C. § 1623(a), which provides, "[n]otwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence … for any postsecondary education benefit unless a citizen … is eligible for such a

---

[1] No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

benefit … without regard to … residence." Sections 23.1-502 and 23.1-505.1 of the Virginia Code flout that clear command. Section 23.1-502 confers in-state tuition on illegal aliens who reside in Virginia. Meanwhile, U.S. citizens who reside outside Virginia, and therefore by definition cannot satisfy the residence requirement, remain ineligible for in-state tuition. Section 23.1-505.1 deploys a nearly perfect proxy for residency: in-state high school attendance and graduation, coupled with the filing of Virginia income tax returns. These provisions allow unlawfully present aliens to receive in-state tuition, while denying that same benefit to U.S. citizens on the basis of their non-residence in the Commonwealth.

These residency-tethered benefits are therefore expressly preempted by 8 U.S.C. § 1623(a) and void under the Supremacy Clause. The Commonwealth of Virginia should therefore be enjoined from enforcing them.

## ARGUMENT

I.    **Congress has prohibited providing in-state tuition benefits to illegal aliens when those benefits are not also offered to out-of-state U.S. citizens.**

The Constitution's Supremacy Clause provides that federal law is "the Supreme law of the land, … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, cl. 2. Thus, "[a] fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). When a state enactment "contradict[s]" federal law, it is "without effect." *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824).

There are three types of preemption: express, conflict, and field preemption. E.g*., N. Va. Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 492-93 (4th Cir. 2025). Express preemption is "Congress clearly expressing an intention for a federal law to preempt state law." *Id.* at 492 (citation omitted). Conflict preemption lies whenever the "ordinary meaning of federal and state

law directly conflict" so that the two are in "logical contradiction." *Kansas v. Garcia*, 589 U.S. 191, 214 (2020) (Thomas, J., with Gorsuch, J., concurring) (stating that preemption occurs when "the ordinary meaning of federal and state law directly conflict") (internal quotation marks and citation omitted).

In 1996, as part of the Illegal Immigration and Immigrant Responsibility Act, Pub. L. 104-208, 110 Stat. 3009-546 (1996) ("IIRIRA"), Congress enacted a variety of measures to discourage illegal immigration and strengthen the enforcement of federal immigration laws. One such provision, codified at 8 U.S.C. § 1623, is a one-sentence prohibition forbidding any state from providing resident tuition rates to any illegal alien unless that state provides resident tuition rates to all United States citizens, regardless of their states of residence:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623. Section 1623(a) thus confers on every U.S. citizen a federal right to receive any in-state-tuition benefit a state extends to unlawfully present aliens, regardless of the citizen's own state of residency.

The Supreme Court has long held that legislative intent is the "ultimate touchstone in every pre-emption case." *Wyeth v. Levine,* 555 U.S. 555, 565 (2009). In determining that intent, a court must look to the "structure and purpose of the statute as a whole." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 486 (1996). The legislative intent behind 8 U.S.C. § 1623, and its context, confirms its objective is to deny public benefits to illegal aliens. Congress made plain its intent to preempt contrary state laws by making § 1623(a)'s restriction on postsecondary education benefits applicable "[n]otwithstanding any other provision of law."

In passing 8 U.S.C. § 1623, Congress sought to discourage states from granting in-state tuition to illegal aliens. As Plaintiff's Summary Judgment Motion points out,[2] the Conference Report accompanying the bill that would become IIRIRA states: "This section provides that illegal aliens are not eligible for in-state tuition rates at public institutions of higher education." Dock. No. 87 at 27 (quoting H.R. Rep. No. 104-828, 240 (Sept. 24, 1996)). Statements by leading proponents of the measure in both the House and the Senate further confirm this objective.[3] In fact, every Member of Congress who made a recorded statement concerning the text that would become 8 U.S.C. § 1623 agreed with the description contained in the Committee Report. *See United States v. Hayes,* 555 U.S. 415, 429 (2009) (rejecting a party's interpretation of a statute's text where the legislative record supported a contrary understanding and "contains no suggestion" supporting the party's interpretation).

In addition to IIRIRA, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"), Pub. L. No. 104-193, 110 Stat. 2105 (1996), in

---

[2] For citation purposes the page number notated at the top of the docket is used rather than the page number indicated at the bottom of each page of the document.

