IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-01067 |
| | ) | |
| COMMONWEALTH OF VIRGINIA, | ) | |
| | ) | |
| Defendant. | ) | |

## COMMONWEALTH OF VIRGINIA'S BRIEF IN SUPPORT OF ITS MOTION TO RECONSIDER THE COURT'S MEMORANDUM ORDER

Pursuant to Federal Rule of Civil Procedure 54(b), Defendant Commonwealth of Virginia respectfully submits this brief in support of its motion to reconsider the Court's Memorandum Order of July 8, 2026, ECF No. 109.

## BACKGROUND

The United States filed this case, contending that 8 U.S.C. § 1623(a) ("§ 1623(a)") expressly preempts Va. Code §§ 23.1-502 ("Domicile Pathway") and -505.1 ("Tuition Equity Pathway"), "as applied to aliens who are not lawfully present in the United States." Compl. ¶¶ 44-45, ECF No. 1. The Commonwealth defends, countering that § 1623(a) does not cover the challenged Virginia statutes and that, even if § 1623(a) were construed to do so, it would be an unconstitutional commandeering of the Commonwealth in violation of the Tenth Amendment and principles of federalism. Am. Answer ¶¶ 44-45 & Defenses ¶¶ 3-4, ECF No. 55.

While the United States and the Commonwealth have legal disagreements over the appropriate construction of § 1623(a), Va. Code § 23.1-502, and Va. Code § 23.1-505.1—which necessarily bears on the ultimate legal questions of preemption and commandeering—they have

consistently agreed that the disputed issues are purely legal, that further factual development is unnecessary in this case, that there are no material facts genuinely in dispute, and that summary judgment is appropriate to resolve the case. ECF Nos. 77, 80, 86, 87, 90, 91, 94, 97.

At the initial pretrial conference, the Court raised questions as to § 1623(a)'s "in no less an amount, duration, and scope" language. Initial Pretrial H'rg Conf. Tr. 9-26, 28-32, ECF No. 80. The parties did not believe that this statutory language raised factual questions in this case, Initial Pretrial H'rg Conf. Tr. 10-22, 28-32, ECF No. 80, but were to submit stipulations addressing it with their cross-motions for summary judgment, Order 1-2, ECF No. 81; Initial Pretrial H'rg Conf. Tr. 38, ECF No. 80. The parties submitted stipulations to the effect that, in all relevant respects, Virginia's in-state tuition benefits are of the same amount, duration, and scope within a given institution, in a given program, at a given seniority level, Stipulations of Facts Not in Dispute ("SFNID") ¶¶ 7, 11-14, ECF No. 83.

For good measure, the parties stipulated to other matters of law and of public record with citations to the publicly-available sources from which those matters were obtained. That included stipulations showing that the Tuition Equity Pathway and multiple other pathways for nonresidents to obtain in-state tuition at Virginia colleges and universities are, in fact, used. SFNID ¶¶ 37, 46, 48, 52, 54, 56, 57, 59, 61, 64, 66, ECF No. 83. These stipulations were made with citations to data available through a website of the State Council for Higher Education in Virginia ("SCHEV"). *See E24: Fall Headcount by Tuition Status and Level*, RESEARCH.SCHEV.EDU (last accessed July 17, 2026), *available at* https://research.schev.edu/rdPage.aspx?rdReport=Enrollment.E24_Report.

The parties fully briefed and argued their cross-motions for summary judgment. ECF Nos. 86, 87, 90, 91, 94, 97, 108. The dispute centers on questions of law:

(1) Whether § 1623(a) expressly preempts Va. Code §§ 23.1-502 and -505.1;

(a) Whether Va. Code § 23.1-502 makes "an alien who is not lawfully present in the United States" eligible for in-state tuition;

(b) Whether Va. Code § 23.1-505.1 makes an undocumented student eligible for in-state tuition "on the basis of residence within" Virginia; and

(c) Whether "a citizen or national of the United States is eligible for" in-state tuition in Virginia "(in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident" of Virginia; and

(2) If § 1623(a) expressly preempts Va. Code §§ 23.1-502 and -505.1, whether this unconstitutionally commandeers Virginia.

There are no material facts genuinely in dispute. *Cf.* Va. Br. 2-3, ECF No. 86; U.S. Br. 2-3, ECF No. 87; Va. Opp'n 2-3, ECF No. 90; U.S. Opp'n 2-9, ECF No. 91.

