IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

Plaintiff,

v. Civil Action No. 3:25cv1067

COMMONWEALTH OF VIRGINIA,

Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on the PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 84) (the "US MOTION"), the supporting (ECF No. 87), opposing (ECF No. 90), and reply memoranda (ECF No. 97) and the COMMONWEALTH OF VIRGINIA'S MOTION FOR SUMMARY JUDGMENT (ECF No. 85) (the "VA MOTION"), the supporting (ECF No. 86), opposing (ECF No. 91), and reply memoranda (ECF No. 94). Upon consideration of the briefs, the exhibits, and the arguments of counsel, the PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 84) will be denied and the COMMONWEALTH OF VIRGINIA'S MOTION FOR SUMMARY JUDGMENT (ECF No. 85) will be granted.

**BACKGROUND**

The dispute in this case is about whether Virginia in-state tuition statutes are preempted by a federal statute. So, the analysis of the preemption issue necessitates an understanding of

the operations of Virginia's in-state tuition program, and the federal statute at issue.

**A. Virginia In-State Tuition Program**

Virginia provides reduced tuition rates for some students attending post-secondary public educational institutions in Virginia. ECF No. 83, Stipulation of Facts Not in Dispute ("SFNID"), ¶ 1. Those reduced rates are called "in-state tuition." Statutes relating to in-state tuition have existed in various forms in Virginia since 1984. Id. ¶ 2.

Much of the cost of funding public institutions comes from the Commonwealth, the rest from tuition and fees. Id. ¶ 3. Virginia's public institutions determine student eligibility for the reduced rates based on Virginia law. Id. The institutions then offer in-state tuition to those students found to be eligible. Id. ¶ 4. The Board of Visitors at each public institution sets the in-state and out-of-state tuition rates for that institution. Id. ¶ 3. Every institution has its own tuition rates, but, students of a particular seniority level in a particular program in a particular institution generally receive the same in-state rates or the same out-of-state rates depending on their eligibility. Id. ¶ 7.[1] Some public Virginia universities charge the same rate for

[1] The exception is that some institutions offer active-duty military rates that are lower than both in-state and out-of-state tuition rates without regard to residence. Id. ¶ 8.

in-state and out-of-state tuition recipients who are enrolled in certain programs. Id. ¶ 67.

Once a student is determined to be eligible for in-state tuition, that determination continues until the student graduates unless circumstances change that make the student ineligible for the in-state rate. Id. ¶ 13. In 2025-2026, in-state tuition could only be claimed up to 125 percent of degree requirements for a baccalaureate program. Id. ¶ 12. After that credit hour threshold is reached, all students who received lower rates for in-state tuition must pay the higher rate. Id. ¶ 12.

In the 2025-2026 academic school year, the average undergraduate in-state tuition was $9,987, and the average out-of-state tuition was $28,591. Id. ¶¶ 9-10.[2] Approximately one-third of undergraduate students at the University of Virginia for 2025-2026 were out-of-state. Id. ¶ 15.

There are several ways in which students can qualify for in-state tuition. Two are at issue, but it is necessary to understand all of them.

First, the so-called "Domicile Pathway." To qualify for this benefit, a student must establish, "by clear and convincing evidence, that he or she was domiciled in the Commonwealth in the year immediately preceding enrollment" and the "abandon[ment] [of]

---

[2] Those numbers do not include room, board, and all mandatory fees. Some mandatory fees are included. Id.

any previous domicile." Id. ¶¶ 16, 20 (citing Va. Code Ann. § 23.1-502 (2026)). Domicile is defined to be "an individual's present, fixed home to which the individual returns after temporary absences and intends to remain indefinitely." Id. ¶ 17 (citing Va. Code Ann. § 23.1-500 (2026)). Domicile depends on "domiciliary intent" which is the "present intent to remain indefinitely." Id. ¶¶ 17-18. Domiciliary intent is determined by many factors, including residence. Id. ¶ 18. (citing Va. Code Ann. § 23.1-502(B) (2026)). The evidence must show, through conduct not "primarily for the purpose of attending school," that the student has a bona fide intent to make Virginia home. Id. ¶ 21. Most people "whose state of legal residence in the technical sense is Virginia are domiciliary residents" and "[m]ost domiciliary residents actually live in Virginia." Id. ¶ 19. A student cannot be deemed ineligible to establish domicile for in-state tuition because of the parent's immigration status. Id. ¶ 22.

The State Council of Higher Education for Virginia ("SCHEV") is a state entity which was created to "lead state-level strategic planning and policy development and implementation" for higher education in Virginia. Id. ¶ 23. SCHEV is statutorily empowered to create policies and regulations with which public institutions must comply. Id. SCHEV is charged with creating guidelines for how institutions must determine domicile for in-state tuition. Id.

¶ 24; and indeed, SCHEV has created such guidelines (the "SCHEV Guidelines").

The SCHEV Guidelines define "undocumented" as the "absence of valid current legal status." Id. ¶ 25. "Undocumented" is the equivalent of "undocumented alien," "illegal alien," "alien without legal status," "alien unlawfully present," and "alien out of status." Id. Undocumented students can attend institutions of higher education in Virginia. Id. ¶ 32. However, under the SCHEV Guidelines, undocumented students are not eligible for in-state tuition under the Domicile Pathway. Id. ¶ 25.

Second, the Tuition Equity Pathway which became law in 2020. Id. ¶ 26 (citing Va. Code Ann. § 23.1-505.1 (2026)). Students can qualify for the Tuition Equity Pathway if they:

> (1) attended high school for at least two years in the Commonwealth and either
>
> > (a) graduated on or after July 1, 2008, from a public or private high school or program of home instruction in the Commonwealth, or
> >
> > (b) passed on or after July 1, 2008, a high school equivalency examination approved by the Secretary of Education;
>
> (2) [have] submitted evidence that he or, in the case of a dependent student, at least one parent, guardian, or person standing in loco parentis has filed, unless exempted by state law, Virginia income tax returns for at least two years prior to the date of registration or enrollment; and
>
> (3) register[] as an entering student or [are] enrolled in an public institution of higher education or private institution of higher education in the Commonwealth....