[3] Senator Alan Simpson, the principal sponsor of the Senate version of the bill, summarized the provision as, "Illegal aliens will no longer be eligible for reduced in-State college tuition." 142 Cong. Rec. 137, S11713 (Sept. 28, 1996). Senator Simpson reiterated this statement: "Without the prohibition on States treating illegal aliens more favorably than United States citizens, States will be able to make illegals eligible for reduced in-State tuition at taxpayer-funded State colleges." 142 Cong. Rec. 136, S11508 (Sept. 27, 1996).

Representative Christopher Cox, a leading House proponent of the measure, stated, "Title V says illegal aliens are not eligible for in-State tuition at public colleges, universities, technical and vocational schools." 142 Cong. Rec. 135, H11377 (Sept. 26, 1996). He also explained this provision would not be dropped in order to get President Clinton to sign IIRIRA: "The President wants to drop the provision that says . . . that when somebody comes from Thailand, when somebody comes from Russia, when somebody comes from you name it . . . into your State, they will not get in-State tuition benefits at your State college. Now if I move from California to Indiana, I am not going to get in-State benefits because I am from California, but illegal aliens, unless we pass this bill, are going to get in-State tuition." *Id.* at H11376-77.

which Congress explicitly codified its objective of denying public benefits to illegal aliens: "It is a compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(6). PRWORA therefore included a provision intended to stop the flow of state and local public benefits to illegal aliens. 8 U.S.C. § 1621(a).[4] The proscribed "public benefits" include "any ... postsecondary education … or any other similar benefit ...." 8 U.S.C. § 1621(c). As Defendant observes, Congress did, however, create a savings clause: if a state nevertheless wanted to give a public benefit to illegal aliens, Congress would not stop the state from doing so, so long as the state enacted a new law that "affirmatively provides" the public benefit to illegal aliens, to assure accountability to state taxpayers. Def. Mot. S.J., Dock. No. 86 at 17 (quoting 8 U.S.C. § 1621(d)). Taken together, while § 1621(d) allows states to provide discounted postsecondary tuition to unlawfully present aliens, § 1623(a) prohibits such a benefit from being based on residence within the state when that residency requirement excludes nonresident citizens or nationals of the United States. Thus, while States are free to provide post-secondary education benefits to unlawfully present aliens, they must extend the same benefits to U.S. citizens regardless of residency. No one argues otherwise.

## II. Virginia's laws preferring illegal aliens over lawful U.S. residents for tuition are preempted by federal law.

Virginia Code §§ 23.1-502 and 23.1-505 violate the purpose and text of 8 U.S.C. § 1623(a) because they classify illegal aliens as Virginia residents who are eligible for in-state tuition rates that are not offered to U.S. citizens who are residents of other states.

As the federal government points out, "[t]he plain language of Section 1623(a) makes clear that if a State's tuition structure distinguishes between residents and nonresidents for U.S.

---

[4] A parallel PRWORA provision, codified at 8 U.S.C. § 1611, prohibits the federal government from providing public benefits to illegal aliens.

citizens, aliens who are not lawfully present are ineligible for the resident rate." Pl. Mot. S.J., Dock. No. 87 at 14. Plaintiff further clarifies what is evident from the statutory text: States are prohibited from providing in-state tuition to undocumented aliens when lawful U.S. residents from other U.S. states are denied that benefit. This categorical ban gives states clarity, and ensures that nonresidential U.S. citizens are not treated worse than in-state illegal aliens. Attempts to sidestep the ban by "imposing some additional requirements–like domiciliary intent or high school graduation," run counter to federal law, and are therefore preempted. *Id.* at 15.

Defendant Virginia insists that its statutes do not base in-state tuition on Virginia residency because, meeting statutory requirements for in-state tuition "certainly require[s] some connection to" Virginia, but "do[es] not require [Virginia] residency." Def. Mot. S.J., Dock. No. 86 at 20 (internal quotation omitted). However, unlawful aliens residing in the Commonwealth are eligible for these rates as a matter of course in a way that millions of nonresident U.S. citizens are not. Under Va. Code § 23.1-502, students are eligible for in-state tuition if they: (1) attend two years of high school in the Commonwealth; (2) graduate from a public, private, or home school institute in the Commonwealth, or pass a high school equivalency exam; and (3) a parent, guardian, or person in loco parentis files a Virginia tax return. By construing attendance, graduation, and taxation requirements as distinct from domicile, the State attempts to sidestep § 1623's ban on benefits "on the basis of residence."