In the afternoon of Thursday, July 8, 2026, the Court issued a Memorandum Order, "conclu[ding] that there is information relevant to the resolution of the summary judgment motions that is not in the record" and requiring the parties to file the following by Friday, July 17, 2026, i.e., within six business days:

(1) the original version of Va. Code § 23.1-502 enacted in 1984 and the amendments thereto enacted in 1989, 1990, 1996, 2006, 2007, 2008, 2011, 2014, and 2016 (see Va. Code § 23.1-502, "History"), designating in highlight the text that was added, or deleted, with each amendment; and

(2) all legislative history, and information respecting the history, about the enactment of Va. Code §§ 23.1-502 and 23.1-505.1, including, without limitation, all reports or communications in the records of the Virginia House of Delegates and the Virginia Senate respecting the origin of, and reasons for or against, the enactment of those sections; and

(3) any reports of the Joint Legislative Review and Audit Commission ("JLARC") or communications between any legislator and JLARC, respecting the reasons for, or opposition to, such legislation; and

(4) any press releases issued by any member of the Virginia House of Delegates, the Virginia Senate, the Office of the Governor, or the Office of the Attorney General of Virginia, respecting the enactment of, and the reasons for, or opposition to, the legislation; and

(5) any news reports respecting the legislation, the reasons for or opposed to it; and

(6)  an explanation of the process by which §§ 23.1-502 and 23.1-505.1 actually work when applications are made for in-state tuition pursuant to § 23.1-502 and § 23.1-505.1; and

(7)  for the period 1996 to 2025 how many applications for in-state tuition were submitted under Va. Code § 23.1-502 and how many were approved, presented year-by-year; and

(8)  for the period 2020 to 2026, how many applications for in-state tuition were submitted and approved under Va Code § 23.1-505.1 and how many were approved, presented year-by-year; and

(9)  for each of the alternative ways to secure in-state tuition provided in Va. Code § 23.1-506 provide the number of applications for in-state tuition submitted under each alternative eligibility mode and how many of those applications were approved, presented year-by-year; and

(10)  set forth the history of the adoption of the 2020 Addendum A and 2021 General Domiciliary Guide.

Mem. Order 1-3, ECF No. 109.

Under the applicable legal standards, it is unclear how any of these materials or information could dictate which party prevails on the cross-motions for summary judgment. Nothing like this has been required to reach a decision in comparable preemption challenges so far. *United States v. Walz*, No. 0:25-cv-02668, 2026 WL 851231 (D. Minn. Mar. 27, 2026), *on appeal*, No. 26-1886 (8th Cir.); *Martinez v. Regents of Univ. of Cal.*, 241 P.3d 855 (Cal. 2010).

Still, the Commonwealth has been working diligently to supply as much of the requested information as it reasonably can under the circumstances and within the allotted time. It is making its submission subject to, and without waiver, of this motion to reconsider and any other available objections.

In addition to the logistical burdens, resource and time constraints, and lack of advance notice that complicate the tasks associated with searching for, locating, retrieving, reviewing, and producing the responsive information within the six-business-day deadline, the Requests raise

other issues. Portions of Requests 2 and 3 could be considered to cover documents protected from disclosure under the legislative and executive privileges. And as to Requests 7-9, this information is not centrally located, not readily accessible, cannot possibly be compiled within the time allowed, and may not be possible to completely and accurately compiled, at all, in view of record retention policies and respective practices at Virginia's fifteen four-year public institutions of higher education, one two-year public institution of higher education, and twenty-three community colleges. The Commonwealth is, therefore, submitting information compiled from fall-enrollment headcount data that is available through SCHEV's website. *See E24: Fall Headcount by Tuition Status and Level*, RESEARCH.SCHEV.EDU, *supra*.

## LEGAL STANDARDS

Courts have discretion to reconsider and modify their nonfinal orders. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003).