Va. Code Ann. § 23.1-505.1 (2026). For the 2025-2026 school year, 1,206 students not domiciled in Virginia used the Tuition Equity Pathway to qualify for in-state tuition. Id. ¶ 37. Although the record does not show how many students secured that benefit by relying on which components of the test, it is appropriate to understand those components.

(1) Attending High School. Like all states, Virginia provides tuition-free elementary and secondary education to residents within school divisions that are defined by statute. Id. ¶ 29. Residence within a school district is based on the residence of the person with whom the student resides so long as the living arrangement is not just for the purposes of attending school. Id. ¶ 30. Undocumented students can receive free elementary and secondary education in Virginia if they meet the residency requirements. Id. ¶ 32. Nonresidents of Virginia also can attend public school in Virginia pursuant to state statute. Id. ¶ 33. Nonresidents can attend private schools in Virginia. Id. ¶ 34.

(2) Filing Tax Returns. Nonresidents of Virginia must file Virginia tax returns if they receive Virginia taxable income. Id. ¶ 35. Virginia taxable income could, for example, come from renting or selling Virginia real estate, income from a partnership operating in Virginia, and from prizes paid by Virginia lottery. Id. It is estimated that almost 100,000 people commute from other states into Virginia to work. Id. ¶ 44. For tax year 2023, 91,516

individual filings, 55,759 joint filings, and 28,232 married/filing separately filings were "unassigned" to a locality, meaning they were "generally nonresident returns." Id. ¶ 36.[3]

Third, the record shows that there are "over a dozen" other ways to qualify for in-state tuition. Id. ¶ 42. A student who "has been employed full time in the Commonwealth for at least one year immediately prior to the date of the alleged entitlement" is eligible for in-state tuition if they paid taxes. Id. ¶ 43. A student whose "nonresident parent" works full time in the Commonwealth for a year up to the entitlement and paid taxes on their Virginia income can get in-state tuition. Id. ¶ 45. Approximately 142 students not domiciled in Virginia used those two pathways for the 2025-2026 school year. Id. ¶ 46.

A student who is a child of an active duty service member or veteran who "claims Virginia as his home state and filed Virginia tax returns for at least 10 years during active duty service" is eligible for in-state tuition. Id. ¶ 47. Approximately 1,062 students used that section for in-state tuition for the 2025-2026 school year. Id. ¶ 48. Dependent students of active duty military

[3] Registration is a self-evident requirement.

may qualify for in-state tuition without any domicile analysis. Id. ¶ 60.[4]

Nonresident students can be eligible for in-state tuition as part of the Academic Common Market, pursuant to which a student who is domiciled in a participating state is eligible for in-state tuition in some programs at some Virginia institutions. Id. ¶¶ 49-51. Thirty-five students not domiciled in Virginia used the Academic Common Market for the 2025-2026 school year. Id. ¶ 52.

Graduate students who are not domiciled in Virginia are eligible for in-state tuition if employed as a teaching assistant, research assistant, or graduate assistant making more than $4,000 per year. Id. ¶ 53. For the 2025-2026 school year, 3,648 students used that pathway to in-state tuition. Id. ¶ 54.

A student not domiciled in Virginia is eligible for in-state tuition if the student is enrolled at a community college, lives in another state within 30 miles of a Virginia institution of higher education, and is entitled to in-state tuition in any contiguous state which has similar provisions for students domiciled in Virginia. Id. ¶ 55. For the 2025-2026 school year, 233 students used that pathway. Id. ¶ 56. A student not domiciled in Virginia who is a veteran or a dependent of a veteran can

[4] 2,618 students used that pathway for the 2025-2026 school year. Id. ¶ 61. The number of those 2,618 students who lived in Virginia prior to using this pathway is unknown. Id.

receive in-state tuition in Virginia despite never having lived in Virginia. Id. ¶ 57. For the 2025-2026 school year, 1,143 students used that pathway. Id.

University of Virginia-Wise offers in-state tuition to students in Kentucky, Tennessee, or the "Appalachian Regional Commission (ARC) territory." Id. ¶ 58. Approximately 260 students used that pathway for the 2025-2026 school year. Id. ¶ 59.

There are several other laws that allow students not domiciled in Virginia to qualify for in-state tuition. Id. ¶¶ 62, 64. Some U.S. citizens or nationals pay out-of-state tuition rates at Virginia higher education institutions. Id. ¶¶ 39-40.

**B. The Federal Statute**

The federal law at issue provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a) (emphasis added). In this action, the United States alleges that the Domicile Pathway and Tuition Equity Pathway are preempted by Section 1623(a).

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The burden on the moving party may be discharged by showing - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325 (citation modified).

"A fact is material if proof of its existence or non-existence would affect disposition of the case under applicable law." Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) (citation modified) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "An issue of material fact is genuine if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." Id. (citation modified). Summary judgment is particularly appropriate when the question is primarily legal rather than factual. Walters v. Weiss, 392 F.3d 306, 310 (8th Cir. 2004). Preemption and commandeering (the related issue raised by Virginia) are questions of law. Knight v. Boehringer Ingelheim Pharms., Inc., 984 F.3d 329, 337 (4th Cir. 2021); Nat'l Ass'n of Regul. Util. Comm'rs v. Fed. Energy Regul. Comm'n, 475 F.3d 1277, 1283 (D.C. Cir. 2007).