However, this evasion fails because the above criteria is a poor attempt to disguise the tuition benefit Virginia gives illegal aliens. *See* 8 U.S.C. § 1623(a). Defendant Virginia describes its high school attendance criterion as broader than a pure residency rule, and invokes certain pathways for nonresidents of Virginia to receive in-state tuition: students who live in neighboring states but who attend private high-school in Virginia, select non-Virginia resident

students who attend boarding school in Virgina, and former residents who move away after graduation. Def. Mot. S.J., Dock. No. 86 at 20. These marginal examples are not representative of most nonresident U.S. citizen students attending, or applying to, Virgina postsecondary institutions, all of whom are ineligible for Virginia in-state tuition.

While Va. Code § 22.1-5(A)(4) does allow nonresidents to attend Virginia public high schools, the same code provision allows local school boards to charge these students tuition, something the school boards cannot do for students who are Virginia residents. Again, a typical out-of-state U.S. resident attending high school in almost any other state, who applies to a Virginia public college, cannot meet Va. Code § 23.1-505's eligibility requirements. Under those requirements, attendance and residence, in practice, overlap almost completely, so Virginia's proxy-based test is functionally indistinguishable from a residency-based conferral of benefits to illegal aliens.

The vast majority of students who satisfy the two-year attendance proxy are bona fide Virginia residents. By contrast, out-of-state lawful U.S. residents who attend Virginia universities and who attend high school outside the Commonwealth will not satisfy the high-school attendance requirement. The Commonwealth's reliance on marginal exceptions—students who board at Virginia schools or live on the Virginia border—does not alter this reality. According to Virginia's logic, if it can point to a single example of an out-of-state resident who (1) attends high school for two years in Virginia; (2) graduates; (3) and shows proof of a parental tax return—and is therefore eligible for in-state tuition rates—that would prove Virginia offers in-state tuition to nonresident U.S. citizens. But for Virginia to rely on this type of evidence for nonresident eligibility is to engage in a semantic game at odds with both § 1623's objectives and text. Courts look to a law's practical, normal application, rather than marginal applications, to

discern its effects. *Henderson v. Mayor of N.Y.*, 92 U.S. 259, 268 (1875) ("In whatever language a statute may be framed, its purpose must be determined by its natural and reasonable effect."); *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011) ("Just as the 'inevitable effect of a statute on its face may render it unconstitutional,' a statute's stated purposes may also be considered.") (quoting *United States v. O'Brien*, 391 U.S. 367, 384 (1968)).

In its Motion for Summary Judgment, Defendant acknowledges that Plaintiff United States's reading of § 1623(a) would "eliminate the ability of undocumented students to ever obtain in-state tuition." Def. Mot. S.J., Dock. No. 86 at 28-29. Virginia counters that 8 U.S.C. § 1623(a), which states illegal aliens are not eligible for postsecondary education benefit "unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident," means that if "one or more" nonresidents are eligible for benefits, then these benefits are also available to unlawfully present aliens. Def. Mot. S.J., Dock. No. 86 at 29. However, as Plaintiff United States correctly observes, Congress's aim in section 1623(a) was to discourage states from extending postsecondary educational benefits to unlawfully present aliens: "This section provides that illegal aliens are not eligible for in-state tuition rates at public institutions of higher education." Pl. Mot. S.J., Dock. No. 87 at 15 (citing H.R. Rep. No. 104–828, at 240 (1996)).

In sum, Congress enacted § 1623(a) to prevent illegal aliens from receiving postsecondary education benefits that are not available to U.S. citizens and nationals, regardless of their state of their residency. Virginia's in-state tuition statutes confer benefits to unlawfully present aliens on the basis of residence, and deny the same benefits to nonresident U.S. citizens in violation of § 1623(a)'s plain language. Accordingly, those state statutes are preempted both expressly and by conflict, and should be enjoined.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for summary judgment.

Dated: May 5 2026                              Respectfully submitted,

                                               /s/_____
                                               Earl N. "Trey" Mayfield, III, VSB# 41691
                                               tmayfield@chalmersadams.com
                                               Dan Backer
                                               dbacker@chalmersadams.com
                                               Chalmers, Adams, Backer & Wallen, LLC
                                               1032 15th St., NW #374
                                               Washington, D.C. 20005
                                               (o) 678-582-8900
                                               *Local Counsel*

                                               Leslie C. Corbly
                                               Federation for American Immigration Reform
                                               25 Massachusetts Ave., NW, Suite 330
                                               Washington, DC 20001
                                               leslie.corbly@gmail.com
                                               (o) 202-328-7004

                                               Counsel for *Amicus Curiae*
                                               Federation for American Immigration Reform