The goal of a "just, speedy, and inexpensive determination" is central to the Federal Rules of Civil Procedure. Fed. R. Civ. P. 1. "Summary judgment procedure is properly regarded . . . as an integral part of" that, *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986), as an available "method for promptly disposing of actions in which there is no genuine issue as to any material fact," Advisory Committee Note (1937), *to* Fed. R. Civ. P. 56. Thus, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Legal questions of statutory interpretation and of legislative history are properly resolved on summary judgment, *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993); *Okla. ex rel. Dep't of Human Servs. v. Weinberger*, 741 F.2d 290, 291 (10th Cir. 1983); *Helm v. California*, 722 F.2d 507, 509 (9th Cir. 1983); *Union Pac. Land Res. Corp. v. Moench Inv. Co.*, 696 F.2d 88, 93 n.5 (10th Cir.

1982), as are the legal questions of whether a federal law preempts a state law, *United States v. N.M. Sup. Ct.*, 839 F.3d 888, 905 (10th Cir. 2016); *Knight v. Boehringer Ingelheim Pharm., Inc.*, 984 F.3d 329, 337 (4th Cir. 2021) ("Preemption is a question of law[.]"), and whether a federal law unconstitutionally commandeers a State, *see Nat'l Ass'n of Regulatory Util. Comm'rs v. FERC*, 475 F.3d 1277, 1283 (D.C. Cir. 2007) ("Whether [the federal government] has commandeered states is a question of law[.]"). "If a party fails to properly support an assertion of *fact* or fails to properly address another party's assertion of *fact*" on summary judgment, then the Court may order the parties "to properly support or address *the fact*," Fed. R. Civ. P. 56(e)(1), (4) (emphasis added), or it may simply "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it," Fed. R. Civ. P. 56(e)(3).

Moreover, in our American system of adversarial litigation, "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). Courts "normally decide only questions presented by the parties," as the "adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Id.* at 244 (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of reh'g en banc), and *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in pt. & concurring in j'mt)).

## ARGUMENT

The Commonwealth respectfully requests that the Court reconsider and either vacate or narrow its Memorandum Order. The Requests are overly burdensome and unnecessary to a determination of the cross-motions for summary judgment. Moreover, Requests 1-5 seek matters

of potential legal (rather than factual) significance, and Requests 2 and 3 appear to cover information that is privileged.

I.    **THE REQUESTS ARE OVERLY BURDENSOME AND UNNECESSARY TO A DETERMINATION OF THE CROSS-MOTIONS FOR SUMMARY JUDGMENT.**

Searching for, locating, retrieving, reviewing, and producing the responsive information within the six-business-day deadline does not serve the purposes of Rules 1 or 56.

For purposes of resolving a motion for summary judgment, "a fact is material if it might affect the outcome of the suit under the governing law." *Milla v. Brown*, 109 F.4th 222, 228 (4th Cir. 2024) (quoting *Haze v. Harrison*, 961 F.3d 654, 658 (4th Cir. 2020)). But whichever way the Court rules on the governing legal questions here, *cf. Walz*, 2026 WL 851231; *Martinez*, 241 P.3d 855, the information and materials requested through its Memorandum Order will not "affect the outcome of the suit," *Milla*, 109 F.4th at 228 (quoting *Haze*, 961 F.3d at 658).

The parties have fully briefed and argued their cross-motions on the dispositive legal questions of whether § 1623(a) expressly preempts Va. Code §§ 23.1-502 and -505.1, whether Va. Code § 23.1-502 makes "an alien who is not lawfully present in the United States" eligible for in-state tuition, whether Va. Code § 23.1-505.1 makes an undocumented student eligible for in-state tuition "on the basis of residence within" Virginia, whether "a citizen or national of the United States is eligible for" in-state tuition in Virginia "(in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident" of Virginia, and—even if § 1623(a) were read to expressly preempt Va. Code §§ 23.1-502 and -505.1—whether this unconstitutionally commandeers Virginia.

Those are legal matters resolved through legal interpretation, legal analysis, and legal reasoning. They will not be affected by past Acts of Assembly (Request 1), legislators' reasons for or against passing the challenged Virginia laws (Requests 2-5), the administrative nuts and bolts

of the colleges' and universities' application processes (Request 6), historical statistics on the numbers of applications received and approved within the respective pathways to in-state tuition (Requests 7-9), or the history of the administrative processes (Request 10) that ultimately led to the adoption of the statutorily required domicile guidelines.