"Where parties file cross-motions for summary judgment, courts consider 'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" Capitol Prop. Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co., 261 F. Supp. 3d 680, 687 (E.D. Va. 2017) (quoting Defs. of Wildlife v. N.C. Dep't of Transp., 762 F.3d 374, 392-93 (4th Cir. 2014)).

**ANALYSIS**

The Supremacy Clause of the U.S. Constitution provides that federal law "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Thus, a federal statute can "preempt," or displace, state law if the state law conflicts with the federal law. Arizona v. United States, 567 U.S. 387, 399 (2012). "[The] inquiry into the scope of a statute's pre-emptive effect is guided by the rule that the purpose of Congress is the ultimate touchstone in every pre-emption case." Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008) (citation modified). There are several kinds of preemption. The one at issue here is express preemption. When there is an express preemption claim, courts "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993). So, the "plain text of [the statute] begins and ends" the analysis. Puerto Rico v. Franklin Cal. Tax-Free Tr., 579 U.S. 115, 125 (2016) (citation modified).

The United States takes the view that the Domicile Pathway and the Tuition Equity Pathway are expressly preempted by Section 1623(a) which contains two principal provisions. Section 1623(a)'s first clause provides that an undocumented student cannot receive in-state tuition "on the basis of residence." Section 1623(a)'s second clause provides an exception to the prohibition in the first clause, to-wit: "unless a citizen or national of the United States" is eligible for the same benefit "without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). To prevail on the preemption contention, defeat Virginia's motion for summary judgment, and prevail on its motion for summary judgment, the United States must establish that the Virginia statutes creating the Domicile Pathway and the Tuition Equity Pathway fall within the first clause and outside the second. To prevail on summary judgment, Virginia must establish that the challenged statutes either fall beyond the reach of the first clause or within the reach of the second clause.

## I. Is an Undocumented Student Eligible for In-State Tuition "On the Basis of Residence"?

### A. Domicile Pathway

First, the Domicile Pathway. Virginia does not contest that the Domicile Pathway provides tuition benefits on the basis of residence. Indeed, it clearly does. Instead, Virginia argues that, because of the SCHEV Guidelines, undocumented students cannot

receive in-state tuition under the Domicile Pathway. ECF No. 86, 15. The SCHEV guidelines provide that "undocumented" means the "absence of valid current legal status" and that undocumented students are not eligible for in-state tuition via the Domicile Pathway. SFNID ¶ 25.

The United States does not dispute that the SCHEV Guidelines contain that prohibition. However, says the United States, that is not determinative, for two reasons.

First, under SCHEV Guidelines, "certain illegal aliens [are] eligible for in-state tuition rates based on whether they have a pending application with USCIS for Adjustment of Status without prior lawful entry into the United States." ECF No. 91, 21. Second, "an alien that [sic] overstays his or her visa and later applies for an adjustment of status" is also eligible for in-state tuition rates under the SCHEV Guidelines. Id.[5] The argument is puzzling because the United States has stipulated that, "[u]nder these [SCHEV] Guidelines, undocumented students are not eligible to receive in-state tuition under Va. Code §§ 23.1-500, 502." SFNID ¶ 25. And, in any event, absent a waiver, those who entered the country unlawfully or overstayed a visa are generally not eligible

---

[5] The United States also mentions that a student's parent's immigration status cannot bar the student from in-state tuition. ECF No. 91, 13. However, the United States does not explain the relevance of that observation. And, the Court can perceive none.

to adjust status to that of a lawful permanent resident. See 8 CFR § 245.1(b) (listing categories of aliens ineligible to apply for adjustment of status); Prasad v. Holder, 776 F.3d 222, 224 (4th Cir. 2015) (citing 8 U.S.C. § 1255(a)).[6] So this argument is without currency.

Moreover, Virginia law provides that "public institution[s] of higher education shall comply" with SCHEV's "policies and regulations." Va. Code Ann. § 23.1-203(15) (2026) (emphasis added). Thus, SCHEV Guidelines have the force of law in Virginia.

Federal courts look to the decisions of a state's highest court or intermediate appellate court as authoritative interpretations of state law. See, e.g., Cap. Associated Indus., Inc. v. Stein, 922 F.3d 198, 211 (4th Cir. 2019). However, there are no decisions from authoritative Virginia courts. Of course, other state court decisions are instructive, even though not binding, and one has held that the SCHEV Guidelines are binding. See Kinuani v. George Mason Univ., No. 0042-22-4, 2023 Va. App.

---

[6] The United States also argues that SCHEV Guidelines cannot provide eligibility for in-state tuition for undocumented students not provided in the statute because of the Personal Responsibility and Work Opportunity Reconsideration Act of 1996 ("PRWORA"). ECF No. 91, 20. The purpose of this argument is unclear. If the SCHEV Guidelines provided that undocumented students are eligible for in-state tuition, those portions of the Guidelines would be ineffective under PRWORA because they are not state law, meaning undocumented students would not be eligible for in-state tuition under the Domicile Pathway. And yet, the United States is arguing that the SCHEV Guidelines do something they cannot under PRWORA. That is puzzling.

LEXIS 9, at *10 (Va. Ct. App. Jan. 10, 2023) ("GMU had no discretion to disregard the SCHEV [G]uidelines when making its decision."). The absence of an authoritative Virginia decision is not an impediment to a decision here because the Virginia statute is clear as to the effect of the SCHEV Guidelines. The Court needs no further authority on their effect.