The Court may enter summary judgment without these materials. *Cf.* Fed. R. Civ. P. 56(e)(3). Indeed, if the Court believes that one or both parties have not met their burden with their motions for summary judgment, the proper course of action is to simply deny the motions, not take over the reins for conducting discovery. The proper course is not to enter a *sua sponte* order conducting discovery for one party or the other. Requiring the parties to devote their limited time and resources on extraneous matters that have little to no bearing on the resolution of the at-issue legal questions does not "secure the just, speedy, and inexpensive determination of" this action. Fed. R. Civ. P. 1. The Commonwealth respectfully objects to the Court's Memorandum Order on this basis and requests that the Court reconsider its Requests for more information. Moreover, the Commonwealth's efforts to comply with the Court's Memorandum Order out of an abundance of caution do not waive this objection.

## II.    MULTIPLE REQUESTS CONCERN LEGAL MATTERS.

Requests 1-5 seek matters constituting the legislative history, or potentially seeking the legislative intent, of the General Assembly in enacting the challenged Virginia laws. By definition, these are not "material *fact[s]*," Fed. R. Civ. P. 56(a) (emphasis added), are not "*fact[s]*" that "might affect the outcome of the suit," *Milla*, 109 F.4th at 228 (emphasis added) (quoting *Haze*, 961 F.3d at 658), and are not "*fact[s]*" that either "party fail[ed] to properly support" or "fail[ed] to properly address" or that the Court may order the parties "to properly support or address," Fed. R. Civ. P. 56(e)(1), (4) (emphasis added). In other words, these Requests do not cover "information

relevant to the resolution of the summary judgment motions" that should be included "in the record." *Cf.* Mem. Order 1, ECF No. 109. Moreover, legislative history of the Virginia statutes is only relevant if the language in the at-issue statutes is ambiguous. *See*, *e.g.*, *Newberry Station Homeowners Ass'n v. Fairfax Cnty. Board of Supervisors*, 285 Va. 604, 614 (2013). There is no ambiguity here, and neither party has identified such an ambiguity. In addition, in Virginia, the legislative history is typically limited to a history of the legislation and its amendments. *See*, *e.g.*, *JSR Mech, Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 384-85 (2016). This history is covered by Request 1.

But the other Requests seeking communications, press releases, and news reports seek information far beyond the bounds of any reasonable definition of legislative history. Indeed, counsel for the Commonwealth are unaware of any authority supporting the use of such materials to establish legislative history of a Virginia statute. The Supreme Court of Virginia has previously cast doubt on the use of press releases to establish legislative history. *Muhammad v. Commonwealth*, 269 Va. 451, 499 (2005) ("Even if a press release could quality as legislative history, it is quite a leap to impute, from the press releases of an Attorney General, the intent of the General Assembly. We find the intent of the General Assembly primarily in the words it employs in enacting legislation."). Similarly, courts have declined to consider news reports as an appropriate source of legislative history. *See*, *e.g.*, *Hutcher v. Commonwealth*, 39 Va. App. 601, 609 n.3 (2003) ("We decline appellant's invitation to consider newspaper and journal articles written contemporaneously with the passage of the concealment statute as an appropriate source of legislative history." (citation & internal quotation marks omitted)); *Mitchell v. Rayl*, 665 P.2d 1117, 1119 (Kan. Ct. App. 1983) (similar).

Accordingly, the Commonwealth respectfully objects to the Court's Memorandum Order for these reasons as well and requests that the Court reconsider Requests 1-5. Moreover, the Commonwealth's efforts to comply with the Court's Memorandum Order out of an abundance of caution do not waive this objection.

### III.  REQUESTS 2 AND 3 APPEAR TO COVER PRIVILEGED INFORMATION.

Insofar as Requests 2 and 3 could be read to cover communications of the Governor's Office, of any of the Houses, members, staff, or employees of the General Assembly, or of others potentially—concerning the challenged laws—this implicates legislative and executive privileges from disclosure. *See, e.g.*, *Greenberg v. Collier*, 482 F. Supp. 200, 203 (E.D. Va. 1979) ("The protection of a legislator's motivation in discharging his public responsibility is at the very core of the speech or debate clause. Legislative motive is beyond inquiry whether it is sought to be established through legislative or political activities."); *Benisek v. Lamone*, 241 F. Supp. 3d 566, 573 (D. Md. 2017) (three-judge court) (acknowledging that legislative privilege "protects not only legislators, but also 'officials outside the legislative branch . . . when they perform legislative functions' or engage in 'integral steps in the legislative process.'" (omission in original) (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998))); *Edwards v. Vesilind*, 292 Va. 510, 530 (2016) ("A legislator's communication regarding a core legislative function is protected by legislative privilege, regardless of where and to whom it is made."). The context of this litigation does not provide a basis for compelling the disclosure of such privileged communications.