But, says the United States, the analysis must focus only on the statutory language, which permits undocumented students to receive tuition. ECF No. 91, 18-19. The thrust of this argument is that the determining factor is that it is the "act of regulation itself [the statute], not the effect of the state regulation in a specific factual situation," that is determinative here. Id. at 19 (quoting Green Mountain R.R. Corp. v. Vermont, 404 F.3d 638, 644 (2d Cir. 2005)). However, the focus of the preemption analysis is on "what the state law in fact does, not how the litigant might choose to describe it." Wos v. E.M.A. ex rel Johnson, 568 U.S. 627, 637 (2013). And, Virginia is not arguing that, in a specific factual situation, the Domicile Pathway does not apply to undocumented students. It argues that the regulation (the SCHEV Guidelines) restricts the Domicile Pathway law so as to bar in-state tuition for undocumented students under the Domicile Pathway in any circumstance. According to Virginia law, that is correct. Because undocumented students are not eligible for in-state

tuition under the Domicile Pathway, the Domicile Pathway law is neither in conflict with, nor preempted by, Section 1623(a).[7]

The United States then contends that under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA "), "eligibility for in-state tuition can only be adjusted by state statute." ECF No. 91, 20. But that is incorrect. PRWORA requires that, if a statute makes an undocumented student eligible, it must do so affirmatively. 8 U.S.C. § 1621(d). It is silent as to how an undocumented student can be made ineligible.

PRWORA does provide that a state can only give a postsecondary educational benefit "through the enactment of a State law . . . which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d) (emphasis added). Thus, the analysis looks to the text of the Domicile Pathway law. The text is:

> A. To be eligible for in-state tuition at public institutions of higher education, an independent student

---

[7] Virginia also argues that the United States cannot point to any evidence that a single undocumented student has ever received in-state tuition through the Domicile Pathway. ECF No. 86, 17. The United States says that is irrelevant because the challenge is a facial challenge to the Virginia statutes and, on its face, the statute allows undocumented students to receive in-state tuition. The relevance of Virginia's argument is unclear. Of course, the fact that there is no evidence an undocumented person has received in-state tuition under the Domicile Pathway is evidence supporting the contention that in-state tuition would be unavailable to them under the Domicile Pathway. However, even if no undocumented person has ever received in-state tuition under the Domicile Pathway, that does not affect the facial challenge that such a person could receive in-state tuition under the statutory language. Nonetheless, as explained above, the SCHEV Guidelines are the controlling law and thus frame the facial challenge.

> or, in the case of a dependent student, the individual through whom he claims eligibility, shall establish by clear and convincing evidence (i) domicile in the Commonwealth for a period of at least one year immediately succeeding the establishment of domiciliary intent pursuant to subsection B and immediately prior to the date of the alleged entitlement and (ii) the abandonment of any previous domicile, if such existed. No institution of higher education shall give weight to any evidence that such student or individual presents in support of his claim for domicile or the abandonment of any previous domicile unless such evidence has existed for a period of at least one year immediately prior to the date of the alleged entitlement. If the individual through whom a dependent student establishes domicile and eligibility for in-state tuition charges abandons his domicile in the Commonwealth, such student is entitled to in-state tuition charges for one year from the date of such abandonment.
>
> B. To establish domicile, an independent student or, in the case of a dependent student, the individual through whom he claims eligibility, shall establish by clear and convincing evidence domiciliary intent. In determining domiciliary intent, institutions of higher education shall consider the totality of the circumstances, including the following applicable factors: continuous residence for at least one year prior to the date of the alleged entitlement, except in the event of the establishment and maintenance of a place of residence outside the Commonwealth for the purpose of maintaining a joint household with an active duty United States military spouse; state to which income taxes are filed or paid; driver's license; motor vehicle registration; voter registration; employment; property ownership; sources of financial support; military records; a written offer and acceptance of employment following graduation; and any other social or economic relationships within and outside the Commonwealth.

Va. Code Ann. § 23.1-502. The question is whether the Domicile Pathway "affirmatively" allows undocumented students to receive in-state tuition. The federal statute supplies no definition of "affirmatively," so the ordinary definition of the word applies.

See United States v. Mills, 850 F.3d 693, 697 (4th Cir. 2017) ("When, as here, Congress has not provided a definition for a statutory term, we give the term its ordinary, everyday meaning").

Merriam-Webster's dictionary defines affirmatively as "asserting that the fact is so" or "positive" or "favoring or supporting a proposition or motion." Affirmative, Merriam Webster, https://www.merriam-webster.com/dictionary/affirmatively [https://perma.cc/FQ6U-XPC3]. The Oxford English Dictionary defines affirmatively as "[i]n the affirmative, so as to confirm or assert that a fact is as stated or perceived" and as "[b]y way of assertion or express declaration; assertively, expressly; emphatically." Affirmatively, Oxford English Dictionary, https://www.oed.com/dictionary/affirmatively_adv?tab=meaning_and_use#9103835 [https://doi.org/10.1093/OED/5988779078].

The ordinary definitions of "affirmatively" support Virginia's position that the Domicile Pathway does not affirmatively provide for in-state tuition for undocumented students. The Domicile Pathway does not positively state or confirm that undocumented students are eligible for in-state tuition. It does not expressly state undocumented students are eligible for in-state tuition. It is silent as to the effect of immigration status. That is not affirmative.

Some state courts have come to the same conclusion. The Supreme Courts of California and Nebraska have held that, although

there is no specific language required to satisfy the "affirmatively" requirement in PRWORA, the state statute must specifically apply to undocumented people, and not just "confer[] a general benefit that would passively include unlawful aliens." E.M. v. Neb. Dept. of Health and Hum. Servs., 944 N.W.2d 252, 263 (Neb. 2020) (citation modified); see also Martinez v. Regents of Univ. of Cal., 241 P.3d 855, 868 (Cal. 2010); In re Garcia, 315 P.3d 117, 128 (Cal. 2014) (applying the Court's statement in Martinez to a law relating to undocumented people's eligibility for a law license); Me. Mun. Ass'n v. Me. Health & Hum. Servs., No. AP-14-39, 2015 Me. Super. LEXIS 197, at *20 (Me. Sup. Ct. June 9, 2015) (holding a "positive expression of legislative intent" necessary to extend benefits to undocumented people). However, an appellate court in Illinois reached the opposite conclusion, stating that no such express requirement existed. Kaider v. Hamos, 975 N.E.2d 667, 675 (Ill. App. Ct. 2012). State court decisions from other states are informative, but the analyses provided by California and Nebraska are more persuasive, particularly in perspective of the ordinary definition of "affirmatively."