### IV.  THE REQUESTS SEEK INFORMATION OUTSIDE THE POSSESSION, CUSTODY, AND CONTROL OF THE COMMONWEALTH.

Some of the Requests seek information outside the custody and control of the Commonwealth. For instance, Request 4 seeks press releases by any legislator on the legislation at issue dating back over forty years. That information is not within the possession, custody, or

control of the Commonwealth. The same is true for communications in Requests 2 and 3 and news reports in Request 5. When a party does not have possession, custody, or control of information sought in discovery, the party cannot be compelled to produce such information. *See*, *e.g.*, *Hatfill v. N.Y. Times Co.*, 242 F.R.D. 353, 355 (E.D. Va. 2006); Fed. R. Civ. P. 34(a)(1).

Accordingly, the Commonwealth respectfully objects to the Court's Memorandum Order for this reason as well and requests that the Court reconsider Requests 2-5. Moreover, the Commonwealth's efforts to comply with the Court's Memorandum Order out of an abundance of caution do not waive this objection.

## V.    REQUESTS 7-9 SEEK INFORMATION NOT READILY ACCESSIBLE AND UNDULY BURDENSOME TO PRODUCE.

Some of the information sought in Requests 7-9 is not readily accessible and would be unduly burdensome to produce. In fact, it may not be possible to completely and accurately compile, at all, in view of record retention policies and respective practices at Virginia's fifteen four-year public institutions of higher education, one two-year public institution of higher education, and twenty-three community colleges. While SCHEV maintains headcounts of students enrolled at public universities and colleges in Virginia and how many are receiving in-state tuition, SCHEV does not possess the total number of applications submitted or the total number approved that ultimately did not enroll. Defendant has produced the information it has been able to obtain that is responsive to Requests 7-9, but any additional responsive information would likely require review of files at each separate public university and college in Virginia. It might also require a file-by-file review, to the extent some of the records even continue to exist given the passage of time. In any event, such additional responsive information is not proportional to the needs of the case and the burden and expense of locating and producing the requested information far outweighs any benefit.

Accordingly, the Commonwealth respectfully objects to the Court's Memorandum Order for this reason as well and requests that the Court reconsider Requests 7-9. Moreover, the Commonwealth's efforts to comply with the Court's Memorandum Order out of an abundance of caution do not waive this objection.

## **CONCLUSION**

Consistent with the reasons stated above, the Commonwealth respectfully requests that the Court reconsider and either vacate or narrow its Memorandum Order of July 8, 2026.

<table>
<tr><td>

Jay Jones
  *Attorney General*

Travis G. Hill
  *Chief Deputy Attorney General*

Tillman J. Breckenridge
  *Solicitor General*

R. Trent Taylor (VSB No. 47468)*
  *Deputy Solicitor General*

Mikaela A. Phillips (VSB No. 97164)*
  *Assistant Solicitor General*

</td><td>

Respectfully submitted,

COMMONWEALTH OF VIRGINIA

By: /s/ Robert S. Claiborne, Jr.
Robert S. Claiborne, Jr. (VSB No. 86332)*
  *Assistant Attorney General*
OFFICE OF THE ATTORNEY GENERAL
202 North Ninth Street
Richmond, Virginia 23219
Telephone: (804) 482-2275
Facsimile: (804) 371-2087
rclaibornejr@oag.state.va.us

* *Counsel of Record for Defendant*

</td></tr>
</table>

## <u>CERTIFICATE</u>

I hereby certify the following:

1.      On this 17th day of July, 2026, I filed the foregoing using the Court's CM/ECF filing system, which sends an electronic notification of the same to counsel of record.

2.      No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg.

3.      Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

By: /s/ Robert S. Claiborne, Jr.　　　　　

Robert S. Claiborne, Jr. (VSB No. 86332)*

*Assistant Attorney General*

\* *Counsel of Record for Defendant*