For its part, Virginia relies on Young Conservatives of Tex. Found. v. Smatresk, 73 F.4th 304 (5th Cir. 2023) in favor of its view of the meaning of "affirmatively" and the effect of the Domicile Pathway. In Young Conservatives, the Fifth Circuit held that Section 1623(a) did not preempt a Texas law that set in and

out-of-state tuition rates, and that did not comment on the applicability of in-state tuition to aliens. Id. at 313. "Section 1623(a) has nothing to say about a rule" that does not take a "stance on whether illegal aliens are eligible for a cheaper price." Id. Virginia argues that the Domicile Pathway similarly takes no stance on undocumented students' eligibility and therefore 1623(a) has "nothing to say about" the Domicile Pathway. ECF No. 90, 23.

The United States responds that the referenced quote from Young Conservatives is not relevant to this issue because it has nothing to do with the statutes found preempted by United States v. Texas, 350 F.R.D. 74 (N.D. Tex. 2025). ECF No. 97, 18. But, the United States ignores the context in which Virginia cites Young Conservatives. The key point is that a statute which is silent about eligibility based on immigration status is not preempted by Section 1623(a). According to Virginia, the Domicile Pathway is silent about undocumented students' eligibility, so the principle that Section 1623(a) has "nothing to say about" a law like that applies. That is what Young Conservatives says.

Thus, Virginia is correct that, even if SCHEV's Guidelines are not given the force of law, Virginia's Domicile Pathway statute cannot be read to do what it cannot do under PRWORA. The Domicile

Pathway is not preempted by Section 1623(a).[8] Because the Virginia law does not permit undocumented students to receive in-state tuition by way of the Domicile Pathway, it is not necessary to reach the second step of the analysis.[9] The Domicile Pathway is not preempted by Section 1623(a).

**B. Tuition Equity Pathway**

The analysis now turns to whether undocumented students are eligible for in-state tuition "on the basis of residence" through the Tuition Equity Pathway. The parties agree that undocumented students may be eligible for in-state tuition under this provision in Virginia law. SFNID ¶ 27; Va. Code Ann. § 23.1-505.1 (2026). So, the issue is whether that eligibility is "on the basis of residence."

Residence, as defined in 8 U.S.C. § 1101(a)(33) is "the place of general abode; the place of general abode of a person means his

---

[8] The United States also cites United States v. Kentucky Council on Postsecondary Education, No. 3:25-cv-28, 2026 WL 880597 (E.D. Ky. Mar. 31, 2026), in which the court held that a Kentucky regulation was preempted by federal law. ECF No. 91 at 27. There, a Kentucky law tied eligibility for in-state tuition rates to residence. cites United States v. Kentucky Council on Postsecondary Education, No. 3:25-cv-28, 2026 WL 880597 at *1 (E.D. Ky. Mar. 31, 2026). However, the law itself was not being challenged. Rather, the plaintiff challenged a regulation promulgated by the Kentucky Council on Postsecondary Education (similar to Virginia's SCHEV) which explicitly stated that undocumented individuals were residents who could receive in-state tuition rates. Id. There is no such regulation here.

[9] The parties similarly do not reach the second step for the Domicile Pathway in their briefing.

principal, actual dwelling place in fact, without regard to intent." (emphasis added). "On the basis of" means "because of" "by reason of" or "based on," and connotes "but-for" causation. Gentry v. E. W. Partners Club Mgmt. Co. Inc., 816 F.3d 228, 235-36 (4th Cir. 2016) (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 350 (2013)).[10] The text teaches that a state statute would be preempted by the first clause of Section 1623(a) "if it provides postsecondary education benefits to unlawful noncitizens because their principal, actual dwelling place is within the State." United States v. Walz, 825 F. Supp. 3d 897, 909 (D. Minn. 2026).

The Tuition Equity Pathway created by Va. Code Ann. § 23.1-505.1 is not based on residence. It is based on high school attendance in Virginia, graduation from a high school in Virginia, passage of an equivalency test, or income tax return filings. Va. Code Ann. § 23.1-505.1 (2026).[11] The Tuition Equity Pathway is both

[10] The United States disagrees with the interpretation of "on the basis of." ECF No. 91, 22. But, at the same time, the United States cites Bostock v. Clayton County, Georgia, 590 U.S. 644, 656 (2020) as "indicating that the statutory language on the basis of incorporates a 'but-for causation' test and that it 'can be a sweeping standard.'"). ECF No. 87, 23. Thus, Virginia's reading of "on the basis of," is consistent with that in Bostock.

[11] Additionally, Virginia argues that Section 1623(a) prohibits "on the basis of residence" in the present tense. 8 U.S.C. § 1623(a) ("on the basis of residence within a State . . . whether the citizen or national is such a resident"). Someone who attended tuition-free high school for two years in Virginia (and met the other requirements) and then moved and became a resident of another

under and overinclusive of Virginia residency and is not, as the United States claims, a "proxy" for residency. The Tuition Equity Pathway is underinclusive of residency because not all Virginia residents will necessarily qualify. If, for example, a Virginia resident attends boarding school or private high school in another state for all four years of high school, he or she would not qualify under the Tuition Equity Pathway.

And, it is overinclusive of residency because nonresidents can qualify for the Tuition Equity Pathway. Virginia explains several instances in which a nonresident could meet the first two conditions: "if [a nonresident] attended and graduated from a Virginia public high school while living in a neighboring State," "if [a nonresident] attended and graduated from a Virginia private boarding school while living in any other state," "if he attended and graduated from a Virginia high school but then moved to another State," or "if he attended a Virginia high school for two years and moved before passing a high-school equivalency test." ECF No. 86, 20 (citing SFNID ¶¶ 33-34). If a student meets the first conditions and his or her parent(s) pay(s) Virginia income taxes

state could receive in-state tuition even though he or she no longer is a resident of Virginia. ECF No. 86, 22. On that view, the qualification for in-state tuition would not be "on the basis of residence." The United States does not discuss this issue in its papers. However, whether Virginia's reading is correct need not be resolved to conclude that the Tuition Equity Pathway is not "based on residence."

(which many non-residents must pay) that student's eligibility would not be based on residence.

In the COMPLAINT, and in the United States' MOTION, the United States makes four arguments as to why the Tuition Equity pathway is a proxy for residence. Each argument is addressed in turn.

First, the United States argues that high school attendance "necessarily reflects a prior determination of residency at the K-12 level." ECF No. 87, 23; ECF No. 1 ¶ 25. That argument is not entirely incorrect, but it misses the mark because eligibility under the Tuition Equity Pathway is not based only on attendance at public schools: it includes attendance at private schools. Va. Code. Ann. § 23.1-505.1(a) (2026) ("from a public or private high school"). It is stipulated that non-residents attend high school at Virginia private day schools and boarding schools. SNFID ¶ 34. And, it is stipulated that non-residents can attend public school in Virginia in some circumstances. SNFID ¶ 33. The United States ignores the other ways in which a non-resident could attend high school in Virginia.

Second, the United States takes the view that Virginia's briefing erroneously relies on the residency definition in the Immigration and Nationality Act ("INA") and that Virginia's argument is "formalist" and attempts to avoid the federal law by slightly diverging the basis for Tuition Equity Pathway from the definition in the INA. ECF No. 91, 22. But, the INA's definition

of residence applies to Section 1623(a). 8 U.S.C. § 1641(a) (stating that "[e]xcept as otherwise provided in this chapter, the terms used in this chapter have the same meaning given such terms in section 101(a) of the [INA]" and Section 1641(a) does not define "residence"). If the basis of the grant of in-state tuition under the Tuition Equity Pathway is not residence as defined in the INA, it is not preempted by Section 1623(a).

Third, the United States argues that "what cannot be done directly cannot be done indirectly." Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 600 U.S. 181, 230 (2023). That, of course, is a truism. But, the Tuition Equity Pathway does not, directly or indirectly, provide in-state tuition "based on residence." Instead, it provides a number of ways for non-residents to qualify for in-state tuition. And, none of those ways are "based on" residence.[12]

Fourth, the United States does not dispute the potential for nonresidents to receive in-state tuition, but dismisses them as "hypotheticals and marginal outliers." ECF No. 91, 23. It argues that "[i]t would be difficult to imagine a more perfect proxy for residence." Id. That, however, is not so because some nonresidents are eligible under the terms of the statute (and, residents are

[12] Nor, contrary to the view of the United States, can it be said that Virginia has just slightly altered the definition of residency in the Tuition Equity Pathway from the INA definition.

not all eligible under the statute). That teaches that a student's residence is not the "but for" cause of eligibility for in-state tuition under the Tuition Equity Pathway.

To further support its position, the United States cites decisions in which courts have determined that other state statutes were based on residency. ECF No. 87, 24-25; ECF No. 91, 26-27. First, United States v. Texas, 181 F.4th 548 (5th Cir. 2026),[13] wherein the Fifth Circuit held that Texas' law which gave in-state tuition to undocumented students gave that benefit "based on residence" and was preempted by Section 1623(a). Id. at 556. But, the Texas laws at issue were explicitly "tethered to establishing a 'domicile' or 'residence' within Texas." Id. The only argument made to the contrary was that residence was not the sole basis for the in-state tuition determination, so in-state tuition was not given on the basis of residence. Id. The Fifth Circuit rejected that argument. Id. The same was true in United States v. Oklahoma, No. 25-CV-265, 2025 WL 2815662 (E.D. Okla. Aug. 7, 2025). The Oklahoma statute was explicitly based on residency and high school graduation. Id. at *1. Again, the same in United States v. Nebraska, 835 F. Supp. 3d 962 (D. Neb. 2026). And in United States

[13] At the time of the briefing on this case, the Fifth Circuit had not yet ruled on this case so the citations are to United States v. Texas, 350 F.R.D. 74 (N.D. Tex. 2025). However, the Fifth Circuit affirmed the District Court's decision and will be the decision discussed herein.

v. Illinois, Case No. 25-cv-1691, 2026 WL 2137256, at *9 (S.D. Ill. July 24, 2026).

The key difference between those decisions and this case is that here, the Tuition Equity Pathway does not explicitly tie in-state tuition eligibility to "residence" or "domicile." And, because it does not, none of the cases striking down laws which do so are helpful to the United States' position.

Because Virginia's Tuition Equity Pathway does not provide in-state tuition "on the basis of residence," Section 1623(a) does not operate to preempt it. Hence, on that issue, summary judgment will be granted in Virginia's favor, and the US MOTION on it will be denied.

Ordinarily, it is preferable to articulate a single basis for decision and, conversely, to refrain from making alternative holdings. Karsten v. Kaiser Found. Health Plan of the Middle Atlantic States, Inc., 36 F.3d 8, 11 (4th Cir. 1994). However, considering the nature of the issues in this case and the virtual certainty of appeal, this case presents one of those unusual circumstances where it is appropriate to articulate an alternative ground for decision.

## II. Does "a Citizen or National of the United States" Receive the Same Benefit?

The second clause of Section 1623(a) exempts state statutes from preemption if "a citizen or national of the United States is

eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the national is such a resident." 8 U.S.C. § 1623(a). The issue is the meaning of the word "a" in the phrase, "a citizen or national." The United States would read "a" to mean "all." ECF No. 91, 27-28. Virginia would read the word "a" to mean "any" or "one." ECF No. 86, 28. The correct interpretation is that "a" means "one or more," but not all. Walz, 825 F. Supp. 3d at 911-12. The point of the "unless" clause is that, if undocumented students are afforded the opportunity to pay in-state tuition, non-resident citizens must be allowed the same chance.

**A. Meaning of "A Citizen"**

The exception in the "unless clause" is met, and a law is saved from preemption, if nonresident citizens are eligible for in-state tuition in the same amount, duration, and scope. The use of the word "a" indicates "one or more" but not all. Walz, 825 F. Supp. 3d at 911-12; Middendorf Sports v. Top Rank, Inc., 954 F.3d 1142, 1148 (8th Cir. 2020) (reading "a" to mean "any" is "within its ordinary meaning"); United States v. Smith, No. 25-4065, 2026 U.S. App. LEXIS 25808, at *10 (4th Cir. Aug. 25, 2026). The parallel structure of the statute ("an alien . . . a citizen or national") plainly indicates the meaning. 8 U.S.C. § 1623(a). If some undocumented students are eligible for in-state tuition, some United States citizens must also be eligible to receive in-state

tuition. The point is that undocumented students not be treated better than citizens who are not residents of the state. Cf. United States v. Texas, 181 F.4th 548, 559 (5th Cir. 2026) ("U.S. citizens or nationals must be treated no worse than illegal aliens").

The United States asks the Court to read "a" to mean "all." In its view, the only way in which a state could comply with Section 1623(a) while allowing any undocumented students to qualify for in-state tuition is by giving in-state tuition rates to every student in the United States. But, as the United States acknowledges, no school would do that because it would defeat the purpose of in-state tuition rates if those rates were offered to every United States citizen. ECF No. 91, 27. In other words, the United States wants the Court to read Section 1623(a) as providing a total prohibition on undocumented students receiving in-state tuition. Id. at 12, 27. If that were the correct reading, the unless clause would be rendered surplusage because no state would give in-state tuition to every student across the country. There is, in judicial analysis, a "general reluctance to treat statutory terms as surplusage." Mullin v. Al Otro Lado, 146 S. Ct. 2079, 2092 (2026) (citation modified). So, the Court declines the invitation to read the "unless" clause out of Section 1623(a).

The United States reframes the statute from an "B unless A" to an "if not A then B" structure. ECF No. 91, 28; see also United States v. Texas, 181 F.4th 548, 559 (5th Cir. 2026). That logical

reframing may perhaps be correct in theory. However, in reframing the statute, the United States changes the antecedent proposition. The proper reframing would be: if it is not the case that a United States citizen is eligible for in-state tuition without regard to residence, then it is not the case that an alien who is not lawfully present can receive in-state tuition on the basis of residence. The result that the United States reaches is "if a United States citizen is not eligible for postsecondary education benefits with regard to residence, then an illegal alien cannot be eligible on the basis of residence." ECF No. 91, 27.[14] The United States changes the antecedent proposition, from requiring only "a citizen" to receive such a benefit, into requiring "all citizens" to receive the benefit under the guise of "elementary principles of logic."[15] The United States cannot be heard to re-write the statute to say something it does not. The statute does not say "all citizens." It says "a citizen." If Congress meant "all citizens" it could have said so. It did not.

The United States then argues that the "use of the singular in a statute generally includes the plural." ECF No. 91, 29 (citing

---

[14] Also worth noting, the United States flips "without regard to residence" in the unless clause to "with regard to residence." That is incorrect.

[15] This is clever wordsmithing because the United States's reframing retains the language "a citizen," but creates a sentence which requires all United States citizens to receive the benefit. That is not what the statute says.

1 U.S.C. § 1). True, but that still does not change "a" into "all." Niz-Chavez v. Garland, 593 U.S. 155, 164 (2021) ("The Dictionary Act does not transform every use of the singular 'a' into the plural 'several.' Instead, it tells us only that a statute using the singular 'a' can apply to multiple persons, parties, or things.").

The United States also relies on Equal Access Educ. v. Merten, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) as support for its argument that all United States citizens must receive in-state tuition to save an otherwise preempted law under Section 1623(a). ECF No. 87, 16-17; ECF No. 91, 25. The decision in Merten held that "[t]he more persuasive inference to draw from § 1623 is that public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit." 305 F. Supp. 2d at 606. But, Merten does not say "all" out-of-state citizens. So, it does not move the needle for the United States.

Further, the United States argues that Section 1623(a) cannot be interpreted to mean that noncitizens can receive in-state tuition on the basis of residence if a single nonresident citizen receives in-state tuition because that would be contrary to Congress's purpose. ECF No. 91, 24; ECF No. 87, 15-16. The United States cites a House Report in support of its argument that

Congress intended to prevent all unlawfully present students from receiving in-state tuition. ECF No. 91, 24.[16]

However, when a "statute contains an express preemption clause, we focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." N. Va. Hemp & Agric., LLC v. Virginia, 125 F.4th 472, 493 (4th Cir. 2025); Air Evac EMS, Inc. v. Cheatham, 910 F.3d 751, 762 (4th Cir. 2018); Chamber of Com. of U.S. v. Whiting, 563 U.S. 582, 599 (2011) ("Congress's 'authoritative statement is the statutory text, not the legislative history.'") (quoting Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005)). The language in the statute does not support the reading given it by the United States. A "purposive argument simply cannot overcome the force of the plain text." Bowe v. United States, 607 U.S. 13, 41 (2026) (citation modified); see also Just Puppies, Inc. v. Brown, 123 F.4th 652, 661 (4th Cir. 2024). The statute's language controls. The language does not say "all citizens."[17] See also Martinez v. Regents of Univ. of Cal., 241 P.3d 855, 864-65 (Cal. 2010).

---

[16] There is some dispute over whether the cited House Report is the "correct" version of the House Reports. The Court will assume arguendo that it is the correct version.

[17] The United States seems to argue that the canon against absurdity supports its reading of Section 1623(a), but then says that the canon against absurdity need not factor into the Court's analysis. ECF No. 97, 9.

The United States disagrees, claiming that Virginia's reading would mean Section 1623(a) is without effect. ECF No. 87, 28; 97, 8. Essentially, the United States claims that Congress would not write a statute just to protect "a single citizen in each state" and that "Congress does not concern itself with trifles." ECF No. 97, 9. That is true, but it does not transform "a" into "all."[18] At bottom, the "unless clause" simply provides that non-resident United States citizens must have the same shot at in-state tuition as do illegal aliens.

**B. Does A United States Citizen Receive the Same Benefit Without Regard to Residence?**

In short, the question is whether, under Virginia law, citizens from other states can receive in-state tuition in "no less an amount, duration, and scope" without regard to their residence. The parties agree that, if an applicant is eligible for in-state tuition, the benefit is of no less amount, duration, and scope than is afforded to illegal aliens. SFNID ¶¶ 7, 12-14.[19] Some

---

[18] The Court recognizes that the Fifth Circuit and the Southern District of Illinois adopted the position of the United States. United States v. Texas, 181 F.4th 548 (5th Cir. 2026); United States v. Illinois, No. 25-cv-1691, 2026 WL 2137256 (S.D. Ill. July 24, 2026). For the reasons articulated above, the Court respectfully does not find those decisions persuasive on the issues here presented.

[19] The United States argues that United States citizens do not receive the same "amount" of tuition benefits because they receive no in-state tuition. But, that does not address the issue of whether, if someone receives in-state tuition, they receive it in the same amount.

non-resident citizens are eligible not based on residence under both the Tuition Equity Pathway and other Virginia statutes. In other words, undocumented students are not treated better than United States citizens from other states. Some undocumented students receive in-state tuition. So too do some United States citizens from other states.

First, non-resident citizens are eligible for in-state tuition under the Tuition Equity Pathway. See supra Section I.2. The eligibility under the Tuition Equity Pathway alone defeats preemption. Then, says Virginia, there are multiple other statutes that provide in-state tuition benefits (in the same amount, duration, and scope) for various other categories not based on residence. ECF No. 86, 31. Those include the Academic Common Market Pathway (Va. Code Ann. § 23.1-506(B)(1) (2026)), the Thirty-Mile Radius pathway (Va. Code Ann. § 23.1-506(C) (2026)), Non-Resident Employee Dependent Pathway (Va. Code Ann. § 23.1-506(A)(2) (2026)), Child of Ten-Year Active Duty Military Pathway (Va. Code Ann. § 23.1-506(A)(8) (2026)), the Veterans Choice Act Pathway (38 U.S.C. § 3679(c) (2025)), and more. ECF No. 86, 31-32; SFNID ¶ 42. Thus, non-resident citizens or nationals are eligible for in-state tuition in the same amount, duration, and scope, without regard to their residence.

However, according to the United States, those other statutes are a sideshow because they are not challenged. ECF No. 91, 30.

But, the United States offers no substantive explanation for why the Court cannot consider unchallenged statutes to the extent that they are probative of the condition expressed in the "unless clause" of Section 1623(a). And, in fact, consideration of the other statutes informs the extent to which in-state tuition is available and thus enables the proper application of the "unless clause."

The United States next argues that:

> Even if Virginia had some other tuition law that made every United States citizen eligible for reduced tuition on some basis <u>other</u> than residence within Virginia - it doesn't - the challenged laws would still be preempted because they make aliens eligible on the basis of residence while the United States citizens are not made eligible because of their residence.

ECF No. 91, 29-30 (emphasis in original). That argument is incorrect. The exception in the second clause of Section 1623(a) applies if the same benefit (in-state tuition) is provided "without regard to whether the citizen or national is a resident." 8 U.S.C. § 1623(a). The United States' argument that the statute requires that other United States citizens be made eligible based on their residence is directly contradictory to the statute.

Finally, the United States argues that the other pathways to in-state tuition are, in fact, not providing in-state tuition. ECF No. 91, 30. However, the United States stipulated that the other sections do provide in-state tuition. SFNID ¶ 42. And, the United States does not argue that the benefit provided by the other

statutes is any less an "amount, duration or scope" than in-state tuition. Nor could it. Thus, even if the Tuition Equity Pathway somehow could be found to fall within the first clause of Section 1623(a), the Tuition Equity Pathway falls within the exception from preemption provided by Section 1623(a)'s second clause.[20]

**CONCLUSION**

Because the Domicile Pathway does not provide tuition benefits to undocumented students, it is not preempted by 8 U.S.C. § 1623(a). Because the Tuition Equity Pathway is not based on residence, it is not preempted. In the alternative, the Tuition Equity Pathway is not preempted because nonresident citizens also receive in-state tuition. Accordingly, the US MOTION (ECF No. 84) will be denied and the VA MOTION (ECF No. 85) will be granted. And, the action will be dismissed with prejudice.

It is so ORDERED.

/s/ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 5, 2026

[20] This resolution of the motions makes it unnecessary to consider Virginia's commandeering argument.